Jordan K. Cameron (12051)
**CAMERON RINGWOOD, LC**
6975 Union Park Ave, Suite 600
Cottonwood Heights, UT 84047
Telephone: (385) 463-2425
jordan@cameronringwood.com

Elizabeth C. Rinehart (*pro hac vice*)
**VENABLE LLP**
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 528-4646
lcrinehart@venable.com

*Attorneys for Defendant*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHANNON ARNSTEIN, et al.<br><br>Plaintiff,<br><br>vs.<br><br>SUNDANCE HOLDINGS GROUP, L.L.C.,<br><br>Defendant. | **DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC 12] AND MEMORANDUM IN SUPPORT**<br><br>Civil No. 2:24-cv-00344-RJS-DAO<br><br>Judge Robert J. Shelby<br>Magistrate Daphne A. Oberg |

COMES NOW, Defendant Sundance Holdings Group, L.L.C. ("Sundance" or "Defendant"), through counsel, and respectfully submits this *Motion to Dismiss* Plaintiffs' *Amended Complaint* [Doc 12]. Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant respectfully requests that this Court dismiss the *Amended Complaint* ("Complaint") as there is no set of facts the Plaintiffs can plead to overcome the plain class action bar found in Utah's Notice

of Intent to Sell Nonpublic Personal Information Act ("NISNPIA"). Alternatively, Plaintiffs have failed to state a claim for which relief may be granted.

## INTRODUCTION AND SPECIFIC GROUNDS FOR MOTION

This action is one of many pending matters in this Court that attempts to bring nationwide class claims under NISNPIA. *See Pilkington v. Gorsuch, LTD*, Case No. 2:24-cv-00434 (D. Utah filed Jun. 14, 2024); *Teresa v. Mayo Found. Med. Educ. & Research*, Case No. 4:24-cv-00033 (D. Utah filed Mar. 12, 2024); *Camoras v. Publishers Clearing House*, Case No. 4:23-cv-00118 (D. Utah filed Dec. 15, 2023); *Collins v. The Economist Newspaper NA, Inc.*, Case No. 2:23-cv-00878 (D. Utah filed Dec. 5, 2023).

In 2003, Utah House Representative Douglas C. Aagard introduced NISNPIA to the House Floor. *See* H.B. 40, 55 Leg., Gen. Sess. (Utah 2003). Though various amendments would subsequently modify its provisions, its core features remained throughout the legislative process. From its inception, NISNPIA was designed to prohibit a commercial entity from disclosing nonpublic personal information obtained during a consumer transaction without providing written or oral notice of an intention to do so. Utah Code Ann. § 13-37-201(1). Its remedies were modest: the introduced version of the bill, like the version ultimately enrolled, permitted an award of only $500 "to the person who brings the action" and prohibited class actions. *See* H.B. 40, 55 Leg., Gen. Sess. (Utah 2003) § 5. The statute reads in relevant part as follows:

**Liability**

(1) A person may bring an action against a commercial entity in a court of
     competent jurisdiction in this state if:
          (a) the commercial entity enters into a consumer transaction with that
               person;
          (b) as a result of the consumer transaction described in Subsection (1)(a),
               the commercial entity obtains nonpublic personal information
               concerning that person; and
          (c) the commercial entity violates this chapter.

> (2) In an action brought under Subsection (1), a commercial entity that violates
> this chapter is liable to the person who brings the action for:
>> (a) $500 for each time the commercial entity fails to provide the notice
>> required by this section in relation to the nonpublic personal
>> information of the person who brings the action; and
>> (b) court costs.
> (3) A person may not bring a class action under this chapter.

Utah Code Ann. § 13-37-203.

The legislative history reflects that these limited remedies were integral to NISNPIA's "cautious approach" to the then-emerging phenomenon of data selling. The colloquy on the House Floor reveals that NISNPIA's limited remedies were expressly designed to prevent a torrent of lawsuits that could overburden a corporate defendant:

> Representative John Dougall: Does this open us up to someone whose information was distributed, searching for who perhaps did it, not knowing which company did it, and then starting to sue lots of these companies trying to figure out who's the one that distributed without authorization?
>
> Representative Aagard: I don't think so—like I say, we've studied this—it's been a year in study—all interested parties that I know of are okay with the way this thing is written and the penalties. I purposefully limited the penalties just to—to avoid—to take care of any unintended consequences, so I think we are fine.
>
> . . .
>
> Representative Aagard: The thing I have discovered with this, is this is an elephant; it's huge, and my course of action—what I've chosen to do, is take one bite at a time on this, and deal with things as they move along. I don't want to move too fast because we need to be very careful with this type of issue, just because of where it reaches. . . . I am just trying to take a cautious approach so we don't have some problems.

H.B. 40s1, 55 Leg., Gen. Sess., Day 12, (Utah, Jan. 29, 2003), audio available at https://le.utah.gov/av/floorArchive.jsp?markerID=12385. Until recently, the "cautious approach" has prevailed, and litigation under NISNPIA was relatively rare. Recently, however, this Court held in *Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-cv-00651-JNP-DBP, 2023 WL 6318108 (D. Utah Sept. 28, 2023) that NISNPIA's class action bar must yield to Rule 23 of the Federal Rules

of Civil Procedure in federal court—in other words, that plaintiffs may pursue nationwide class actions under NISNPIA despite the law's express prohibition of such actions. Consequently, NISNPIA litigation has proliferated in this District.

Respectfully, the *Curry* decision, in which the parties presented an incomplete recitation and argument of governing law thereby depriving the court of the opportunity to properly analyze and apply the law, should not control this case. Based on the partially developed analysis presented to it, the court in *Curry* concluded that NISNPIA's class action bar was merely a procedural rule that could be set aside in federal court under *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). However, *Curry* did not apply binding Tenth Circuit precedent or examine NISNPIA's text in the context of its legislative history, as *Shady Grove* requires.

Viewed through the proper lens, Defendant submits that the court in *Curry* would have reached a different conclusion. As argued further herein, it is apparent that NISNPIA's class action bar is substantive in nature, and therefore must be honored in federal court, because it was integral to the legislature's objective to "purposefully limit[] the [law's] penalties to avoid any unintended consequences." H.B. 40s1, 55 Leg., Gen. Sess., Day 12, (Utah, Jan. 29, 2003).[1]

*Arguendo*, even if NISNPIA did not bar class actions, Plaintiffs' claims would fail because they do not sufficiently allege that Sundance sold Plaintiffs' personal data. Rather, the Complaint makes the following allegations concerning the Plaintiffs: (1) Plaintiffs bought items

---

[1] Legislative history may be consulted when resolving a motion to dismiss because it is a matter of public record. *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 675 (10th Cir. 2005) (explaining that "matters of public record are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss"); *Utah Republican Party v. Herbert*, No. 2:14-cv-00876-DN-DBP, 2015 WL 1851387, at *5 (D. Utah Apr. 22, 2015) (observing that the legislative history of a Utah Senate bill was a matter of public record).

from Defendant; (2) at the time of the purchase, Defendant collected unspecified information that was required for the purchase; and (3) therefore Defendant must have disclosed that information. These allegations, bereft of specific facts, are nothing more than the elements of the claim. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

Therefore, this Court should dismiss the Complaint because:

1.      The individual Plaintiffs named in the Complaint seek to assert a single cause of action under NISNPIA on behalf of themselves and as representatives for a nationwide class. (Am. Compl. ¶ 104). The class claim must be dismissed because NISNPIA explicitly forbids it. *See id.* § 13-37-203(3) ("A person may not bring a class action under this chapter."). Without a viable class action, Plaintiffs cannot meet the amount-in-controversy requirement to establish diversity jurisdiction under 28 U.S.C. § 1332(d), and this case must be dismissed.

2.      Plaintiffs fail to state a claim under NISNPIA because Plaintiffs do not sufficiently allege, beyond conclusory assertions, that Sundance sold their personal data. Accordingly, the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss can challenge a court's subject-matter jurisdiction either facially or factually. *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). A facial attack challenges the sufficiency of the complaint, while a factual attack presents additional evidence. *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). There is a presumption against federal jurisdiction, and the party invoking it bears the burden of proof. *Quigley v. Sporting Kan. City Soccer Club*, 799 Fed. App'x 644, 645 (10th Cir. 2020). Finally,

failure to meet the amount-in-controversy requirement defeats subject-matter jurisdiction based on diversity. *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1127 (10th Cir. 2021) (dismissing class action for lack of subject-matter jurisdiction where plaintiff failed to establish amount-in-controversy requirement).

When considering a 12(b)(6) motion to dismiss for failure to state a claim, the court must determine whether the complaint includes sufficient factual matter that, if accepted as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere labels, conclusions, or a formulaic recitation of the elements of a cause of action will not suffice to make a claim plausible. *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court need not accept "threadbare recitals of the elements of a cause of action." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144-45 (10th Cir. 2023).

**ARGUMENT**

## I.   NISNPIA BARS PLAINTIFFS' CLASS ACTION.

Plaintiffs bring a single count alleging a violation of NISNPIA and purport to represent a class of "all persons in the United States who, at any point during the applicable statutory period, had their Private Purchase Information, obtained by Sundance on or after January 1, 2004 as a result of a consumer transaction, disclosed to a third party by Sundance." (Am. Compl. ¶ 104). Plaintiffs anchor subject-matter jurisdiction in the Class Action Fairness Act, 28 U.S.C. § 1332(d), which permits diversity jurisdiction where the amount in controversy exceeds $5,000,000, "minimum" diversity among the parties exists, and over 100 class members are represented. (*See id.* ¶ 65).

6

However, Plaintiffs' claim cannot proceed as a class action because NISNPIA expressly forbids it. NISNPIA's class action bar is a substantive rule that must be applied in federal court notwithstanding the class action mechanism provided by Fed. R. Civ. P. 23. Unable to satisfy the amount-in-controversy requirement imposed by 28 U.S.C. § 1332 without a class, Plaintiffs claims must be dismissed for lack of subject-matter jurisdiction.

### A. NISNPIA's Class Action Bar Applies under *Shady Grove*.

The Federal Rules of Civil Procedure are promulgated under the Rules Enabling Act, 28 U.S.C. §§ 2071-2077, which provides that federal rules of civil procedure "shall not abridge, enlarge or modify any substantive right." *Id.* § 2072(b). A federal court sitting in diversity should apply federal procedural rules when (1) a Federal Rule of Civil Procedure "answers the question in dispute" and (2) the Federal Rule does not displace "a State's definition of its own rights or remedies." *Racher v. Westlake Nursing Home Ltd. Partnership*, 871 F.3d 1152, 1162, 1164 (10th Cir. 2017) (citing *Shady Grove*, 559 U.S. at 418). But if the "application of a federal rule . . . effectively abridges, enlarges, or modifies a state-created right or remedy," then "federal courts cannot apply the rule." *Shady Grove*, 559 U.S. at 422-23 (Stevens, J., concurring).

*Shady Grove* held that a New York law, N.Y. Civ. Prac. Law Ann. (CPLR) § 901(b), that prohibited the use of class actions to recover a penalty or statutory minimum damages, must yield to Rule 23 of the Federal Rules of Civil Procedure in a diversity action. The Court's decision was announced by a divided court, with Justice Scalia writing for a four-justice plurality, Justice Stevens concurring, and Justice Ginsburg writing on behalf of four dissenters. The Tenth Circuit has held that Justice Steven's concurrence controls. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) ("Justice Stevens concurred, and the Tenth Circuit has understood his concurrence to be the controlling opinion in *Shady Grove*.").

7

Justice Stevens' concurrence provides a two-step framework for assessing the applicability of a federal procedural rule in diversity actions. At step one, the court must determine whether "the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law." *Shady Grove*, 559 U.S. at 421. If the two rules conflict, then the Court proceeds to step two, and considers whether the federal rule of procedure "effectively abridges, enlarges, or modifies a state-created right or remedy" in violation of the Rules Enabling Act. *Id.* Justice Stevens' concurrence requires a subtle approach to this inquiry, cautioning that a state rule that appears "procedural in the ordinary use of the term" may in fact be "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423. In such cases, the court should avoid where possible a reading of the state and federal rules that places them in conflict: "When a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id.* In this way, the second step in the analysis may "bleed back into the first" (*id.* at 422); that is, if the state rule is substantive in nature, the court should avoid, if possible, an interpretation of the federal rule that would cause a direct conflict and propagate a Rules Enabling Act problem.

Applying this framework, Justice Stevens determined that Rule 23 and CPLR § 901(b) were in conflict but that the New York statute did not represent a substantive rule that presented a Rules Enabling Act dilemma. Justice Stevens determined that CPLR § 901(b) was a procedural rule for at least three reasons. First, the rule appeared in New York's procedural code. *Id.* at 436. Second, the rule applied "not only to claims based on New York law but also to claims based on federal law or the law of any other states" and it was therefore "hard to see" how such a rule

could be bound up with particular rights or remedies. *Id.* at 432, 453. Finally, Justice Stevens found that the legislative history of the rule "does not clearly describe a judgment that Section 901(b) would operate as a limitation on New York's statutory damages," *i.e.*, that Section 901(b) was designed to limit rights or remedies. *Id.* at 433.

### B. The Court Must Avoid an Interpretation of Rule 23 that Would Place it on a Collision Course with NISNPIA.

Mindful of Justice Stevens' admonishment to consider whether the state rule at issue "can reasonably be interpreted to avoid" a direct conflict with Rule 23, this Court should follow persuasive authority within this district and conclude that Rule 23 does not conflict with NISNPIA. *Shady Grove*, 559 U.S. at 423.

This Court has previously found no conflict between Rule 23 and the class action limitations provided under the Utah Consumer Sales Practices Act ("UCSPA"), which only allows class actions for damages in limited circumstances "caused by an act or practice specified as violating this chapter by a rule adopted by the enforcing authority . . . ." Utah Code Ann. § 13-11-19(4)(1). To avoid a conflict between UCSPA and Rule 23, this Court concluded that Rule 23 "may be read to be permissive." *Callegari v. Blendtec, Inc.*, No. 2:18-CV-308-DB, 2018 WL 5808805, at *4 (D. Utah Nov. 6, 2018). In other words, Rule 23 does not require class actions, it merely permits them where no other conflict against such exists without setting forth "exclusive procedural requirements" for doing so. *Id*. at *4. This interpretation permitted the Court to conclude that Rule 23 did not conflict with the UCSPA, thereby preserving the effect of state law and avoiding an inquiry into the applicability of Rule 23.

This Court reached the same conclusion in *Fullmer v. A-1 Collection Agency, LLC*, Case No. 4:20-cv-00143-DN-PK, 2022 WL 1538675, at *3 (D. Utah May 16, 2022).[2] As in *Callegari*, *Fullmer* reiterated the Supreme Court's "directive to avoid collision where possible." *Id.* Applying that principle, the court held that UCSPA and Rule 23 "are capable of coexisting, each controlling its intended sphere." *Id*. Whereas Rule 23 "sets forth the procedural requirements for maintaining a class action in federal court," the UCSPA "creates a cause of action for actual or statutory damages while simultaneously limiting the scope of that claim." *Id.* The Court should reach the same result as to NISNPIA. While Rule 23 permits class action litigation in certain circumstances (and outlines the procedures for maintaining a class action in federal court), the rule does not mandate that class action litigation be available in all cases. Where, as here, the legislature has made a clear decision to bar class actions as part of a statutory framework, it is the permissive nature of Rule 23 that avoids a conflict with that choice.

### C.  NISNPIA's Class Action Bar Must be Applied in Federal Court because it is Intertwined with State-Provided Rights and Remedies.

Even if Rule 23 and NISNPIA were irreconcilable, NISNPIA's class action bar would still apply in federal court because "the plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute" and the class action bar is inextricably intertwined with substantive rights of the law—the cause of action the statute provides and the remedies that it affords. *Rueda v. Utah Lab. Comm'n*, 2017 UT 58, 423 P.3d 1175, 1203.

Unlike CPLR § 901(b), addressed in *Shady Grove*, NISNPIA's class action bar does not appear in Utah's "procedural code." The class action bar appears under the "Liability" section of

---

[2] While *Fullmer* was presented in briefing to the court in *Curry*, it was not substantively analyzed or addressed.

NISNPIA, the same code section that provides a private right of action for a violation of the Act and imposes a $500 remedy. Utah Code Ann. § 13-37-203. Also unlike CPLR § 901(b), the class action bar is not universally applicable to all would-be class actions maintained in Utah courts; rather, it is part and parcel of the remedy afforded for this particular statute and narrowly applicable to substantive rights afforded under NISNPIA alone.

As the legislative history reflects, NISNPIA was cautiously designed to address the emergent sale of personal data. In response to questions regarding the potential for a burden on business or an influx of litigation, Rep. Aagard explained: "I purposefully limited the penalties just to—to avoid—to take care of any unintended consequences . . . ." H.B. 40s1, 55 Leg., Gen. Sess., Day 12, (Utah, Jan. 29, 2003). Within that limitation exists the plain class action prohibition. In fact, a class action bar is the only way to ensure that the penalties remain limited. Thus, unlike the class action limitations contained in CPLR § 901(b), NISNPIA's class action bar was expressly enacted as part of an effort to limit the substantive rights and remedies afforded under the new law. Under Justice Stevens' concurrence, the substantive rule must prevail over Rule 23.

In *Fullmer*, this Court determined that a class action bar was substantive, reasoning that it was infused with the provisions that "create the cause of action itself." 2022 WL 1538675, at *4, n.59 (quotation marks omitted). Similarly, the class action bar in NISNPIA and its statutory damages provision of $500 per violation work together. By including a statutory damages provision, the legislature has asserted its interest in deterring violations, and by prohibiting class actions, the legislature has protected businesses from onerous and potentially punitive damages awards. The federal courts must respect this balance struck by the legislature. *See id*. (no Rule 23

preemption because class action bar was "so intertwined with a state right or remedy" that it functions "to define the scope of the state-created right") (quotation marks omitted).

Other courts applying *Shady Grove* to class action bars or limitations have similarly concluded that they are bound up with state rights and remedies, and therefore prevail over Rule 23 in diversity actions. *See Murtagh v. Bed Bath & Beyond Inc.*, Civil Action No. 19-cv-03487-CMA-NYW, 2020 WL 4195126, at *7 (D. Colo. July 3, 2020) (class action damages limitation in the Colorado Consumer Protection Act is "ingrained in the ver[y] text of the CCPA such that Rule 23 cannot trump it"); *In re Effexor Antitrust Litigation,* 357 F. Supp. 3d 363, 389-90 (D.N.J. 2018) (Tennessee Consumer Protection Act's class action bar demonstrated the legislature's desire to "limit . . . the remedies available, placing [the bar] squarely within Justice Stevens' concurrence." ); *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 728-29 (D.S.C. 2016) (South Carolina Unfair Trade Practices Act's class action bar was "intertwined" with the substantive right afforded by the statute and therefore applied); *In re Nexium (Esomeprazole) Antitrust Litigation*, 968 F. Supp. 2d 367, 409 (D. Mass. 2013) (Illinois Antitrust Act's class action bar, was "bound up with" the substantive right afforded by the statute and therefore applied ).

A comparison between the provisions at issue in those cases and the class action bar in the instant action, presented below, reveals that they are similarly situated within their respective statutory schemes—within subsections that set forth causes of action, prescribe damages remedies, and either limit or preclude class actions. In each of these cases, the Court held that the class action provision was intertwined with the substantive rights and remedies and must apply in diversity actions. The same result is warranted in this case.

| Legislative Text | Case |
|---|---|
| Liability.<br><br>(1) A person may bring an action against a commercial entity in a court of competent jurisdiction in this state if:<br>    (a) the commercial entity enters into a consumer transaction with that person;<br>    (b) as a result of the consumer transaction described in Subsection (1)(a), the commercial entity obtains nonpublic personal information concerning that person; and<br>    (c) the commercial entity violates this chapter.<br>(2) In an action brought under Subsection (1), a commercial entity that violates this chapter is liable to the person who brings the action for:<br>    (a) $500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action; and<br>    (b) court costs.<br>(3) A person may not bring a class action under this chapter.<br><br>Utah Code Ann. § 13-37-203 | The instant action. |
| Civil Actions—Damages—Other Relief—Class Actions.<br><br>Except in a class action . . . any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article 1 is liable in an amount equal to the sum of:<br>(a) the greater of:<br>    (I) the amount of actual damages sustained . . . or<br>    (II) Five hundred dollars; or<br>    (III) three times the amount of actual damages sustained, if . . . such person engaged in bad faith conduct.<br><br>Colo. Rev. Stat. Ann. § 6-1-113(2) | *Murtagh v. Bed Bath & Beyond Inc.*, Civil Action No. 19-cv-03487-CMA-NYW, 2020 WL 4195126 (D. Colo. July 3, 2020) |
| Individual or Private Actions; Declaratory Judgments; Settlements; Attorney Fees and Costs.<br><br>Any person who suffers an ascertainable loss . . . as a result of . . . an unfair or deceptive act or practice . . . may bring an action individually to recover actual damages."<br><br>Tenn. Code Ann. § 47-18-109(a)(1) | *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363 (D.N.J. 2018) |

| | |
|---|---|
| Actions for Damages.<br><br>Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages.<br><br>S.C. Code Ann. § 39-5-140(a) | *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2016) |
| Civil Actions and Remedies.<br><br>Provided further that no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection.<br><br>740 Ill. Comp. Stat. Ann. § 10/7 | *In re Nexium (Esomeprazole) Antitrust Litigation*, 968 F. Supp. 2d 367 (D. Mass. 2013) |

These cases instruct that the decision to set forth class action bars within remedies subsections evinces a legislative intent to intertwine the class action bar with the rights and remedies afforded by the statute. Under *Shady Grove*, those class action bars must apply in federal diversity actions, notwithstanding Rule 23, or else the Court risks abridging, enlarging, or modifying a state-created right or remedy in violation of the Rules Enabling Act. The same result is warranted here, and NISNPIA's class action bar must be honored.[3]

**D. The *Curry* Opinion Erred in its Legal Analysis.**

This Court recently departed from these authorities and its prior decisions in *Callegari* and *Fullmer*, in *Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-cv-00651-JNP-DBP, 2023 WL

---

[3] While some Tenth Circuit authorities have applied *Shady Grove* to hold that federal procedural law governs, the analysis in those cases does not govern this dispute because the state laws analyzed either do not govern class actions or applied universally to all claims, rather than altering state rights and remedies. *See, e.g.*, *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 947 (10th Cir. 2020) (holding that Colorado cost-awarding statute applicable to all state law claims did not apply in diversity action but acknowledging that "Justice Stevens' analysis might well reach a different conclusion if the Colorado statute were restricted to costs in specific areas" in which case "it could be viewed as part of the state remedy").

6318108 (D. Utah Sept. 28, 2023), and held that NISNPIA's class action bar could not be applied by federal courts sitting in diversity. The opinion in that case suffers from several defects (in large part due to an incomplete presentation of law by the parties) which, if remedied, commands a different result in this case.

First, *Curry* relied on Justice Scalia's plurality opinion for the proposition that Fed. R. Civ. P. 23 created a "categorical entitlement to/ the class action form," thereby setting Rule 23 on an inevitable collision course with NISNPIA, which does not permit class actions. *Id.* at *4, *5 n.8. The *Curry* decision found that Justice Scalia's opinion with respect to Rule 23—part of the "step one" *Shady Grove* analysis—controlled because it was joined by a majority of the members of the Court. But this reliance on Justice Scalia's opinion cannot be squared with the Tenth Circuit's determination that Justice Stevens' concurrence is binding. *See Racher*, 871 F.3d at 1162 ("[W]e follow the framework described by the Supreme Court in *Shady Grove*, as laid out by Justice Stevens in his concurring opinion."); *James River*, 658 F.3d at 1217 ("[T]he Tenth Circuit has understood [Justice Stevens'] concurrence to be the controlling opinion in *Shady Grove*."); *Garman v. Campbell Cnty School Dist. No. 1*, 630 F.3d 977, 983 (10th Cir. 2010) ("[W]e look to Justice Stevens' concurrence for guidance on this issue."). The Tenth Circuit's obeisance to Justice Stevens' concurrence is binding on this Court, regardless of the persuasive force of Justice Scalia's opinion. *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit . . . .").

Justice Stevens' concurrence, far from endorsing Justice Scalia's mechanical application of Rule 23, repeatedly admonished that perceived conflicts between state substantive law and Federal Rules of Civil Procedure must be avoided: "When a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can

reasonably be interpreted to avoid that impermissible result." *Shady Grove*, 559 U.S. at 423. Had *Curry* accorded that directive its proper due, it would not have departed from this Court's prior precedent to find that Rule 23 was impossible to square with NISNPIA. Rather, it would have found, as in *Callegari* and *Fullmer*, that Rule 23 and NISNPIA could co-exist within their separate spheres due to the permissive, and not mandatory, nature of Rule 23.

Second, after finding that NISNPIA and Rule 23 conflicted, *Curry* determined that Rule 23 did not alter any substantive rights or remedies. It reached this conclusion based on an incomplete analysis of NISNPIA's statutory structure and its legislative history, which was not briefed by the parties.[4] *Curry* divided Section 203 of NISNPIA into "three subsections," the first defining the "dimensions of the claim and the cause of action," (§ 203(1)) the second providing remedies for a violation (§ 203(2)) and the third dictating a "matter of procedure" (§ 203(3)). Having isolated the class action bar of § 203(3) into an extricable procedural rule, the Court effectuated its "surgical removal" from the law in favor of applying Rule 23. *Curry*, 2023 WL 6318108, at *6. Respectfully, this view of NISNPIA disregards the statutory structure as whole to achieve an artificial parsing of Section 203 and does not read the statutory provisions in harmony.

The enrolled bill is divided into six subsections bifurcated in two parts. Part 1, "General Provisions" is comprised of Section 1 (§ 101, "Title") and Section 2 (§ 102, "Definitions"). Part 2, "Notice of Disclosure" is divisible into Section 3 (§ 201, "Required Notice"); Section 4 (§ 202, "Disclosure of nonpublic personal information prohibited without notice"); Section 5

---

[4] *See* Defendant's *Motion to Dismiss and Memorandum in Support*, *Curry v. Mrs. Fields Gifts*, No. 2:22-cv-651 (D. Utah Dec. 29, 2022), ECF No. 14; *Opposition to Motion to Dismiss*, *Curry v. Mrs. Fields Gifts*, No. 2:22-cv-651 (D. Utah Jan. 26, 2023), ECF No. 15; *Defendant's Reply in Support of Motion to Dismiss*, *Curry v. Mrs. Fields Gifts*, No. 2:22-cv-651 (D. Utah Feb. 23, 2023), ECF No. 26.

(§ 203, "Liability") and Section 6 "Effective Date." The class action bar is situated within Section 5 (§ 203, "Liability"). So situated, the class action bar is intimately bound up within the rights and remedies afforded under the "Liability" Section. It is not, as *Curry* concluded, cordoned off as a separate procedural mechanism within the bill, but is in fact set forth in the same breath as the section establishing NISNPIA's substantive rights and remedies.

A close examination of Section 203 reveals that the class action bar is integral to the rights and remedies afforded where "[o]ne of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject-matter of the statute dealing with the subject." *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 466 (Utah 1989) (quoting *Masich v. U.S. Smelting*, 113 Utah 101, 191 P.2d 612, 616 (1948)).

Section 203(1) states that "a person may bring an action" under NISNPIA and Section 203(2) states that "a commercial entity that violates this chapter is liable to the person who brings the action." Although the rules of statutory construction state that the "singular includes the plural, and the plural includes the singular" such rules are not applied where the application would be "inconsistent with the manifest intent of the Legislature; or . . . repugnant to the context of the statute." Utah Code Ann. § 68-3-12(1)(a) and (b). Further, the same code defines person as "an individual," not a group of individuals. *Id*. § 68-3-12.5(24)(a).

Faced with questioning regarding the potential explosion of litigation arising from the new law, Representative Aagard assured the assembled House that he had "purposefully limited the penalties . . . to take care of any unintended consequences" and that he was "trying to take a cautious approach so we don't have some problems." H.B. 40s1, 55 Leg., Gen. Sess., Day 12, (Utah, Jan. 29, 2003). To achieve this objective, NISNPIA assigns only modest penalties—a

damage cap of $500 to a single person bringing the action, pursued on an individual basis. Utah Code Ann. § 13-37-203(2)(a). Apprehending the impact of such a bill, the accompanying fiscal note merely stated: "some companies now selling this information may see a reduction in sales." H.B. 40s1, 55 Leg., Gen. Sess., Fiscal note (Utah 2003), available at https://le.utah.gov/lfa/fnotes/2003/HB0040S1.fn.pdf.

The statute's intent to limit penalties and only create a modest fiscal impact against companies, coupled with the singular use of the word "person" in the statute, compels the conclusion that, even without the class action bar, the law only created a substantive right for one person to bring an action under NISNPIA and a recovery for only that person, *i.e.*, that relief via a class action or mass action is unavailing. The class action bar merely makes explicit what the rights and remedies "subsections" imply—"a person may not bring a class action under this chapter."

The threat of nationwide class litigation would have been unfathomable in light of Representative Aagard's representations and the concerns of other members. The application of Rule 23 in this context would inevitably enlarge or modify the rights and remedies conferred by NISNPIA; it would bring about the very "unintended consequences" that the legislature hoped to avoid. In this situation, the court "cannot apply the rule." *Shady Grove*, 559 U.S. at 422-23 (Stevens, J., concurring).

Third, and contrary to *Curry*, whether that provision substantively defines the scope of a right or remedy does not depend on whether a court could blue-pencil the provision. *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) (the Wyoming pleading requirement for claims against counties that barred corrective amendments, which was first created by case law and then codified, was not preempted by the conflicting federal procedural

rules because the state-law requirement, although phrased in procedural terms, "is part of the substantive law of Wyoming").[5] In *Garman*, the Court determined that a pleading requirement— by its nature easily extricated from the State's rules—was substantive and must apply in diversity actions because it was bound up with a limited abrogation of sovereign immunity. *Id.*

      *Fullmer*, too, could have extricated the class action bar from the statute at issue without fanfare. The statutory remedy in the UCSPA, at issue in *Fulmer*, could stand without its class action limitation, expressed by the phrase "but not in a class action" (*see* Utah Code Ann. § 13-11-19(2) ("A consumer who suffers a loss as a result of a violation of this chapter may recover, but not in a class action, actual damages or $2,000, whichever is greater, plus court costs.")) but following authorities like *Garman*, the Court focused not on the ease of removing the provision, but rather on its relationship to the rights and remedies afforded by the law and its importance within the statutory structure as a whole. *Fullmer*, 2022 WL 1538675, at *1, *3-4. The question is not whether a provision may possibly be removed, but rather whether its relation to state rights and remedies requires it to remain.

      Without the benefit of the case law discussed *supra*, *Curry* adopted the approach of the *Shady Grove* plurality. *See* 559 U.S. at 407 ("If it governs only the manner and the means by which the litigants' rights are enforced, it is valid . . . .") (quotation marks omitted). In the Tenth Circuit, however, Justice Stevens' approach governs.. *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 n.3 (10th Cir. 2018) ("Justice Stevens' concurrence in *Shady Grove* provides the controlling analysis in the Tenth Circuit.").

---

[5] *Garman* was not presented to this Court in *Curry*.

This Court should use this opportunity to correct course, conclude that the class action bar is substantive in nature, and allow the class action bar in NISNPIA to supersede Rule 23's permissive class action right for claims brought under NISNPIA.

### E. Without a Viable Class, Plaintiffs Cannot Satisfy the Amount-in-Controversy Requirement and this Case Must be Dismissed.

NISNPIA's class action bar must remain intact because it is bound up with the law's rights and remedies. In this circumstance, *Shady Grove* requires a federal court sitting in diversity, like this one, to honor its application. The result is that Plaintiffs cannot maintain a class, and, without a class, they cannot satisfy the amount-in-controversy requirements for diversity jurisdiction. Plaintiffs' claims must be dismissed for lack of jurisdiction. *See Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1127 (10th Cir. 2021) (dismissing class action for lack of subject-matter jurisdiction where plaintiff failed to establish amount-in-controversy requirement).

## II. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THAT SUNDANCE DISCLOSED "NONPUBLIC PERSONAL INFORMATION."

*Arguendo*, even if NISNPIA did not bar class actions, Plaintiffs' claims would fail because they do not adequately allege, beyond mere conclusion, that Sundance disclosed their "nonpublic personal information." At base, the Complaint makes the following allegations concerning the Plaintiffs: (1) Plaintiffs bought items from Defendant; (2) at the time of the purchase, Defendant collected unspecified information that was required for the purchase; and (3) therefore Defendant must have disclosed that information. These allegations, bereft of specific facts, are nothing more than the elements of the claim. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). With respect to each specific Plaintiff, the Complaint only alleges:

20

> during the applicable statutory period, Sundance sold, rented, or otherwise disclosed for compensation, without providing Plaintiff . . . the prior notice required by Utah Code Ann. § 13-37-201, Plaintiff['s] . . . Private Purchase Information to data aggregators, data appenders, data cooperatives, list brokers, aggressive advertisers, direct-marketing companies, political organizations, nonprofit companies, and other third parties.

(Am. Compl. ¶¶ 12, 17, 22, 27, 32, 37, 42, 47, 52, 57, 62). While the Complaint generally alleges that Sundance maintains "customer lists" that it sells to third parties for a profit, and that these lists contain "Private Purchase Information," it omits any specific facts that tie Plaintiffs' information to this alleged practice. (Am. Compl. ¶¶ 1, 98). Pleading of this nature is insufficient to state a claim by any Plaintiff, as it is devoid of surrounding facts necessary to sufficiently plead a disclosure of information in violation of NISNPIA. There are no allegations specific to any Plaintiff that states what information was gathered from that Plaintiff, what information was disclosed, and to whom.

## CONCLUSION

Based on the foregoing, this Court should dismiss the Complaint with prejudice because NISNPIA bars class action claims, and, without a class, Plaintiff cannot satisfy the requirements for diversity jurisdiction.

Alternatively, this Court should dismiss the Complaint for failure to allege sufficient facts to amount to an unlawful disclosure of protected information.

Dated: July 19, 2024,                              Respectfully submitted,

                                                   By: /s/ Jordan K. Cameron
                                                   Jordan K. Cameron
                                                   **CAMERON RINGWOOD, LC**
                                                   6975 Union Park Ave, Suite 600
                                                   Cottonwood Heights, UT 84047

Telephone: (385) 463-2425
jordan@cameronringwood.com

Elizabeth C. Rinehart (*pro hac vice*)
**VENABLE LLP**
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 528-4646
lcrinehart@venable.com

*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on the 19th day of July 2024, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** was sent via this Court's CM/ECF system upon all counsel of record:

Elliot Omega Preston Jackson (*pro hac vice*)
**HEDIN LLP**
1395 Brickell Ave., Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
<u>ejackson@hedinllp.com</u>

David W. Scofield (4140)
**PETERS SCOFIELD**
7430 Creek Road, Suite 303
Salt Lake City, UT 84093-6160
Telephone: (801) 322-2002
<u>dws@psplawyers.com</u>

*Attorneys for Plaintiffs*


<u>/s/ Jordan K. Cameron</u>
Jordan K. Cameron

*Attorney for Defendant*