FRANK S. HEDIN
ELLIOT O. JACKSON
**HEDIN LLP**
1395 Brickell Avenue, Suite 610
Miami, Florida 33131-3302
Telephone:     (305) 357-2107
Facsimile:     (305) 200-8801
E-Mail:        fhedin@hedinllp.com
               ejackson@hedinllp.com


DAVID W. SCOFIELD – 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone:     (801) 322-2002
Facsimile:     (801) 912-0320
E-Mail:        dws@psplawyers.com

*Counsel for Plaintiffs and Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SHANNON ARNSTEIN; DANA BASSETT; MARTIKA GARTMAN; SUELLEN HENDRIX; DEBRA MACKLIN; JEANINE MARK; MICHELLE MEINHOLD; MARIE MICHELS; JILLI OYENQUE; BARBARA PORTER; and ELIZABETH WUEBKER, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>     v.<br><br>SUNDANCE HOLDINGS GROUP, LLC,<br><br>          Defendant. | Case No. 2:24-cv-00344-RJS<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg<br><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT** |

# Table of Contents

**INTRODUCTION**.......................................................................**Error! Bookmark not defined.**

**ARGUMENT** ...............................................................................**Error! Bookmark not defined.**

I.  NISNPIA'S Class-Action Bar Does Not Apply in Federal Court, and the Motion to Dismiss Pursuant to Rule 12(b)(1) Should be Denied .......**Error! Bookmark not defined.**

   A.  The Supreme Court's Decision in *Shady Grove* ............**Error! Bookmark not defined.**

   B.  The Application of *Shady Grove* to NISNPIA Claims in Curry et al. v. Mrs. Fields, Inc. **Error! Bookmark not defined.**

   C.  This Court Should Adopt the Reasoning of *Curry* and Hold that NISNPIA's Class-Action Bar Does Not Apply in Federal Court ...............**Error! Bookmark not defined.**

II.  The Factual Allegations of the FAC Adequately State a Claim for Violation of NISNPIA, and the Motion to Dismiss Pursuant to Rule 12(b)(6) Should be Denied **Error! Bookmark not defined.**

**CONCLUSION** ..........................................................................**Error! Bookmark not defined.**

# Table of Authorities

## Cases

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 n.1 (D.C. Cir. 2015)......................... 14

*Batts v. Gannett Co.*, 2023 WL 3143695 (E.D. Mich. Mar. 30, 2023)......................................... 23

*Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016)................................... 24

*Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013) ...................... 22

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ............................................................................... 9

*Callegari v. Blendtec, Inc.*, No. 2:18-CV-308-DB, 2018 WL 5808805, at *4 (D. Utah Nov. 6, 2018)........................................................................................................................................ 15

*Collins Music Co. v. United States*, 21 F.3d 1330, 1338 (4th Cir. 1994) ...................................... 8

*Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 530-37 (E.D. Mich. 2015)................................... 10

*Curry v. Fields Gifts, Inc.*, No. 2:22-CV-00651-JNP-DBP, 2024 WL 3794487, at *7 (D. Utah Aug. 13, 2024) ............................................................................................................................ 23

*Curry v. Mrs. Fields Gifts, Inc.* ............................................................................................... 1, 4

*Effexor Antitrust Litigation,* 357 F. Supp. 3d 363, 389-90 (D.N.J. 2018) .................................. 18

*Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 728-29 (D.S.C. 2016) ..................................... 18

*Fullmer v. A-1 Collection Agency, LLC*, Case No. 4:20-cv-00143-DN-PK, 2022 WL 1538675 (D. Utah May 16, 2022)................................................................................................................ 15

*Gaines v. Nat'l Wildlife Fed'n*, No. 22-11173, 2023 WL 3186284, at *4 (E.D. Mich. May 1, 2023) ........................................................................................................................................ 24

*Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1229 (D.N.M. 2018)............................................ 18

*Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1292 (10th Cir. 2017) ................. 22

*Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 398 (Fed. Cir. 1990) ..................................... 7

*Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) ................................ 23

*Huggins v. Hilton*, 180 F. App'x 814, 816 (10th Cir. 2006).......................................................... 23

*In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018)................... 10

*In re Principal Us. Prop. Account ERISA Litig.*, No. 10-198, 2011 WL 1898915, at *8 (S.D. Iowa May 17, 2011)..................................................................................................................... 12

*Kaiser v. Imperial Oil of N. Dakota*, No. CV 23-59-BLG-SPW, 2024 WL 626423.................... 9

*Keepseagle v. Perdue*, 856 F.3d 1039, 1069 n.7 (D.C. Cir. 2017) ................................................ 5

*Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015)....... 14, 17, 18

*Murtagh v. Bed Bath & Beyond Inc.*, No. 19-cv-03487-CMA-NYW, 2020 WL 4195126, at *7 (D. Colo. July 3, 2020)................................................................................................................ 18

*Nexium (Esomeprazole) Antitrust Litigation*, 968 F. Supp. 2d 367, 409 (D. Mass. 2013).......... 18

No. 2:22-CV-00651-JNP-DBP, 2023 WL 6318108, at *2-5 (D. Utah Sept. 28, 2023) ................. 1

*Nock v. Boardroom, Inc.*, No. 22-CV-11296, 2023 WL 3572857, at *4 (E.D. Mich. May 19, 2023) ........................................................................................................................................ 24

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ............................................................. 10

*Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 644 (D.N.M. 2018)................................... 18

*Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343-44 (D. Mass. 2020) ......................................... 24

*Regan v. Wald,* 468 U.S. 222, 237 (1984) .................................................................................... 8

*Roberts v. C.R. Eng., Inc.*, 321 F. Supp. 3d 1251, 1254 n.12 (D. Utah 2018)............................ 14

*Roberts v. C.R. England*, 321 F. Supp. 3d 1251, 1258-59 (D. Utah 2018)........................... 17, 18

*Rodriguez-Reyes v. Molina-Rodriguez,* 711 F.3d 49, 53-54 (1st Cir. 2013) .............................. 25

*Russett v. NTVB Media, Inc.*, No. 22-10352, 2023 WL 6315998, at *2 (E.D. Mich. Sept. 28, 2023) ........................................................................................................................................ 24

*S & E Contractors, Inc. v. U.S.,* 406 U.S. 1, 13 n. 9 (1972) ............................................ 7
*Saunders v. Sec'y of Dep't of Health & Hum. Servs.,* 26 Cl. Ct. 1221, 1225 (1992)..................... 8
<u>*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*</u> ................................. 1, 2, 3, 4
*Smith-Brown v. Ulta Beauty, Inc.,* 2019 WL 932022 at *13-14 (N.D. Ill. Feb. 26, 2019)........... 18
*Spreitsma v. Mercury Marine,* 537 U.S. 51 (2002) ........................................................... 9
*Stender v. Archstone-Smith Operating Tr.,* 958 F.3d 938, 947 (10th Cir. 2020)......................... 3
*Vance v. DirecTV, LLC,* No. 5:17-CV-179, 2022 WL 3044653, at *5-*13 (N.D.W. Va. Aug. 1,
    2022) ................................................................................................................. 10
*Weinberger v. Rossi,* 456 U.S. 25, 35 n.15 (1982) ......................................................... 7
*Zimmerman v. 3M Company*, 542 F. Supp. 3d 673 (W.D. Mich. 2021)...................................... 24

## Statutes

§ 10-19.1-115(8) ................................................................................................. 9
§ 13-25a-107(2)(a) ........................................................................................... 11
§ 13-307-203(2) ................................................................................................ 8
§ 13-307-203(3) ................................................................................................ 8
13-37-203(1) ................................................................................................ 9, 11
Class Action Fairness Act, 28 U.S.C. § 1332(d) ............................................................... 1
Colo. Rev. Stat. § 6-1-113(2).............................................................................. 18
Illinois Biometric Information Privacy Act, 740 Ill. Comp. Stat. Ann. 14/20(a) ..................... 10
M.C.L.A. § 445.1715 ......................................................................................... 10
M.C.R. § 3.501(A)(5) ........................................................................................ 10
Michigan's Preservation of Personal Privacy Act ................................................... 10, 23
N.Y. Ins. Law § 5106 ........................................................................................ 10
S.C. Code § 39–5–140(a) .................................................................................... 19
Tenn. Code Ann. § 47-18-109(a)(1) ........................................................................ 18
U.S.C. § 2000e-5(f)(1) ...................................................................................... 14
U.S.C. § 626(c)(1).......................................................................................... 14
U.S.C.A. § 227(b)(3)(A) ..................................................................................... 10
Utah Code Ann. § 13-25a-107(1) ........................................................................... 11
Utah Code Ann. § 13-37-101 ................................................................................. 1
Utah Code Ann. § 13-37-203(3) .............................................................................. 3
Utah Code Ann. § 68-3-12(1)(a)-(b)......................................................................... 9
Utah Code Ann. 13-37-203(2)(a)-(b)........................................................................ 16
Utah's Notice of Intent to Sell Nonpublic Personal Information Act............................................ 1

## Other Authorities

H.B. 40s1, 55 Leg., Gen. Sess., Day 12, (Utah, Jan. 29, 2003) ..................................... 6

## Rules

14(a)(1) ...................................................................................................... 14
18(a)-(b) ..................................................................................................... 14
20(a)(1)-(2) .................................................................................................. 14
27(a)(1) ...................................................................................................... 14
30(a)(1) ...................................................................................................... 14
Fed R. Civ. P. 23(b) .......................................................................................... 5
Fed. R. Civ. P. 23 ....................................................................................... 3, 4, 13
Fed. R. Civ. P. 8(d)(2)-(3).................................................................................. 14

Federal Rule of Civil Procedure 23. 559 U.S. 393, 394 (2010).......................................................... 1
*Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017) ............... 4
Rule 12(b)(1)............................................................................................................................... ii, 1, 2
Rule 12(b)(6)............................................................................................................................... passim

Plaintiffs submit this response in opposition to the motion to dismiss (ECF No. 23 (the "Motion" or "Mot.")) filed by Defendant Sundance Holdings Group, LLC.

## INTRODUCTION

In this putative consumer class action, Plaintiffs allege in the operative First Amended Class Action Complaint (ECF No. 12 (the "FAC")) that Defendant Sundance Holdings Group, LLC violated Utah's Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code Ann. § 13-37-101 *et seq.* ("NISNPIA" or "Act"), by disclosing their nonpublic personal information to various third parties for compensation. The Court has subject-matter jurisdiction over this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (*See* FAC at ¶ 65.)

In the Motion, Defendant moves to dismiss the FAC for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), on the ground that NISNPIA expressly prohibits class actions and that Plaintiffs are thus unable to invoke CAFA jurisdiction, and for failure to state a claim for relief pursuant to Rule 12(b)(6), on the ground that the factual allegations of the FAC fail to adequately demonstrate that Defendant disclosed their nonpublic personal information.  Both grounds for dismissal are without merit.  First, pursuant to controlling Supreme Court precedent in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), NISNPIA's provision barring class actions is inapplicable in federal court because it is procedural in nature, separate and apart from the statute's provisions that define substantive rights and remedies, and therefore cannot override Federal Rule of Civil Procedure 23.  In fact, a recent decision from the Hon. Jill N. Parrish of this district in another NISNPIA class action, *Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-CV-00651-JNP-DBP, 2023 WL 6318108 (D. Utah Sept. 28, 2023) (unpublished) (attached hereto as **Exhibit A**), holds exactly that. Second, the FAC adequately states a claim for violation of NISNPIA because it contains numerous well-pled factual allegations establishing that Defendant

sold, rented, and otherwise disclosed for compensation *all of its customers'* nonpublic personal information – including Plaintiffs' – to numerous third parties for compensation.

The Court has subject-matter jurisdiction, and the FAC states a claim for relief.  The Motion should be denied.

## ARGUMENT

NISNPIA's provision barring class actions is inapplicable in federal court under the Supreme Court's decision in *Shady Grove*, and Plaintiffs allege numerous facts showing that their nonpublic personal information was disclosed to various third parties for compensation in violation of NISNPIA.  The Court has subject-matter jurisdiction pursuant to CAFA, and the FAC adequately states a claim for relief.

## I.     NISNPIA'S Class-Action Bar Does Not Apply in Federal Court, and the Motion to Dismiss Pursuant to Rule 12(b)(1) Should be Denied

The Supreme Court's decision in *Shady Grove* controls the question of whether Rule 23 or NISNPIA's class-action bar applies in this case, and Judge Parrish recently answered that question in *Curry* in favor of Rule 23.  Because none of Defendant's arguments in favor of applying NISNPIA's class-action bar stand up to scrutiny, the Court should adopt the reasoning of Judge Parrish in *Curry* and deny the Motion.

### A.  The Supreme Court's Decision in *Shady Grove*

In *Shady Grove*, the Supreme Court held that a New York statutory provision restricting class actions was preempted by Rule 23 because the statutory restriction directly conflicted with Rule 23, and because Rule 23's application would not "abridge, enlarge or modify any substantive right" afforded under New York law. *Shady Grove*, 559 U.S. at 393.

Justice Stevens's concurrence in *Shady Grove*, which controls in certain respects in the Tenth Circuit, *see Stender v. Archstone-Smith Operating Tr*., 958 F.3d 938, 947 (10th Cir. 2020),

explained that even where a state rule appears procedural in form, a court should nonetheless pay attention to whether the state rule actually implicates substantive rights and remedies. *Shady Grove*, 559 U.S. at 416-437 (Steven, J. concurring). Justice Stevens agreed that the New York class action bar was in direct conflict with Fed. R. Civ. P. 23, and, based on the lack of a clear legislative statement that the class action bar was imposed to impact remedies rather than procedure, among other factors, determined the bar was non-substantive, and therefore did not apply in a federal diversity action. *Id*.

The same two-step analysis applied in Justice Stevens's concurrence compels the same outcome in this case. *See Shady Grove*, 559 U.S. at 421. At the first step, the inquiry is whether Rule 23 "answers the question in dispute," or stated differently, "whether the scope of [Rule 23] is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law" set forth in Utah Code Ann. § 13-37-203(3). *Id*. (internal quotations and citations omitted). And if there is such a "direct collision" between Rule 23 and NSNPIA's class action bar, the inquiry at the second step is whether applying Rule 23 would "effectively abridge[], enlarge[], or modif[y] a state-created right or remedy" in violation of the Rules Enabling Act. *Shady Grove*, 559 U.S. at 394.

As Judge Parrish concluded in *Curry*, NSNPIA's class action bar directly collides with Rule 23, and applying Rule 23 in this case would not violate the Rules Enabling Act. Accordingly, Rule 23, not the NSNIPIA's class action bar, applies in this case.

### B.  The District of Utah's Application of *Shady Grove* to NISNPIA Claims in *Curry*

In *Curry v. Mrs. Fields, Inc.*, also a class action alleging violation of NISNPIA, Judge Parrish issued a thorough, well-reasoned decision finding that, under the standard set forth in *Shady Grove*, NISNPIA's class-action bar is not part of Utah's framework of substantive rights

and remedies, such that Rule 23 entitled the plaintiffs to maintain the case as a class action in federal court. *See Curry* 2023 WL 6318108, at *2-5.

Under the first step of the *Shady Grove* analysis, the court in *Curry* "consider[ed] whether Rule 23 answers the same questions as [NISNPIA's class-action bar]." *Id.* at *2. The court answered this question in the affirmative: "By their plain text, Rule 23 and § 203(3) are in direct, unavoidable conflict. Under the former, a class action 'may be maintained.' Fed. R. Civ. P. 23(b). Under the latter, a class action 'may *not*' be brought by a person." *Id.* at *3. In other words, "[t]here is a direct collision" between Rule 23 and NISNPIA's class-action bar because "Rule 23, as interpreted by a majority of the Supreme Court [in *Shady Grove*], stands for the proposition that a plaintiff 'may bring a class action if he wishes,' *Shady Grove,* 559 U.S. at 400 (majority opinion), whereas the Utah statute says precisely the opposite." *Id* at *5.

After determining that Rule 23 answers the same question as NISNPIA's class-action bar, the court in *Curry* next analyzed whether Rule 23 is *ultra vires*. "Follow[ing] the roadmap provided by Justice Stevens in his concurrence," which in the Tenth Circuit controls the inquiry under Step Two, the court focused its analysis on "'whether [Rule 23] has displaced '[Utah's] definition of its own rights or remedies [in NISNPIA],'" *Id.* at *5 (quoting *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017) (citing *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring)). The court explained that, because "the class action mechanism under Rule 23 is merely a 'species of joinder,' *Shady Grove*, 559 U.S. at 408 (plurality opinion); *Keepseagle v. Perdue*, 856 F.3d 1039, 1069 n.7 (D.C. Cir. 2017), and therefore presumptively procedural by nature," in order for a Rules Enabling Act problem to arise, "the traditionally procedural class action form in [NISNPIA] must . . . be truly inseparable from the [statute's] substantive rights and remedies" – an issue that "can be resolved by reference to the relevant statutory 'text and context'

alone." *Curry*, 2023 WL 6318108, at *6. Analyzing the plain language and structure of the statute, the court found that the class-action bar found in section 203(3) of NISNPIA "is neither a statement of rights nor one of remedies," as "[i]t neither dictates what must be pleaded or proved as a cause of action, nor does it determine what a plaintiff *gets* should he prevail on such a claim." *Id.* at *7. "Instead, § 203(3) is entirely a matter of procedure, merely going to the preferred means of joinder and aggregation[.]" *Id.* So while "Utah has calibrated the ease of aggregating claims under NISNPIA one way through regulation of its state courts under the Act, and Congress has elected another calibration through Rule 23 in the government of federal courts[,] . . . [i]n both cases . . . the class action remains a quintessentially procedural claims-processing device and, in the specific case of NISNPIA, is separable from any elements of Utah's 'framework of substantive rights and remedies[]' otherwise provided under that Act." *Id.* (quoting *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring)).

Having found that "Rule 23 does not 'abridge, enlarge or modify,' Utah's substantive rights under NISNPIA," *id.* (quoting *Shady Grove*, 559 U.S. at 422 (Stevens, J., concurring), the court in *Curry* "conclude[d] that Rule 23 permits Plaintiffs to 'maintain[ ]' a class action suit'" for violation of NISNPIA in federal court. *Id.* (quoting Fed R. Civ. P. 23(b)).

### C. This Court Should Adopt the Reasoning of *Curry* and Hold that NISNPIA's Class-Action Bar Does Not Apply in Federal Court

This Court should adopt the persuasive, thorough reasoning of Judge Parrish's decision in *Curry* – which considered and rejected the same arguments Defendant makes in the Motion in this case – and hold that Plaintiffs are permitted to bring this action in federal court notwithstanding the procedural provision barring class actions found in section 13-37-203(3) of NISNPIA.

The only argument Defendant makes in the Motion not also made by the defendant in *Curry* is that NISNPIA's legislative history evinces an intent for the statute's class-action ban to "limit

5

the substantive rights and remedies afforded under [NISNPIA]." (Mot. at 11.) In support of this argument, Defendant cites to the following statement made by Rep. Aagard on the floor of the Utah House of Representatives while the bill was under consideration: "I purposefully limited the penalties just to—to avoid—to take care of any unintended consequences . . . ." H.B. 40s1, 55 Leg., Gen. Sess., Day 12, (Utah, Jan. 29, 2003).  According to Defendant, this statement shows that the Utah legislature intended for NISNPIA's provision barring class actions to affect substantive rights and remedies.  Defendant has picked the wrong spot to wager all of its chips.

Not only does Rep. Aagard's statement make no reference to the provision barring class actions, but any fair reading of his statement in the appropriate context reveals that it plainly had nothing to do with the provision barring class actions.  Specifically, the transcript of the floor proceedings in question states, in pertinent part:

> MR. DOUGALL: Okay. And does that... I guess my question would also be, does this open us up to somebody whose information was distributed, searching for who perhaps did it, not knowing which company did it, and then starting to sue lots of these companies, trying to figure out who's the one that distributed it without authorization?
>
> MR. AAGARD: I don't think so. Like I said, we've studied this. It's been a year in study. And all interested parties that I know of are okay with the way this thing is written, and the penalties.  I purposely limited the penalties just to avoid, uh, to take care of any unintended consequences. So I think we're fine.
>
> MR. DOUGALL: I would just like to encourage the body, this is a bill that has some serious consequences on business, and I understand the intent of it, but I would encourage you, if you haven't read it, please read it. Take five minutes, read the bill, see what it requires.  Think about the unintended consequences that come along with this. Thank you.

(Transcript of Proceedings, Utah House of Representatives, Feb. 6, 2003 (a copy of which is attached as **Exhibit B**), at 10:7-11:2.)

As the portion of the transcript quoted above shows, the statement from Rep. Aagard that Defendant focuses on in the Motion was made in response to a question concerning the potential

6

for a person bringing numerous claims under the statute against numerous companies, any one of which the person believes might have been responsible for selling his or her non-public personal information.  That is a totally different scenario than a single person bringing a claim under the statute against a single company, both individually and on behalf of numerous others similarly situated.  Thus, viewed in the proper context, Rep. Aagard's response to the question he was asked could not possibly have been made in reference to the statute's provision barring class actions.[1]

It is well established that "[t]he contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history." *Weinberger v. Rossi*, 456 U.S. 25, 35 n.15 (1982). Although courts should be "extremely wary of testimony before committee hearings and debates on the floor of Congress," courts may make an exception for "precise analyses of statutory phrases by the sponsors of the proposed laws." *S & E Contractors, Inc. v. U.S.,* 406 U.S. 1, 13 n. 9 (1972); *see also Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 398 (Fed. Cir. 1990) (acknowledging that a sponsor's remarks should be afforded some weight as to the meaning of a bill but that this weight is only justified when the remarks are directed to the intended meaning of particular words in a statute) (citing *Regan v. Wald,* 468 U.S. 222, 237 (1984)).

Thus, Defendant bore the burden of presenting a "precise analyses of statutory phrases by [Rep. Aagard]" that evidenced a legislative intent for the provision barring class actions to affect the substantive rights or remedies under the statute. *See S & E Contractors, Inc.,* 406 U.S. at 13 n. 9. Instead, Defendant has presented nothing more than a single statement – made in response to a

---

[1]      Tellingly, after Rep. Aagard responded to the question, the member who asked the question, Rep. Dougall, nonetheless urged members to "read the bill, see what it requires," and to "think about the unintended consequences that come along with this."  That Rep. Dougall continued to warn of the "unintended consequences" of the bill, at a time when it already contained the provision barring class actions, only further confirms that Rep. Aagard's statement regarding "unintended consequences" was not made in reference to – and was not understood by the other members on the House floor that day as referring to – the provision barring class actions.

question on a subject having nothing to do with section 13-37-203(3)'s provision barring class actions or even the aggregation of numerous persons' claims against a single defendant more generally – that vaguely mentions "the penalties" section of the statute[2] and how that section was drafted to "take care of any unintended consequences." That is a far cry from the sort of "precise analysis of" NISNPIA's provision barring class actions that would be necessary for Rep. Aagard's statement to have any potential use in demonstrating a legislative intent for section 13-37-203(3)'s procedural class-action bar to somehow define substantive rights and remedies. *See, e.g., Collins Music Co. v. United States*, 21 F.3d 1330, 1338 (4th Cir. 1994) ("We believe the practical effect of the final version of the statute is, at all events, far more persuasive than any statement, let alone an ambiguous one, in the statute's legislative history."); *Saunders v. Sec'y of Dep't of Health & Hum. Servs.*, 26 Cl. Ct. 1221, 1225 (1992), *aff'd*, 25 F.3d 1031 (Fed. Cir. 1994) ("at best, the language [of the statement in the legislative history] is ambiguous and therefore insufficient to cast doubt upon the meaning of the statute"); *Kaiser v. Imperial Oil of N. Dakota*, No. CV 23-59-BLG-SPW, 2024 WL 626423, at *8-*9 (D. Mont. Feb. 14, 2024) (unpublished) (finding that federal Rule 19's application over contrary state rule does not violate Rules Enabling Act where "the available [legislative] history of § 10-19.1-115(8) also does not clearly establish that North Dakota considers the joinder provision of § 10-19.1-115(8) as substantive—or part of its rights and

---

[2]     Notably, the "penalties" for violation of NISNPIA are laid out in section § 13-307-203(2) – separate from section § 13-307-203(3) where the provision barring class actions is found.  Thus, Rep. Aagard's statement that he drafted the penalties section to avoid "unintended consequences" could not possibly have been in reference to the provision barring class actions.  The far more likely explanation is that Rep. Aagard was referring to the modest $500 per violation statutory damage award available under section § 13-307-203(2).

remedies," explaining that "without any applicable legislative history, the Court cannot conclude the high bar for finding a Rules Enabling Act violation is met").[3]

Defendant nevertheless attempts to bolster its strained interpretation of Rep. Aagard's statement by citing to the statute's use of the word "person" (in the singular) in sections 13-37-203(1) (referring to "a person" who "may bring an action" under NISNPIA) and 13-37-203(2) (referring to a violating commercial entity's liability to "the person") of the statute. (Mot. at 18 (arguing that, "even without the class action bar, the law only created a substantive right for one person to bring an action under NISNPIA and a recovery for only that person"). This argument fails for several reasons. For one thing, the Utah Code expressly provides that, "in the construction of a statute in the Utah Code, . . . [t]he singular includes the plural, and the plural includes the singular." Utah Code Ann. § 68-3-12(1)(a)-(b). Moreover, the Supreme Court's decision in *Califano v. Yamasaki,* 442 U.S. 682 (1979) makes clear that a statute's use of the nouns "person" or "individual" (in the singular) to identify who has standing to seek redress is not to be read as a restriction on the utilization of a procedural claims-processing device to aggregate multiple individual claims. *See Califano*, 442 U.S. at 700 ("The fact that the statute speaks in terms of an action brought by 'any individual' or that it contemplates case-by-case adjudication does not indicate that the usual Rule providing for class actions is not controlling, where under that Rule certification of a class action otherwise is permissible."). Thus, numerous federal courts have permitted class actions alleging violations of state and federal statutes that provide an entitlement

---

[3]   The gross inadequacy of the legislative evidence underlying Defendant's argument in favor of NISNPIA's class-action bar is underscored by the Supreme Court's decision in *Spreitsma v. Mercury Marine,* 537 U.S. 51 (2002). Even though the legislative history of the statute there in issue included a statement expressly asserting the field of boating standards or regulations would be pre-empted – a considerably less ambiguous indication of intent than Defendant adduces here – the Supreme Court held the statement insufficient to show an intent to pre-empt state common law tort claims. *Id.* at 69-70.

to relief to "a person" or "an individual" in the singular – *see, e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018), *aff'd sub nom., Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) (granting class certification in case alleging violation of Illinois Biometric Information Privacy Act, which provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action," and that "[a] prevailing party may recover for each violation," 740 Ill. Comp. Stat. Ann. 14/20(a)); *Vance v. DirecTV, LLC*, No. 5:17-CV-179, 2022 WL 3044653, at *5-*13 (N.D.W. Va. Aug. 1, 2022) (unpublished) (granting class certification in case alleging violation of the federal Telephone Consumer Protection Act, which provides that "[a] person or entity may . . . bring in an appropriate court . . . an action" for violation of its provisions, 47 U.S.C.A. § 227(b)(3)(A)) – including in such actions where the statute providing the right of action is subject to a state statutory provision barring class actions. *See, e.g., Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 530-37 (E.D. Mich. 2015) (granting class certification in case alleging violation of Michigan's Preservation of Personal Privacy Act, which provided that "[t]he customer may bring a civil action . . . and may recover" statutory damages of $5,000 or actual damages, whichever is greater, M.C.L.A. § 445.1715, 1989 Mich. Legis. Serv. 206, even though M.C.R. § 3.501(A)(5) prohibits class actions for violations of statutes that provide for minimum amounts of recovery).

In fact, although the statute at issue in *Shady Grove*, N.Y. Ins. Law § 5106, provided that "the *claimant* shall also be entitled to recover *his attorney's* reasonable fee, for services necessarily performed in connection with securing payment of the overdue *claim*," N.Y. Ins. Law § 5106(a) (emphasis added), the Supreme Court nonetheless held that violations of N.Y. Ins. Law § 5106 could be pursued on behalf of a class under Rule 23 in federal court – notwithstanding New York's procedural provision barring a person from bringing such a claim as a class action. *See Shady*

*Grove,* 559 U.S. at 397-98. Simply put, the use of the noun "person" in the singular in sections 13-37-203(1)-(2) of NISNPIA adds nothing to the *Shady Grove* analysis.[4]

Notably, even if Defendant were correct that the legislature intended for 13-37-203(3)'s procedural class-action bar to advance a policy objective of preventing the "unintended consequence" of "a torrent of lawsuits that could overburden a corporate defendant" (Mot. at 3), as Defendant speculates, Justice Stevens's concurrence in *Shady Grove* makes clear that any such legislative policy judgment would still be insufficient to demonstrate that section 13-37-203(3)'s procedural class-action bar is bound up in a substantive right or remedy afforded by NISNPIA. Indeed, in rejecting the claim that Rule 23 abridges, enlarges, or modifies a New York state right or remedy, namely New York G.B.L. § 901(b), Justice Stevens found that the legislative history of § 901(b) indicated that "New York clearly crafted § 901(b) with the intent that only certain lawsuits . . . could be joined in class actions in New York courts [which] reflects a policy judgment about which lawsuits should proceed in New York courts in a class form and which should not." *Id.* at 1458. Nonetheless, Justice Stevens held that "[i]n evaluating that legislative history, it is necessary to distinguish between procedural rules adopted for some policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy.

---

[4]      Nor is there any merit in Defendant's argument that the statute's use of the term "a person" to identify who may bring a claim for violation of NISNPIA, together with the procedural provision barring class actions, somehow transforms that procedural class-action bar into a provision aimed at affecting substantive rights or remedies. Rule 23 is merely a procedural tool for processing multiple individual claims in a single suit, the use of which is in no way incompatible with the reference to "a person" who may redress a violation in section 13-37-203(1)-(2). *See Shady Grove,* 559 U.S. at 408 (explaining that Rule 23 does not "change plaintiffs' separate entitlements to relief nor abridge defendants' rights" and, instead, alters "only how the claims are processed"). Tellingly, numerous Utah statutes that contain no procedural class action bars nonetheless provide that "a person" may bring an action to redress a violation and recover the statutorily set sum of damages. *See, e.g.,* Utah Code Ann. § 13-25a-107(1) (". . . a person may bring an action in any state court of competent jurisdiction . . ."); *id.* § 13-25a-107(2)(a) ("In a suit brought under Subsection (1) . . . a person may . . . recover the greater of $500 or the amount of the pecuniary loss . . .").

Although almost every rule is adopted for some reason and has some effect on the outcome of litigation, not every state rule defines the dimensions of [a] claim itself." *Id.* Thus, Justice Stevens concluded that even a legislative statement to the effect that a class action limit is adopted to prevent "annihilating punishment of the defendant" is "not particularly strong evidence that § 901(b) serves to define who can obtain a statutory penalty or that certifying such a class would enlarge New York's remedy. Any device that makes litigation easier makes it easier for plaintiffs to recover damages." *Id.* at 1458. Thus, even if Defendant's far-fetched reading of Rep. Aagard's statement were correct, any intention for section 13-37-203(3)'s procedural class-action bar to prevent the imposition of aggregate liability on businesses who violate the statute is still "not particularly strong evidence that [section 13-37-203(3)] serves to define who can obtain a statutory penalty or that certifying such a class would enlarge [Utah]'s remedy." *See id.*; *see also, e.g., In re Principal Us. Prop. Account ERISA Litig*., No. 10-198, 2011 WL 1898915, at *8 (S.D. Iowa May 17, 2011) (holding that "the fact that class certification will increase the number of Plans that will obtain relief if this case is successful does not transform the Rule 23 procedural device into a Rules Enabling Act-violating substantive device.").

Because neither the statement from Rep. Aagard on the House floor nor the statute's use of the word "person" in the singular has any bearing on the *Shady Grove* analysis, the decision in *Curry* does not, as Defendant argues in the Motion, rest on "an incomplete analysis of NISNPIA's statutory structure and its legislative history." (Mot. at 16-18.).  Rather, as discussed in greater detail below, the court in *Curry* thoroughly and forcefully rejected the idea that NISNPIA's structure or legislative history demonstrates that section 13-37-203(3) "was expressly enacted as part of an effort to limit the substantive rights and remedies afforded under [NISNPIA]" (Mot. at 11).  *See Curry,* 2023 WL 6318108, at *6–7. This Court should now reach the same conclusion

and deny the Motion.  *See Shady Grove*, 559 U.S. at 426 n.10 ("It will be rare that a federal rule that is facially valid under [the Rules Enabling Act] will displace a State's definition of its own substantive rights.").

Grasping at straws, Defendant also rehashes two of the same arguments previously raised by the defendant (and considered and rejected by Judge Parrish) in *Curry*: (1) that Justice Stevens's concurrence controls the analysis at step one of the *Shady Grove* analysis in the Tenth Circuit; and (2) that NISNPIA's provision barring class actions is bound up in the substantive rights and remedies under the statute because the provision barring class actions not appear in Utah's procedural code but in a provision of the statute itself.  Each of these arguments is baseless, and both were correctly rejected by Judge Parrish in *Curry*.

First, Defendant argues that the court in *Curry*, in performing its analysis at the first step of the *Shady Grove* framework, erred by relying on Justice Scalia's opinion for "the proposition that Fed. R. Civ. P. 23 created 'a categorical entitlement to the class action form.'" (Mot. at 15 (citing *Curry*, 2023 WL 6318108, at *4, *5 n.8)).)  According to Defendant, *Curry*'s "reliance on Justice Scalia's opinion cannot be squared with the Tenth Circuit's determination that Justice Stevens' concurrence is binding." (Mot at 15 (collecting cases).)  This is simply incorrect. As the court in *Curry* correctly explained, "Part IIA [of Justice Scalia's opinion] is directed to *Shady Grove* Step One," and it, along with Part I of the opinion, "were joined by Justices Roberts, Thomas, Sotomayor, and (importantly) Stevens, and are therefore controlling." *Curry*, 2023 WL 6318108, at *3 (citing *Roberts v. C.R. Eng., Inc.*, 321 F. Supp. 3d 1251, 1254 n.12 (D. Utah 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 n.1 (D.C. Cir. 2015); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015) ("[I]t is important to note that Justice Stevens joined parts of Justice Scalia's opinion. Those parts, labeled Parts I and II—A, thus

were joined by five justices; those parts were the opinion of the Court.")).  And "Part IIA [of *Shady Grove*], which binds this Court as to Step One, leaves no doubt that Rule 23 is not permissive in the sense that Defendant contends," because "[a]s the *Shady Grove* majority made clear, Rule 23, by its terms, 'creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.'" *Curry,* 2023 WL 6318108, at *4 (quoting *Shady Grove*, 559 U.S. at 398 (majority opinion)).[5] Moreover, the *Shady Grove* majority "made clear that Rule 23 should not be read as delineating necessary but not sufficient conditions for the maintenance of a class action in federal court," having "[r]eject[ed] the Second Circuit's attempt to differentiate between 'eligibility' and 'certifiability'" by "expressly sa[ying] that Rule 23 'empowers a federal court to certify a class in each and every case where the Rule's criteria are met.'" *Curry*, 2023 WL 6318108, at *4 (quoting *Shady* Grove, 559 U.S. at 399-400). Thus, because "Rule 23, as interpreted by a majority of the Supreme Court, stands for the proposition that a plaintiff 'may bring a class action if he wishes,' whereas the Utah statute says precisely the opposite," there is clearly a "direct collision" between Rule 23 and NISNPIA's class-action bar. *Curry*, 2023 WL 6318108, at *5. Accordingly, Defendant's argument that "Rule 23 does not require class actions," but rather "merely permits them where no other conflict against such exists without setting forth 'exclusive procedural requirements' for doing so" (Mot. at 10 (citing *Callegari v. Blendtec, Inc.*, No. 2:18-

---

[5]     Indeed, as *Curry* goes on to explain, "to read 'may' in the context of Rule 23(b) as permissive in that sense is to confuse the simple fact that, as five Justices held, the Federal Rules regularly use 'may' to confer *categorical* permission, *see, e.g.*, Fed. R. Civ. P. 8(d)(2)-(3), 14(a)(1), 18(a)-(b), 20(a)(1)-(2), 27(a)(1), 30(a)(1), as do federal statutes that establish procedural entitlements, *see, e.g.*, 29 U.S.C. § 626(c)(1); 42 U.S.C. § 2000e-5(f)(1); *Shady Grove*, 559 U.S. at 398-99 (majority opinion)." *Curry,* 2023 WL 6318108, at *4 n.7.

CV-308-DB, 2018 WL 5808805, at *4 (D. Utah Nov. 6, 2018)), is, as *Curry* correctly explains, foreclosed by controlling Supreme Court precedent.[6]

Second, Defendant says that "even if Rule 23 and NISNPIA were irreconcilable, NISNPIA's class action bar would still apply in federal court because . . . the class action bar is inextricably intertwined with the substantive rights of the law—the cause of action the statute provides and the remedies that it affords." (Mot. at 10.). And that is so, Defendant says, because "NISNPIA's class action bar does not appear in Utah's 'procedural' code" but rather in a section of the statute titled "Liability" (Mot. at 10-11). The argument is baseless. It is well established that the inclusion of a procedural provision in a state statute that provides a right of action, rather than in a general section of the state's civil code applicable to multiple statutes, does not magically transform the provision from procedural to substantive. Rather, "the traditionally procedural class action form in a particular statute must . . . be truly inseparable from the substantive rights and remedies before a Rule Enabling Act problem arises." *Curry*, 2023 WL 6318108, at *6 (citing *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring)). And to determine whether a provision barring class actions is "truly inseparable from the substantive rights and remedies" provided in the statute, the Court "is asked to look to the state statute at issue to differentiate between rights and remedies on the one hand, and procedures on the other, to ensure that Rule 23 does not overstep the boundaries of the Rules Enabling Act or interfere with states' ability to determine the "dimensions" of a state-created claim." *Id.* (citing *Shady Grove*, 559 U.S. at 423 (Stevens, J.,

---

[6]     The Court should thus decline Defendant's invitation to adopt the reasoning of the decisions in *Callegari* and *Fullmer v. A-1 Collection Agency, LLC*, Case No. 4:20-cv-00143-DN-PK, 2022 WL 1538675 (D. Utah May 16, 2022) (unpublished), both of which misapply *Shady Grove* to incorrectly hold that Rule 23 does not conflict with the provision limiting class actions found in the Utah Consumer Sales Practices Act.

concurring)).  "This issue can be resolved by reference to the relevant statutory 'text and context' alone."  *Id.* (quoting *Shady Grove*, 559 U.S. at 426 (Stevens, J., concurring)).

After carefully considering NISNPIA's "text and context," *Shady Grove*, 559 U.S. at 426 (Stevens, J., concurring), the court in *Curry* concluded that, notwithstanding NISNPIA's provision barring class actions, Rule 23's application to a NISNPIA claim in federal court does not run afoul of the Rules Enabling Act, reasoning as follows:

> Utah's NISNPIA, including § 203, labeled "Liability," at issue here, is cleanly divisible into rights, remedies, and procedures. Surgical removal of the presumptively procedural class-action bar leaves the rights and remedies otherwise provided by the Act totally intact.
>
> In fact, § 203 itself is comprised of three subsections that neatly track these three categories: the first defines the dimensions of the claim and cause of action; the second defines the remedies available to litigants under the Act; and the third, of particular concern in this case, is a matter of procedure. At one greater degree of detail, § 203 is mapped out as follows: § 203(1), together with §§ 201 and 202, including by reference to definitions provided under § 102, provide the *cause of action*—that is, the claim or right. Section 203(1)(a)-(c) thereby outlines the "operative group of facts" that must be pleaded in order to give rise to a basis for suing, *Cause of Action*, Black's Law Dictionary (11th ed. 2019), and thus "defines the dimensions of [the] state-created claim." *Shady Grove*, 559 U.S. at 429, 130 S.Ct. 1431 (Stevens, J., concurring) (cleaned up).
>
> Section 203(2), in turn, creates the applicable remedy by defining what "a court can do for a litigant who has been wronged," *Remedy*, Black's Law Dictionary (11th ed. 2019), by creating liability for violating commercial entities amounting to $500 "for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action," along with court costs. Utah Code Ann. 13-37-203(2)(a)-(b).
>
> Section 203(3), however, is neither a statement of rights nor one of remedies. It neither dictates what must be pleaded or proved as a cause of action, nor does it determine what a plaintiff *gets* should he prevail on such a claim. Instead, § 203(3) is entirely a matter of procedure, merely going to the preferred means of joinder and aggregation: "a classically procedural calibration of making it easier to litigate claims in [Utah] courts ... only when it is necessary to do so, and not making it too easy when the class tool is not required." *Shady Grove*, 559 U.S. at 435, 130 S.Ct. 1431 (Stevens, J., concurring). Utah has calibrated the ease of aggregating claims under NISNPIA one way through regulation of its state courts under the Act, and Congress has elected another calibration through Rule 23 in the

16

government of federal courts. In both cases, however, the class action remains a quintessentially procedural claims-processing device and, in the specific case of NISNPIA, is separable from any elements of Utah's "framework of substantive rights and remedies," *id.* at 419, 130 S.Ct. 1431 (Stevens, J., concurring), otherwise provided under that Act. The fact that the class-action bar applies only to claims under that Chapter is irrelevant. *Contra* Motion at 8.

. . . Given the feasibility of disentangling the procedural class-action bar from the rest of the Utah statute, while leaving the rights and remedies provided therein intact, this court finds that the "high" bar of finding a Rules Enabling Act violation has not been cleared. *Id.* (Stevens, J., concurring).

*Curry,* 2023 WL 6318108, at *6–7.

Other federal courts confronted with the same issue in the context of analogous statutory schemes have consistently reached the same conclusion as Judge Parrish.  In *Lisk v. Lumber One Wood Preserving, LLC*, for example, the Eleventh Circuit rejected a defendant's argument that a provision barring class actions for statutory remedies found in the Alabama Deceptive Trade Practices Act applied in a federal proceeding, reasoning as follows:

[H]ow a state chooses to organize its statutes affects the analysis not at all. Surely the New York legislature could not change the Shady Grove holding simply by reenacting the same provision as part of the statutory-interest statute. Surely an identical ban on statutory-interest class actions adopted by another state would not override Rule 23 just because it was placed in a different part of the state's code. The goal of national uniformity that underlies the federal rules ought not be sacrificed on so insubstantial a ground. And more importantly, the question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance—not on the placement of a statute within a state code.

*Lisk,* 792 F.3d at 1336.  Numerous other federal courts are in accord.  *See, e.g., Roberts v. C.R. England*, 321 F. Supp. 3d 1251, 1258-59 (D. Utah 2018) (explaining that "[t]he location of a law within state statutory codes can be useful in discerning the legislature's intent, but cannot in itself prove the law's procedural or substantive nature," especially "considering Justice Stevens's merely passing mention of the New York statute's location in the state code"); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022 at *13-14 (N.D. Ill. Feb. 26, 2019) (unpublished) (citing *Lisk,* 792

F.3d at 1336) ("This Court agrees with those decisions holding that the fact that a class action bar is included within a consumer protection statute does not make it any more substantive than if it were found instead among the state's rules of procedure."); *Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 644 (D.N.M. 2018) (citing *Roberts*, 321 F. Supp. 3d at 1258); *Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1229 (D.N.M. 2018) (also citing *Roberts*).

Against this backdrop, the decisions cited in the Motion do not, as Defendant would have the Court believe, reflect a bright-line rule that the mere placement of a class-action bar in the statute providing the right of action "evinces a legislative intent to intertwine the class action bar with the rights and remedies afforded by the statute." (Mot. at 12-14 (citing *Murtagh v. Bed Bath & Beyond Inc.*, No. 19-cv-03487-CMA-NYW, 2020 WL 4195126, at *7 (D. Colo. July 3, 2020) (unpublished); *In re Effexor Antitrust Litigation,* 357 F. Supp. 3d 363, 389-90 (D.N.J. 2018); *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 728-29 (D.S.C. 2016); *In re Nexium (Esomeprazole) Antitrust Litigation*, 968 F. Supp. 2d 367, 409 (D. Mass. 2013).). At most, these decisions reflect the unremarkable proposition that a class action bar that appears in the same provision of a statute that provides substantive rights or remedies is likely bound up in those substantive rights or remedies. *See* Colo. Rev. Stat. § 6-1-113(2) (the statute at issue in *Murtagh,* providing: "Except in a class action . . . any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice . . . is liable in an amount equal to the sum of: . . .) (emphasis added); Tenn. Code Ann. § 47-18-109(a)(1) (the statute at issue in *In re Effexor*, providing that "[a]ny person who suffers an ascertainable loss . . . as a result of . . . an unfair or deceptive act or practice . . . may bring an action individually to recover actual damages") (emphasis added); S.C. Code § 39–5–140(a) (the statute at issue in *Fejzulai*, providing that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a

18

result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, <u>but not in a representative capacity</u>, to recover actual damages") (emphasis added); 740 Ill. Comp. Stat. § 10/7 (the statute at issue in *In re Nexium*, providing that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action *parens patriae* as provided in this subsection"). However, that is not the case here, where NISNPIA's class-action bar appears in its own standalone provision at the end of the statute, separate from its provisions providing for rights and remedies. *See* 13-37-203 (section 13-37-203(3)'s provision barring class actions is separate from both section 13-37-203(1)'s provision identifying who may bring an action and section 13-37-203(2)'s provision specifying the available remedies). So, unlike the statutes at issue in *Murtagh*, *In re Effexor*, *Fejzulai*, or *In re Nexium*, the class-action bar found in section 13-37-203(3) is in fact "cordoned off as a separate procedural mechanism" (Mot. at 17), apart from the provisions setting forth rights and remedies found in sections 13-37-203(1)-(2).  Accordingly, "[s]urgical removal of the presumptively procedural class-action bar leaves the rights and remedies otherwise provided by the Act totally intact." *Curry,* 2023 WL 6318108, at *6.

Because "one can often argue the state rule was *really* some part of the State's definition of its right or remedies[,]" the bar for finding a Rules Enabling Act violation "is a high one." *Shady Grove,* 559 at 432 (emphasis in original). "The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt." *Id.*   Like the defendant in *Curry*, however, Defendant has failed to demonstrate even "the mere possibility," let alone "little doubt," that section 13-37-203(3)'s class-action bar is "*really* some part of the State's definition of its right or remedies." *See id.*; *see also id.* at 426 n.10 ("It will be rare that a federal rule that is facially

valid under [the Rules Enabling Act] will displace a State's definition of its own substantive rights.").

The Complaint states a claim for violation of NISNPIA on behalf of Plaintiffs and others similarly situated, and the Court has subject-matter jurisdiction.  The Motion should be denied.

## II.     The Factual Allegations of the FAC Adequately State a Claim for Violation of NISNPIA, and the Motion to Dismiss Pursuant to Rule 12(b)(6) Should be Denied

Defendant also moves to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6), arguing that "Plaintiffs do not sufficiently allege, beyond conclusory assertions, that Sundance sold their personal data." (Mot. at 5.)

According to Defendant, Plaintiffs allege only that they made purchases from Defendant and had their nonpublic personal information collected by Defendant in connection with those purposes, and then infer, based upon those allegations, that "Defendant must have disclosed that information." (Mot. at 20.) That is an unfair characterization of the FAC's allegations.  The FAC specifically alleges that Defendant has disclosed the nonpublic personal information of **all of its customers** – which necessarily included the information of all of the Plaintiffs, because each of them alleges having made purchases from Defendant during the applicable statutory period (*see* FAC ¶¶ 9, 14, 19, 24, 29, 34, 39, 44, 49, 54, 59) – to various third parties, including data appenders and aggregators, third party renters of Defendant's customer lists, among many others. *See* FAC ¶ 5 ("Sundance rents, sells and otherwise discloses for compensation **all of its customers' Private Purchase Information** . . . to data aggregators, data appenders, data cooperatives, and other third parties") (emphasis added); *id.* ¶¶ 12, 17, 22, 27, 32, 37, 42, 47, 52, 57, 62 (alleging that Defendant, after completing sales to each of the Plaintiffs, "sold, rented, or otherwise disclosed for compensation" each of the Plaintiffs' "Private Purchase Information to data aggregators, data appenders, data cooperatives, list brokers, aggressive advertisers, direct-marketing companies,

political organizations, non-profit companies, and other third parties"). There is thus no merit to Defendant's argument that the FAC "omits any specific facts that tie Plaintiffs' information to [the] alleged practice" of Defendant selling its customer lists to third parties. (Mot. at 21.)

With respect to data appenders and aggregators in particular, the FAC specifically alleges facts demonstrating that Defendant disclosed files containing **all of its customers' nonpublic personal information** – which, again, necessarily included all of the Plaintiffs' nonpublic personal information – to these entities for compensation, that the aggregators and appenders then sent the files back to Defendant together with the additional demographic and personal information that they had appended to the file about each of the customers, and that Defendant then marketed and sold these customer lists, "enhanced" with the data added to them by the appenders and aggregators, to other third parties for more money.  (FAC ¶ 117.)  These allegations are corroborated by the "data card" attached as Exhibit A to the FAC, which Defendant used to publicly advertise, rent, sell, and otherwise disclose for compensation the "Sundance Catalog Mailing List."  (*See* FAC ¶ 2 (incorporating screenshot of data card).). As shown in the data card, Defendant advertises the availability of various categories of information about each of its customers on its customer list available for rental, including, *inter alia*, "ethnic[ity]," "gender," and "religion." (*See id.*).   That Defendant possesses this sort of demographic and personal information about each of its customers, and offers to sell, rent, and otherwise disclose it for compensation to any third party interested in acquiring it, adds strong support to Plaintiffs' allegations that Defendant disclosed all of its customers' nonpublic personal information (including their names, and addresses, the fact that each of them had purchased products from Defendant, and the products and the dollar amounts of the products they purchased) to third-party data aggregators and appenders, because those are the entities that the FAC alleges appended this

additional demographic and personal information about each of Defendant's customers to Defendant's customer files before sending the files back to Defendant.

As for Defendant's disclosures of Plaintiffs' nonpublic personal information to renters of its customer files, the FAC also specifically alleges: "Sundance also rented, sold, and/or otherwise disclosed for compensation its customer lists **containing all of the Plaintiffs' and Class members' Private Purchase Information**—including lists enhanced with the additional personal and demographic information from data aggregators and appenders—to innumerable other third parties, including other consumer-facing companies, aggressive direct-mail advertisers, organizations soliciting monetary contributions, volunteer work, and votes, and others."  (FAC ¶ 118 (emphasis added); *see also id.* ¶ 98.)  The FAC bolsters this factual allegation by also specifically alleging that, "[a]s a result" of such disclosures to aggressive advertisers, solicitors, and consumer-facing companies, among others, "Plaintiffs have received a barrage of unwanted junk mail." (FAC ¶ 1.)

These well-pled factual allegations, together with all inferences reasonably drawn from them, must be accepted as true at this stage of the proceedings. *See Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1292 (10th Cir. 2017) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff[s]"); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 685 (E.D. Mich. 2013) (holding, in a similar consumer data privacy case, that at the motion to dismiss stage "this Court must take Plaintiffs' allegations regarding the relationship between Defendant and its 'unrelated' vendors as true").

Notably, the court in *Curry* has now twice denied motions to dismiss for failure to state a claim filed by the defendant in that case. *Curry*, 2023 WL 6318108, at *9; *Curry v. Fields Gifts,*

*Inc.*, No. 2:22-CV-00651-JNP-DBP, 2024 WL 3794487, at *7 (D. Utah Aug. 13, 2024).  The

allegations of the complaints before the court in *Curry* were materially identical to the allegations

of the FAC presently before the Court in this case.  (*Compare* FAC *with Curry,* ECF Nos. 1 & 45.)

In denying the defendant's first motion to dismiss, the court in *Curry* found that the allegations

stated a claim for violation of NISNPIA, explaining as follows:

> Plaintiffs plead unauthorized disclosure under NISNPIA sufficient to support a
> cause of action at this stage. *See* Complaint ¶¶ 65-74. If Defendant seeks to dispute
> these factual allegations, they will have ample opportunity to do so at later stages
> of this litigation. *See Huggins v. Hilton*, 180 F. App'x 814, 816 (10th Cir. 2006)
> ("[T]he simplified notice pleading standard merely represents the first step in a
> system adopted to focus litigation on the merits of a claim.") (cleaned up).

*Curry*, 2023 WL 6318108, at *9; *see also Curry*, 2024 WL 3794487, at *7 (concluding that "the

plaintiffs have stated a claim upon which relief can be granted under NISNPIA"). This Court

should reach the same conclusion in this case (which, again, arises from allegations materially

identical to those in *Curry*).

    Moreover, in analogous data-privacy cases under other state statutes, which involved the

same types of disclosures of consumer information at issue in this case, courts have not hesitated

to find such allegations sufficient to survive motions to dismiss pursuant to Rule 12(b)(6).  *See,*

*e.g.*, *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) (finding allegations

that defendant disclosed all of its customers' information, including the plaintiffs' information, to

third-party data aggregators and appenders, data cooperatives, aggressive marketers, and other

third-party renters of customer lists, together with a copy of data card reflecting defendant's

advertising of such information for sale and rental, adequately alleged unauthorized disclosures of

the plaintiff's information to third parties in violation of violation of Michigan's Preservation of

Personal Privacy Act); *Batts v. Gannett Co.*, 2023 WL 3143695, at *4–5 (E.D. Mich. Mar. 30,

2023) (same); *Russett v. NTVB Media, Inc.*, No. 22-10352, 2023 WL 6315998, at *2 (E.D. Mich.

Sept. 28, 2023) (same); *Gaines v. Nat'l Wildlife Fed'n*, No. 22-11173, 2023 WL 3186284, at *4 (E.D. Mich. May 1, 2023) (same); *Nock v. Boardroom, Inc.*, No. 22-CV-11296, 2023 WL 3572857, at *4 (E.D. Mich. May 19, 2023) (same); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 452 (S.D.N.Y. 2016) (same); *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343-44 (D. Mass. 2020) (denying a motion to dismiss where the complaint alleged that the defendant "sold PII of plaintiffs and other customers to third parties without notice or consent" and that, as a result, the plaintiffs "received unwanted junk mail and telephone solicitations," which the court found "allow[ed] for a reasonable inference that [plaintiffs PII] was disclosed to third parties" in violation of Virginia's Personal Information Privacy Act). This court should follow suit and find that the factual allegations of the FAC plausibly state a claim for violation of NISNPIA.

What Defendant really wants to do is turn NISNPIA into a toothless tiger. The crux of this lawsuit is that Defendant *failed to inform* Plaintiffs and proposed Class members that it would disclose their Private Purchase Information to third parties for compensation prior to doing so. *See generally* FAC. Thus, under the circumstances alleged in the FAC, Plaintiffs cannot possibly be expected to allege the specific dates of these non-consensual, uninformed disclosures or all of the entities to whom Defendant made these non-consensual, uninformed disclosures, absent a reasonable opportunity for discovery. By demanding such specificity in the Motion, Defendant asks the Court to adopt a pleading standard no NISNPIA plaintiff could ever satisfy, emasculating this important consumer protection statute and inoculating the company from liability under it in the process. This Court need not go along. *See, e.g.*, *Zimmerman v. 3M Company*, 542 F. Supp. 3d 673, 681 (W.D. Mich. 2021) (Rule 8 pleading standard was satisfied in class action where named plaintiffs alleged that they were exposed to purportedly harmful chemical in drinking water, without alleging "whether any PFAS ha[d] been detected in their drinking water, and if so, how

much"); *Rodriguez-Reyes v. Molina-Rodriguez,* 711 F.3d 49, 53-54 (1st Cir. 2013) (explaining that a complaint can survive a 12(b)(6) motion even if it does not "plead [all the] facts sufficient to establish a prima facie case" nor set forth "detailed factual allegations").

The FAC states a claim, and the Motion should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 23) should be denied in its entirety.

Dated: September 9, 2024                      Respectfully submitted,

PETERS | SCOFIELD
*A Professional Corporation*

/s/ David W. Scofield
DAVID W. SCOFIELD

-and-

HEDIN LLP
FRANK S. HEDIN*
ELLIOT O. JACKSON (pro hac vice)

* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiffs and Putative Class*