Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1175   Page 1 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                    1

1
2

**STATE OF UTAH**
**COUNTY OF SALT LAKE**

3
4

**CERTIFIED TRANSCRIPT**

5
6
7
8
9

**Utah House of Representatives**

**2003 General Session**

**Sponsor:  Douglas C. Aagard**

10
11

**NOTICE OF INTENT TO SELL NONPUBLIC**
**PERSONAL INFORMATION**

12
13

**Date of Proceeding:**
**Thursday, February 6, 2003**

14
15
16

**Utah House of Representatives**
**350 North State, Suite 350**
**Salt Lake City, Utah 84114**

17
18
19
20

**Transcribed by:**
**Dianne N. Sarkisian, Certified**
**Stenographic Court Reporter**

21
22

**Transcription Date:  March 14, 2024**

23
24
25



EXHIBIT B

Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1176   Page 2 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                2

1                                    INDEX

2

3                                                              PAGE

4     Presentation of HB 40 by Douglas Aagard...........   3
      Comments by John Dougall.........................   7
5     Comments by Wayne Harper.........................  11
      Comments by Judy Ann Buffmire....................  14
6     Comments by Margaret Ann "Peggy" Wallace.........  16
      Comments by LaWanna "Lou" Miles Shurtliff........  17
7     Comments by James Dunnigan.......................  19
      Comments by Karen Morgan.........................  21
8     Comments by Katherine Bryson.....................  22
      Comments by Fred LaVar Christensen...............  23
9     Comments by Stephen Urquhart.....................  24
      HB 40 Circled....................................  25
10    Discussion on HB 40 concluded....................  25
      Certificate of Court Reporter Transcriber........  26

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                    (Proceedings in Progress.)

2                            ***

3              SPEAKER PRO TEM:  Representative Aagard...

4              MR. AAGARD:  Thank you, Mr. Speaker Pro Tem.

5         This is in reference to HB 40.

6              I'd like to delete, in title and body, HB

7         40, replacing the first substitute HB 40.

8              SPEAKER PRO TEM:  Just a minute.

9              MR. AAGARD:  Sorry, move to uncircle.

10             SPEAKER PRO TEM:  There's a motion to

11        uncircle House Bill 40.

12             Discussion to the motion to uncircle?

13             (No Response.)

14             SPEAKER PRO TEM:  Seeing none, back --

15             (Mr. Aagard cross-talking.)

16             SPEAKER PRO TEM:  -- to its sponsor to

17        explain his motion to uncircle.

18             MR. AAGARD:  I...  I want to act on this

19        bill and provide a substitute, so...

20             SPEAKER PRO TEM:  Okay.  That's the

21        summation?

22             Then, all in favor of uncircling House Bill

23        40 say "aye."

24             (Aye.)

25             SPEAKER PRO TEM:  Those opposed say "no."



BRICKELL KEY
C O U R T   R E P O R T I N G
WWW.BRICKELLCOURTREPORTING.COM
305.407.9993

```
 1                    (No Response.)

 2                    SPEAKER PRO TEM:  Motion passes.  The bill

 3          is uncircled and before us.

 4                    MR. AAGARD:  Thank you for your --

 5                    SPEAKER PRO TEM:  Now, proceed.

 6                    MR. AAGARD:  -- patience, Mr. Chair.

 7                    I would like to delete, in title and body,

 8          HB 40, protection of nonpublic personal information,

 9          and replace it with first substitute HB 40, notice of

10          intent to sell nonpublic personal information.

11                    If I can speak to that, just briefly?

12                    UNIDENTIFIED SPEAKER:  Do I have to repeat

13          that motion?

14                    SPEAKER PRO TEM:  Okay.  If you'll speak to

15          that?

16                    MR. AAGARD:  We're changing the title

17          because it more correctly reflects what the intent of

18          this bill is, and it's incorporating some fine-tuning

19          amendments that took place in committee.  So it's just

20          getting it in one bill.

21                    SPEAKER PRO TEM:  Okay.  The motion is that

22          we delete, in title and body, House Bill 40 and replace

23          it with first substitute House Bill 40.

24                    All in favor of that action say "aye."

25                    (Aye.)
```



1          SPEAKER PRO TEM:  And those opposed say

2     "no."

3               (No Response.)

4          SPEAKER PRO TEM:  Motion passes.  The bill

5     is before us.

6               You can proceed with the presentation of the

7     bill.

8          MR. AAGARD:  Okay.  Now, Mr. Speaker, I'd

9     like to move an amendment under my name, amendment

10    number 1.

11         SPEAKER PRO TEM:  Okay.  The motion is

12    amendment number 1 under Representative Aagard's name,

13    dated January 29th, 2003, 8:54 a.m.  We have that.

14              So proceed with the explanation of --

15         MR. AAGARD:  This amendment --

16         SPEAKER PRO TEM:  -- this motion to amend.

17         MR. AAGARD:  -- deletes lines 121 through

18    126 and inserts the text you have before you.  And it's

19    just clarifying what we're trying to do in this

20    language here.  What we had there was unclear and a

21    little bit cumbersome.  So we're just trying to clean

22    that part up, so...

23         SPEAKER PRO TEM:  Discussion to the motion

24    to amend?

25              (No Response.)



Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1180   Page 6 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                          6

1              SPEAKER PRO TEM:  Seeing none, back to the

2       maker of the motion for summation.

3              MR. AAGARD:  I'll waive.

4              SPEAKER PRO TEM:  Summation is waived.

5              All in favor of the motion to amend -- which

6       amendment is amendment number 1, dated January 29th,

7       2003 -- all in favor of that motion say "aye."

8              (Aye.)

9              SPEAKER PRO TEM:  And all opposed say "no."

10             (No Response.)

11             SPEAKER PRO TEM:  Motion passes.

12             Okay.  To the discussion to the bill...

13             MR. AAGARD:  What this bill does,

14      Representatives, is, if a...  It...  It...  If a...  If

15      a commercial entity conducts a transaction and they

16      receive personal information from the consumer and they

17      intend to sell that information for profit or gain,

18      they need to disclose at the time of the transaction

19      that that -- that is going to take place by -- by a

20      notice.

21             SPEAKER PRO TEM:  Representative Aagard,

22      they're having a little trouble hearing you.  If you'd

23      pull that mic a little closer and speak up?

24             MR. AAGARD:  Okay.  This bill just requires

25      a commercial entity, if they're going to sell public



Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1181   Page 7 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                    7

1    per- -- or personal information for profit -- that they

2    provide notice to the consumer that they're going to

3    intend to do that.

4              SPEAKER PRO TEM:  Okay.  Discussion to the

5    bill?

6              Representative Dougall...

7              MR. DOUGALL:  Thank you, Mr. Speaker.

8              Would the sponsor yield to a question?

9              SPEAKER PRO TEM:  Will the sponsor yield to

10   a question?

11             MR. AAGARD:  Yes.

12             SPEAKER PRO TEM:  Okay.  Proceed.

13             MR. DOUGALL:  What is the date that this

14   would be enacted, and would this allow enough time for

15   businesses to comply with this additional regulation?

16             MR. AAGARD:  This...  It'll be...  It'll

17   pertain to information gathered, become effective May

18   5th, '03.  Talking with the business people, they felt

19   like that was, at least the business people I talked

20   with, thought that was sufficient time.

21             MR. DOUGALL:  Okay.  As I read this bill, I

22   understand you have to have this notification, you

23   know, whenever you gather this information.  So that

24   would require updating forms, websites, lots of

25   additional information.  If this became law, that only



BRICKELL KEY
C O U R T   R E P O R T I N G
WWW.BRICKELLCOURTREPORTING.COM
305.407.9993

Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1182   Page 8 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                    8

1       allows perhaps a month or so for compliance.  I'm

2       concerned that that might not be enough time.  Am I

3       unfounded in that?

4              MR. AAGARD:  Well, this bill is just going

5       to require a simple notice, as it states in line 114,

6       substantially, that we may choose to disclose nonpublic

7       personal information about you, the consumer, to a

8       third-party for compensation.

9              That's going to be a simple change for these

10      business entities to even put on a website, a single

11      sentence.

12             As far as brick-and-mortar retail stores,

13      they can put a sign on their door or at the checkout

14      stand.  In discussing with them this idea through the

15      summer, through the interim process, they feel

16      comfortable with this.  They didn't have any objection

17      to it, so...

18             MR. DOUGALL:  Mr. Speaker, can I ask a

19      follow-up question?

20             SPEAKER PRO TEM:  Certainly.  Proceed.

21             MR. DOUGALL:  Another question I have is, as

22      I look at the fiscal note, it says -- and I'm not sure

23      if there was an updated fiscal note that goes along

24      with this substituted amended bill --

25             UNIDENTIFIED SPEAKER:  What was the fiscal



1    note?

2              MR. DOUGALL:  -- but it says that some

3    companies now selling this information may see a

4    reduction in sales.

5              Is it not possible that some companies who

6    are in this business may be pushed out of the state

7    and we will see a loss of jobs and other factors in

8    this state because of the additional regulations we'll

9    have that neighboring states do not have?

10             MR. AAGARD:  Representative, that's a good

11   question.  I don't know what the impact would be.  All

12   I can tell you is the retailers associations that I've

13   spoken with have taken a neutral position on this.

14   I've worked with them closely.  They're not opposed.  I

15   think there's a right to privacy that an individual

16   deserves.

17             How they handle this, whether they want to

18   build into their marketing or whatever, uh, opt-out

19   provisions, they can do that.  I don't know what the

20   impact will be.  But the consumer will be informed and

21   the consumer will have the choice.

22             MR. DOUGALL:  Another question is, we get

23   towards the end of the bill, as I understand it, and

24   correct me if I'm wrong, it says that a commercial

25   entity that violates this chapter is liable to the



1          person who brings the action.

2                    Now, is that the person whose information

3          was distributed without authorization, or is that any

4          person that brings an action?

5                    MR. AAGARD:  That is the consumers whose

6          information was sold.

7                    MR. DOUGALL:  Okay.  And does that...  I

8          guess my question would also be, does this open us up

9          to somebody whose information was distributed,

10         searching for who perhaps did it, not knowing which

11         company did it, and then starting to sue lots of these

12         companies, trying to figure out who's the one that

13         distributed it without authorization?

14                    MR. AAGARD:  I don't think so.

15                    Like I said, we've studied this.  It's been

16         a year in study.  And all interested parties that I

17         know of are okay with the way this thing is written,

18         and the penalties.  I purposely limited the penalties

19         just to avoid, uh, to take care of any unintended

20         consequences.  So I think we're fine.

21                    MR. DOUGALL:  I would just like to encourage

22         the body, this is a bill that has some serious

23         consequences on business, and I understand the intent

24         of it, but I would encourage you, if you haven't read

25         it, please read it.  Take five minutes, read the bill,



1      see what it requires.  Think about the unintended

2      consequences that come along with this.  Thank you.

3                  SPEAKER PRO TEM:  Okay.  Representative

4      Harper...

5                  MR. HARPER:  Thank you.

6                  Will the sponsor yield to question?

7                  SPEAKER PRO TEM:  Will the sponsor yield to

8      a question?

9                  MR. AAGARD:  Yes.

10                  SPEAKER PRO TEM:  Proceed.

11                  MR. HARPER:  Will you go through and

12      highlight, first of all, the differences between your

13      bill, as amended, and the substitute bill?

14                  MR. AAGARD:  Let's see.  Just let me find it

15      here, just a second.

16                  I apologize for that, Representative.

17                  On the original bill, page 2, line 55, we

18      inserted the definition of some clarifying language on

19      consumer transaction on pages 4 to 5, lines 119 to 125.

20      We deleted the lines 119 to 125.  On page 5, line 130,

21      we inserted the effective date.  And I think that

22      covers most of the changes.  It was changes made in

23      committee.

24                  MR. HARPER:  Okay.  The purpose of this bill

25      is to go through and restrict businesses' ability to go



Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1186   Page 12 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                12

1     through and gather personal information or just share
2     it with nonrelated parties or share it -- not share it
3     internally with related institutions?  Could you flesh
4     that out a little bit?
5               MR. AAGARD:  Yeah, good question.
6               The purpose of this bill, I'm not trying to
7     restrict necessarily as to, just to provide notice to a
8     consumer that their information is going to be sold,
9     and that's the sole purpose of the private information.
10              If a company gathers that information and
11    sells it for the sole purpose of making a profit, then
12    I feel that needs to be disclosed.  If it's to be made
13    whole in a transaction, they're not impacted by this
14    bill.
15              MR. HARPER:  Okay.  But your overall intent
16    of this is to go through and identify the need for
17    securing information and having a person, when it falls
18    under the purview of the state, go through and be able
19    to restrict the amount of personal information that is
20    available; is that correct?
21              MR. AAGARD:  To notify the consumer.  I
22    guess I'm not sure what you mean by restricting the
23    information.
24              MR. HARPER:  Okay.  This is a notification.
25    It's not any ability to go through and restrict the --



1          MR. AAGARD:  Right.  I'm not prohibiting the

2     business of selling this information.  It's strictly

3     notice.  If they want to sell it, they can sell it,

4     that's fine.

5          MR. HARPER:  Okay.  So what option does the

6     consumer have other than the notice if they don't want

7     that information released to somebody else or sold to

8     someone else?

9          MR. AAGARD:  Well, I...  My intent on this

10    is, if I go into a store and I see that notice that

11    they're going to sell my information, then I would need

12    to make a choice as to whether I want to conduct a

13    transaction with that business or go elsewhere.  I did

14    not want to force the business to change their policies

15    with opt-out or opt-in.  If they feel like, to comply

16    with this they want to do that, they can.  But I want

17    it to be the consumer choice.

18          MR. HARPER:  I appreciate what you're doing.

19    A lot of the groups are pushing more for the opt-out

20    and opt-in.  The notice is an essential part of what

21    needs to be done to help the residents of the state of

22    Utah and elsewhere to understand the choices they make,

23    to have informed choices.  I think there's some other

24    questions that others might have with some of the

25    sections, but I commend you for what you're trying to



1    do, at least giving the notice and information out.

2              SPEAKER PRO TEM:  Representative Buffmire...

3              MS. BUFFMIRE:  Thank you, Mr. Speaker.

4              Would the representative -- let's see, I

5    haven't done this yet -- would -- would yield?

6              And can I ask a question?

7              SPEAKER PRO TEM:  Yes.

8              Will the sponsor yield to a question?

9              MR. AAGARD:  Yes --

10             MS. BUFFMIRE:  Thank you.

11             MR. AAGARD:  -- yes, ma'am.

12             MS. BUFFMIRE:  Thank you.

13             SPEAKER PRO TEM:  Proceed.

14             MS. BUFFMIRE:  I'm sorry.  I...  I don't

15   know if I'm speaking for or against your bill, so

16   that's why the -- the question.

17             SPEAKER PRO TEM:  You need to speak up.  I

18   can't hear you.

19             MS. BUFFMIRE:  Oh, goody.

20             SPEAKER PRO TEM:  Hold that microphone real

21   close.

22             MS. BUFFMIRE:  Okay.  You know, to me, it's

23   the timing.  I don't know if you've gone far enough.

24             One of the real irritations in my life is to

25   get once every, it seems like a few months -- it's



1          probably every year -- the same people sending me the

2          same notice that I have written and said that I do not

3          want them to sell any information or sell my name on a

4          list.  And by the time they get the computers shipped,

5          or whatever it is, you've got ten more new people

6          sending me catalogs or something.  And you get this

7          notice again.

8                    I... And I don't know.  And it really is an

9          irritation to me 'cause I don't know what they consider

10         personal and what they consider nonpersonal.

11                   My name, to me, is very personal.

12                   And they're selling lists everywhere.  And

13         so I don't know if you go far enough.  Could you

14         address that in any way?  Because if, even someplace,

15         you said, once it's there, they can't sell it in the

16         future until they've been notified they can.

17                   MR. AAGARD:  Representative, that's a real

18         good question.  I really struggled with that over this

19         past year.  The thing I discovered with this is, it's

20         an elephant, it's huge.

21                   MS. BUFFMIRE:  I know.

22                   MR. AAGARD:  And my course of action, what

23         I've chosen to do is take one bite at a time on this

24         and deal with things as they move along.  I don't want

25         to move too fast 'cause we need to be very careful for



```
1        this type of issue just because of where it reaches.

2                    This isn't the end on this thing.  I plan on

3        doing some more things with this.

4                    MS. BUFFMIRE:  Okay.

5                    MR. AAGARD:  So I'm just trying to take a

6        cautious approach so that we don't have some problems.

7                    MS. BUFFMIRE:  I appreciate that answer.

8        Thank you.  I just...  I wish we could do something to

9        protect this invasion, it seems to me, of any

10       information we have.  Thank you.

11                   SPEAKER PRO TEM:  Thank you.

12                   Representative Wallace...

13                   MS. WALLACE:  Thank you, Mr. Speaker Pro

14       Tem.

15                   While I have a certain amount of

16       disappointment because this bill does not go nearly far

17       enough regarding privacy and private information of all

18       individuals, I would support it.

19                   The concern that we have about businesses

20       that are operating where they need all of that

21       information about me, every single bit of it, or about

22       my neighbors or my family or my friends, I don't think,

23       just because we exist, that everybody around us has the

24       right to tiptoe through all of our information and

25       everything that describes who and what I am.
```



1          We have choice in this country.  We have

2     agency.  We have the right to privacy.  And I think

3     that there comes a time where we have to take the stand

4     and say, okay, this is a line.  You do not get to go

5     beyond that.  And when people are taking that

6     information, selling it for profit so that another

7     individual can use it for profit, I don't think they

8     have the right to do that without my express permission

9     to do so.

10          So I applaud the representative for bringing

11     this forward and would encourage him to tighten up

12     those privacy laws.  Thank you.

13               SPEAKER PRO TEM:  Thank you.

14               Representative Shurtliff...

15               MS. SHURTLIFF:  Thank you, Mr. Speaker Pro

16     Tem.

17               Would the sponsor yield to some questions?

18               SPEAKER PRO TEM:  Will the sponsor yield?

19               MR. AAGARD:  Yes.

20               SPEAKER PRO TEM:  Proceed.

21               MS. SHURTLIFF:  This bill, at this point, is

22     very confusing to me.  And so just help me a little bit

23     so I make sure that I'm on the right track.

24          If I go into a retail establishment and

25     purchase something, they often ask for my telephone



1    number.  In doing that, of course, that gives them,

2    pretty well, some information about me.

3                   Now, am I right in this bill that they would

4    have to post that they're going to possibly sell that

5    information?

6                   MR. AAGARD:  In the bill it defines public

7    information as name, address, and phone number.  So in

8    that case, if it's just the telephone number they're

9    taking, no, they wouldn't have to provide notice.  And

10   even if they did take your telephone number, they would

11   not need to provide notice unless they sell that

12   information for profit.

13                  MS. SHURTLIFF:  Okay.  But when they get my

14   telephone number, the computer automatically puts up

15   mine and my husband's name and address possibly, okay,

16   so they post that.  And only if they're going to sell

17   it for profit.  Now, is that as far as this bill goes?

18                  MR. AAGARD:  Yes.  Yes.  If they sell...

19                  If the business entity sells the personal

20   information to a third party for profit, that's as far

21   as this bill goes.

22                  MS. SHURTLIFF:  Now, many of these companies

23   are national companies.  So can we do that or would that

24   just regulate the Utah consumer?

25                  MR. AAGARD:  This would pertain to companies



1          domiciled in the state of Utah.

2                    MS. SHURTLIFF:  Okay, thank you.

3                    SPEAKER PRO TEM:  Representative Dunnigan...

4                    MR. DUNNIGAN:  Thank you, Mr. Speaker Pro

5          Tem.  I'd like to reserve the right to make a motion.

6                    SPEAKER PRO TEM:  That right will be so

7          noted.

8                    Proceed.

9                    MR. DUNNIGAN:  I have a question for this

10         sponsor.

11                   SPEAKER PRO TEM:  Will the sponsor yield to

12         a question?

13                   MR. AAGARD:  Yes.

14                   SPEAKER PRO TEM:  Proceed.

15                   MR. DUNNIGAN:  The gist of this bill is just

16         to require an establishment to post a notice?

17                   As long as they've done the notice, they've

18         met the requirement?

19                   MR. AAGARD:  Yes.

20                   MR. DUNNIGAN:  Thank you.

21                   I...  I understand what you're trying to do.

22         I...  I think the bill's a little confusing and I think

23         it's a little cumbersome.  I don't think it provides a

24         great deal of protection to the consumer.  All the

25         business has got to do is post a notice, and people



```
1        will just be used to seeing those, and they'll probably

2        ignore them and not realize it, anyway.

3                  I...  I think the bill might need a little

4        more work.  I think...  The bottom line is, all they

5        have to do is put up a notice and they've satisfied the

6        requirement.  And it's a lot of, a lot of verbiage and

7        a lot of language to accomplish that simple task.  And

8        I, I...  I think it needs a little more work.  And it's

9        pretty confusing to me.

10                 I would move to circle the bill.

11                 SPEAKER PRO TEM:  You can only reserve the

12       right, uh, a motion if you want to make an amendment.

13       Reserving the right to make a motion and then circling

14       is out of order.

15                 MR. DUNNIGAN:  That's what I understood.

16       But I asked a more experienced legislator if I could

17       speak and then make a motion.  She assured me that I

18       could.

19                 (Laughter.)

20                 SPEAKER PRO TEM:  Well, if you believe

21       everything every legislator tells you --

22                 (Laughter.)

23                 SPEAKER PRO TEM:  -- I want to talk with

24       you, real quick.

25                 MR. DUNNIGAN:  Thank you, Mr. Speaker.
```



Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1195   Page 21 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                    21

```
1                    SPEAKER PRO TEM:  Thank you.

2                    Representative Morgan...

3              MS. MORGAN:  Thank you, Mr. Speaker Pro Tem.

4              Will the sponsor yield to a question?

5              MR. AAGARD:  Yes.

6              MS. MORGAN:  In looking at the definition of

7       nonpublic personal information, included in that would

8       be a person's Social Security Number.

9                    And I am just wondering if you can tell us

10      what restrictions are currently in place on these

11      business entities to keep them from selling this

12      personal information.

13             MR. AAGARD:  If they don't fall under any

14      federal notice requirements, then there are none.  And

15      that's what we're trying to get to.

16             MS. MORGAN:  Okay.  My concern is that, I

17      hope we're not opening the door and making them feel

18      that, if they just give a notice, then it's okay for

19      them to go ahead and sell this public -- or this non-

20      personal public...  What is it?  The nonpublic personal

21      information.  That's my fear.  So I just wanted to make

22      that comment.  Thank you.

23             MR. AAGARD:  Thank you.

24             Just in response to that, Legislators, I'm

25      not trying to encumber.  I'm trying to not encumber
```



Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                     22

1    business anymore than I absolutely feel is necessary in

2    this.  I want the individual consumer to take upon

3    themselves the responsibility to follow through on the

4    transaction.  I think they need to be responsible for

5    their choices.  I think this is a good balance at this

6    time.

7                   SPEAKER PRO TEM:  For the discussion,

8    Representative Bryson...

9                   MS. BRYSON:  Thank you, Mr. Speaker.

10                  I would make a motion to circle.

11                  SPEAKER PRO TEM:  Really, that's a surprise.

12                  (Laughter.)

13                  SPEAKER PRO TEM:  The motion is that we

14   circle.

15                  Representative Bryson, proceed.

16                  Did you want to speak to that?

17                  MS. BRYSON:  Thank you.  I would.  It is

18   based on ineptness.  First of all, never give a

19   freshman legislator any advice.

20                  The reason that I believe that we should

21   circle this is because there are a number of questions.

22   I have some questions concerning the exemptions for a

23   few select businesses.  I have...  Uh, really, I guess

24   the basis of my concern has to go back with just the

25   simplification that I thought might be in the bill as



Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1197   Page 23 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                    23

1      far as notification and notice.

2                  And as well, I have some concerns about

3      businesses.  I know the sponsor did say that retail

4      businesses have been contacted, but I, myself, have

5      been trying to reach some of the businesses in my

6      community to see just how cumbersome this might be.

7                  And so, with that, I would move to circle

8      and hope that the sponsor would be amenable to that.

9                  SPEAKER PRO TEM:  For the discussion to the

10     motion to circle, Representative Aagard, to the motion

11     to circle?

12                 MR. AAGARD:  I'm okay.  I'd be happy to talk

13     with anybody and clarify the bill, so...

14                 SPEAKER PRO TEM:  Okay.  Representative

15     Christensen, to the motion to circle?

16                 MR. CHRISTENSEN:  Thank you, Mr. Speaker.

17                 I, for all the reasons mentioned, concur

18     with the motion to circle, but wanted to highlight

19     Representative Morgan's concerns.

20                 I'm concerned that the headline, notice of

21     intent to sell nonpublic, implies that there's a right

22     to sell nonpublic information, and I'm not so sure that

23     that right exists or that it's been adequately defined.

24                 At a minimum...

25                 (Proceedings interrupted by



1               Representative Urquhart.)

2               SPEAKER PRO TEM:  Well, state your point,

3       Representative Urquhart.

4               MR. URQUHART:  This isn't germane to the

5       motion on the floor.

6               SPEAKER PRO TEM:  Okay.  The motion is the

7       motion to circle, Representative Urquhart.

8               MR. CHRISTENSEN:  That's my point is this is in

9       support of the motion to circle.

10              SPEAKER PRO TEM:  Okay.  Go ahead.

11              MR. CHRISTENSEN:  All I wanted to give was the

12      added reason for circling was that I'd like to suggest

13      that there be an adequate reference that ties down what

14      it is they have a right to do.  And at that point,

15      everyone appreciates the additional protection of a

16      notice of intent layer of protection as well.  I

17      thought that was Representative Morgan's point.  I

18      thought it was well taken.  And it's in support of the

19      motion to circle.

20              SPEAKER PRO TEM:  For the discussion of the

21      motion to circle seen and Representative Bryson for

22      summation to the motion to circle?

23              MS. MORGAN:  I'll waive, thank you.

24              SPEAKER PRO TEM:  Summation's waived.

25              The motion is we circle for substitute House



1        Bill 40.

2                    Those in favor of the motion say "aye."

3                    (Aye.)

4                    SPEAKER PRO TEM:  Oppose, say "no."

5                    ("No.")

6                    SPEAKER PRO TEM:  Motion passes.

7                    The bill is circled.

8                    (House Bill 40 discussion concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Case 2:24-cv-00344-RJS-DAO   Document 29-2   Filed 09/09/24   PageID.1200   Page 26 of 26

Utah House of Representatives 2003 General Session Sponsor: Douglas C. Aagard
Notice of Intent to Sell Nonpublic Personal Information - February 6, 2003                26

1              CERTIFICATE OF COURT REPORTER TRANSCRIBER

2

3     THE STATE OF FLORIDA)

4     COUNTY OF MIAMI-DADE)

5

6                  I, DIANNE N. SARKISIAN, a Certified

7          Stenographic Court Reporter for the State of Florida

8          at Large, do hereby certify that I transcribed Utah

9          House of Representatives, 2003 General Session, House

10         Bill 40, Notice of Intent to Sell Nonpublic Personal

11         Information, held on February 6, 2003; that the

12         foregoing constitute a true, complete record of my

13         transcription.

14

15                 I further certify that I am not an attorney

16         or counsel of any of the parties, nor related to any

17         of the parties, nor financially interested in the

18         action.

19

20                 Dated this 14th day of MARCH 2024.

21

22                              *Dianne N. Sarkisian*

23                              Dianne N. Sarkisian
                                Notary Public - State of Florida
24                              My Commission No. HH 483698
                                Expires:  02-18-2028
25

