Jordan K. Cameron (12051)
**CAMERON RINGWOOD, LC**
6975 Union Park Ave, Suite 600
Cottonwood Heights, UT 84047
Telephone: (385) 463-2425
jordan@cameronringwood.com

Elizabeth C. Rinehart (*pro hac vice*)
**VENABLE LLP**
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 528-4646
lcrinehart@venable.com

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHANNON ARNSTEIN, *et al.* <br><br> Plaintiffs, <br><br> vs. <br><br> SUNDANCE HOLDINGS GROUP, L.L.C., <br><br> Defendant. | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC 12]** <br><br> Civil No. 2:24-cv-00344-RJS-DAO <br><br> Judge Robert J. Shelby <br> Magistrate Daphne A. Oberg |

COMES NOW, Defendant Sundance Holdings Group, L.L.C. ("Sundance" or "Defendant"), through counsel, and respectfully submits this *Reply in Support of Its Motion to Dismiss* Plaintiffs' *First Amended Complaint* [Doc 12].

### INTRODUCTION

In drafting Utah's Notice of Intent to Sell Nonpublic Personal Information Act ("NISNPIA"), the Utah legislature expressly prohibited class actions. *See* Utah Code Ann.

-1-

§ 13-37-203(3). The Court must decide whether to honor NISNPIA's class action bar in federal court, as *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), and Tenth Circuit decisions applying it require, or to discard it in reliance on non-binding authority, namely *Curry v. Mrs. Fields Gifts, Inc.*, Case No. 2:22-cv-00651-JNP-DBP, 2023 WL 6318108 (D. Utah Sept. 28, 2023), that has opened the door to the type of burdens on Utah businesses that the legislature sought to avoid.

Pushing the latter choice, Plaintiffs argue that Rule 23 of the Federal Rules of Civil Procedure trumps NISNPIA's class action bar because the two conflict. That conclusion fails to heed Justice Stevens' admonition to avoid, where possible, conflicting interpretations of federal rules and state law whenever doing so would modify or abridge state substantive rights or remedies. Rule 23 may instead read as permissive in nature—allowing class actions in some cases but not requiring them in all circumstances. That reading would preserve NISNPIA's remedial scheme in federal diversity actions.

Plaintiffs also claim that NISNPIA's class action prohibition is merely procedural. But the class action bar's placement within the law's "Liability" section and legislative history reveal that the class action bar is necessary to guard NISNPIA's limited remedies. The Court should resist Plaintiffs' invitation to transform NISNPIA into an instrument of crushing liability, stop the proliferation of class action litigation under a statute that expressly prohibits it, and dismiss this case both because it lacks jurisdiction and because Plaintiffs have failed to state a claim.

## ARGUMENT

### I. Plaintiffs' approach creates an unnecessary conflict between NISNPIA and Rule 23.

Under *Shady Grove*, a conflict arises when the federal rule is "'sufficiently broad' to 'control the issue' before the court, 'thereby leaving no room for the operation' of seemingly

conflicting state law." *Shady Grove*, 559 U.S. at 421 (Stevens, J. concurring).[1] If there is a conflict, then the competing federal rule applies unless it modifies or abridges state substantive rights in violation of the Rules Enabling Act. *Id.* at 422. That latter inquiry may "bleed back" into the first—the Court should "consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id.* at 422–23. Justice Stevens cautioned against finding unnecessary conflicts between state and federal authorities and sought to avoid application of federal procedural rules that would make the "character and result of the federal litigation stray from the course it would follow in state courts." *Id.* at 423 (citing *Hanna v. Plumer*, 380 U.S. 460, 473 (1965)).

Rule 23 harmonizes with NISNPIA's class action bar because it is permissive in nature, providing procedures for pursuing a class action without mandating its availability. The NISNPIA class action bar, on the other hand, is a substantive part of its remedies provisions. Permitting each to govern its separate sphere honors the Utah legislature's interest in limiting the economic effects of NISNPIA and avoids the risk that NISNPIA defendants will face variable consequences in federal and state court—crushing liability in the former but limited liability in the latter.

Resisting the subtle federal-state balance Justice Stevens achieved, Plaintiffs cite to language in Part II-A of Justice Scalia's opinion, argue that Rule 23 *requires* class actions whenever the Rule's criteria are met, and conclude that Rule 23 conflicts with NISNPIA. (Opp. at

---

[1] The Tenth Circuit has understood Justice Stevens' concurrence to be the controlling opinion. *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 & n.6 (10th Cir. 2010) (relying on Justice Stevens' concurrence to articulate the conflict analysis and explaining that Justice Stevens' concurrence controls because it resolved the "question on narrower grounds than those relied on by the plurality"); *Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313, 1319 n.10 (D. Utah 2015) (explaining that the Tenth Circuit "has adopted Justice Stevens' concurrence as the opinion governing the issue of whether a state law conflicts with the federal rules of procedure"); *see also Los Lobos Renewable Power, LLC v. AmeriCulture, Inc.*, 885 F.3d 659, 668 n.3 (10th Cir. 2018); *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011).

14 (citing *Shady Grove*, 559 U.S. at 399–400 (Scalia, J.).) Plaintiffs rely on authorities cited by *Curry*, principally *Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251 (D. Utah 2018) (Shelby, J.), and *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015), to justify that approach.[2] But those authorities do not warrant the outcome that Plaintiffs desire.

In *Roberts*, this Court determined that the UCSPA's state class opt-in notice provision contradicted Rule 23(b)(3)'s requirement to provide an opt-out notice. 321 F. Supp. 3d at 1256. The UCSPA's opt-in requirement unavoidably contradicted Rule 23's opt-out requirement—a contradiction not susceptible to a "saving construction." *Shady Grove*, 559 U.S. at 423 (explaining that courts should consider a "saving construction" of the federal rule to avoid a conflict with substantive state law). That is not the case here because NISNPIA's class action bar may coexist with a permissive construction of Rule 23. Moreover, the holding in *Shady Grove* does not foreclose a permissive construction of Rule 23.

As this Court explained in *Roberts*, Justice Stevens' concurrence controls in the Tenth Circuit, and Justice Stevens also joined Part II-A of Justice Scalia's opinion, meaning that part of the opinion was also the majority opinion. *See* 321 F. Supp. 3d at 1254 and n.12 (citing *Lisk*, 792 F.3d at 1335). Plaintiffs extend this unremarkable exposition too far and assert that Rule 23 mandates that class actions always be available to all litigants who meet the criteria of Rule 23. But that conclusion was unnecessary to the holdings of *Shady Grove* (or to those of *Roberts* and

---

[2] Plaintiffs also cite *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938 (10th Cir. 2020), in passing for the proposition that Justice Stevens' concurrence "controls in certain respects in the Tenth Circuit." (Opp. at 2.) While *Stender* may be read to endorse Justice Scalia's analysis in part, that panel decision cannot overrule prior Tenth Circuit decisions holding that Justice Stevens' concurrence controls. *See supra*, n.1 (collecting Tenth Circuit authority applying Justice Stevens' concurrence); *Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1130 n.7 (D. Col. 2022) (noting that *Stender* appears to have departed from prior Tenth Circuit formulations of *Shady Grove* and declining to follow that decision because prior authority had not been modified by en banc reconsideration or contrary Supreme Court case law).

*Lisk*). Justice Stevens had no reason to determine if Rule 23 was permissive because his conclusion that the New York law was not substantive was determinative. *Shady Grove*, 559 U.S. at 416 ("The New York law at issue . . . is a procedural rule that is not part of New York's substantive law. Accordingly, I agree with Justice Scalia that Federal Rule of Civil Procedure 23 must apply in this case and join Parts I and II-A of the Court's opinion." (citation omitted)).

This subtle distinction is apparent in how Justice Stevens describes Rule 23 as "govern[ing] class certification," as opposed to, for example, mandating it. *Id.* at 436. Once Justice Stevens determined that Rule 23 "governs class certification," he moved on to the next step of determining whether applying Rule 23 would "abridge, enlarge, or modify New York's rights or remedies," *i.e.*, whether the New York law was substantive. *Id.* at 431–32. Whether Rule 23's provisions mandate or merely permit class actions was irrelevant to this analysis. In this context, nothing in *Shady Grove* prohibits this Court from finding that Rule 23 creates a permissive framework for class actions, and this approach would be consistent with Justice Stevens' exhortation to avoid finding conflicts between federal and state law where possible.

**II.     NISNPIA's class action bar must prevail because it is intertwined with NISNPIA's remedial scheme.**

Ultimately, regardless of whether NISNPIA and Rule 23 conflict, the Court must still consider whether NISNPIA's class action bar is substantive. If substantive, it must apply. This is because both the *Shady Grove* analysis and the *Erie* doctrine require state substantive law to apply in federal court. If the rules conflict, then *Shady Grove* instructs that the federal rule applies unless its application would violate the Rules Enabling Act by abridging, enlarging, or modifying state substantive rights. *See* 28 U.S.C. § 2072(b); *Shady Grove*, 559 U.S. at 421. If the rules do not conflict, then the Court must follow the *Erie* doctrine and determine whether the bar is substantive

before applying it. *See Shady Grove*, 559 U.S. at 421. Both analyses lead to the same conclusion: NISNPIA's class action bar is substantive and must apply in this case.

### A. The class action bar's placement in NISNPIA's "Liability" section demonstrates that it is substantive.

Plaintiffs struggle to explain why NISNPIA's class action bar is a state procedural rule despite appearing in the liability section of a state cause of action. Plaintiffs agree that "a class action bar that appears in the same provision of a statute that provides substantive rights or remedies is likely bound up in those substantive rights or remedies," (Opp. at 18), as the weight of authority holds, but conclude that NISNPIA's class action bar is not so situated. Plaintiffs are wrong. As explained in the Motion to Dismiss, NISNPIA has six subsections. (Mot. at 16.) Section 5 ("Liability") establishes the remedies available under the law and a defendant's liability. It is there that the class action bar appears. And that position supports finding that the bar is substantive.

Plaintiffs, like *Curry*, claim that the class action bar's position within section 13-37-203(3) renders it susceptible to "surgical removal" from the rest of the liability provisions set forth at sections 13-37-203(1) and (2), suggesting that it is a procedural afterthought in an otherwise substantive section. (*See* Opp. at 16 (citing *Curry*, 2023 WL 6318108, at *6).) But that is a poor litmus test. The Court could apply its scalpel to any class action limitation deemed substantive by other courts: "except in a class action" could be removed from Colo. Rev. Stat. § 6-1-113(2); "individually" extricated from Tenn. Code Ann. § 47-18-109(a)(1); "but not in a representative capacity" excised from S.C. Code Ann. § 39-5-140(a); and so on. (*See* Mot. at 13–14.) *Shady Grove*, however, requires the Court to consider whether the state rule's positioning rings substantive, mindful of federalism concerns and the limitations of the Rules Enabling Act. *Shady Grove*, 559 U.S. at 421–22. The Court's mandate is not to find creative ways to eliminate state law obstacles, but to honor state substantive law.

### B. The class action bar's application only to NISNPIA claims further demonstrates that it is substantive.

The class action bar's appearance in the Liability section of NISNPIA is just one factor leading to the conclusion that it is substantive. Equally important is its applicability only to NISNPIA claims, as opposed to all state law claims. The bar's application to NISNPIA alone suggests that it is bound up with the rights and remedies established by the statute. *Cf. Shady Grove*, 559 U.S. at 432 (CPLR § 901(b)'s application to all claims based on federal law or the law of any state suggested that it was a procedural rule); *Stender*, 958 F.3d at 947 (holding that cost shifting rules that "apply in every case" to both state and federal claims were procedural). The Opposition does not attempt to refute this argument, and for good reason. The Tenth Circuit in *Stender* noted that, had the cost-shifting provisions before it been "restricted to costs in specific areas, such as in civil-rights or employment-discrimination claims," they "could be viewed as part of the state remedy." 958 F.3d at 947. That is the case here: NISNPIA's class action bar applies only to NISNPIA claims. *Shady Grove* and *Stender* counsel that the bar is just as much "part of the state remedy" as NISNPIA's damages provision.

### C. NISNPIA's legislative history reveals that the class action bar effectuates the statute's carefully tailored remedial scheme.

When he introduced NISNPIA to the house floor, Representative Aagard yielded to questions from his colleagues expressing a range of concerns about the bill. Some, like Rep. Dougall, worried that the bill went too far and imposed "serious consequences on business." (Opp. Ex. B at 10:22–23.) Others, like Rep. Buffmire, argued that the bill did not go "far enough" in protecting personal information. (*Id.* at 14:22–15:16.) In response to these questions, Rep. Aagard explained that NISNPIA was designed to strike a delicate balance between protecting consumer interests and shielding businesses from overwhelming liability. To Rep. Dougall, Rep. Aagard explained that the provisions had been "a year in study" and that he had "purposefully limited the

penalties" to avoid "unintended consequences." (*Id.* at 10:7–11:2.) To Rep. Buffmire, the sponsor explained that he had chosen to take "one bite at a time" and to implement a "cautious approach so that we don't have some problems." (*Id.* at 15:22–16:6.) The class action bar—though not mentioned explicitly in debate—was an integral part of this cautious approach and remained in the bill from its introduction to its enrollment. Without it, there could be no limit to the penalties NISNPIA provided—any instance of unauthorized data transmission could easily be converted from a $500 individual claim to a multi-million-dollar class action.

Plaintiffs claim that this spirited exchange between the bill's sponsor and his colleagues has "nothing to do with" the proper interpretation of the class action bar and cite non-binding authorities that purportedly dismiss the import of legislative history. (Opp. at 8.) Two of these authorities were not undertaking an *Erie* or *Shady Grove* analysis (and one of those two, *Collins*, in fact relied on legislative history to reach its holding). *See Collins Music Co., Inc. v. United States*, 21 F.3d 1330, 1337–38 (4th Cir. 1994) (citing legislative history to support its reading of the Economic Recovery Tax Act); *Saunders v. Sec'y of Dep't of Health and Hum. Servs.*, 26 Cl. Ct. 1221, 1224 (1992) (declining to interpret a single sentence in a conference report which explained "technical" changes to the law as authority on the law's meaning).[3] Those cases do not reduce the import of the legislative history in this case.

Plaintiffs further claim that NISNPIA's legislative history should be disregarded because Justice Stevens did not find the New York statute's "limited amount of legislative history" persuasive. (Opp. at 11–12); *Shady Grove*, 559 U.S. at 432. The "legislative history" at issue was "pretty sparse," as Justice Scalia put it, and omitted any statements by a legislator. *Shady Grove*,

---

[3] The third case, *Kaiser v. Imperial Oil of N. Dakota*, No. CV 23-59-BLG-SPW, 2024 WL 626423 (D. Mont. Feb. 14, 2024) is an unpublished, out-of-circuit district court opinion finding that there was no applicable legislative history to review.

559 U.S. at 402–03. Specifically, the "history" was limited to: (1) "a constituent concern recorded in the law's bill jacket"; (2) a statement by a legislative commentator; (3) "a remark by the Governor in his signing statement"; and (4) "a state court's statement interpreting" the law. *Id.* Justice Stevens declined to use this scant evidence as proof that New York enacted CPLR § 901(b) to function as a damages limitation or in service of some other substantive end. *Id.* at 433 ("The legislative history . . . does not clearly describe a judgment that § 901(b) would operate as a limitation on New York's statutory damages.").

But unlike in *Shady Grove*, ample probative evidence of that kind exists in this case—including numerous statements by the bill's sponsor expressing his intent to adopt a "cautious approach" by providing a limited remedy. Even Plaintiffs admit that sponsor remarks such as those can be "afforded some weight." (Opp. at 7 (quoting *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 398 (Fed. Cir. 1990).) Permitting class action litigation to proceed would eviscerate the legislature's clear intention to provide only limited remedies for NISNPIA violations.

Finally, Plaintiffs suggest that NISNPIA's class action bar cannot be a substantive right because Justice Stevens cautioned against the overeager conclusion that any state law that could increase chances of recovery was substantive in nature, warning that "[a]ny device that makes litigation easier makes it easier for plaintiffs to recover damages." (Opp. at 12 (quoting *Shady Grove*, 559 U.S. at 434).) But this statement cannot be read in a vacuum and does not foreclose the conclusion that NISNPIA's class action bar is substantive. Justice Stevens issued that caution with a particular statute in mind—one that appeared in New York's procedural code, applied to all state and federal claims, and lacked legislative history. That is not the case here. NISNPIA's class action bar is intertwined with the statute's rights and remedies, as evidenced by its structure, narrow application, and ample legislative history.

**III.    The FAC fails to state a NISNPIA claim because it does not provide sufficient information about the alleged disclosures that purportedly occurred in this case.**

The Opposition illustrates that the FAC relies on assumptions, not allegations. Per the Opposition, the FAC alleges that Sundance sells all its customers' nonpublic purchase information, and because Plaintiffs were Sundance customers, Sundance must have sold Plaintiffs' information, too. (Opp. at 20–22.) Plaintiffs do not allege with any specificity the information allegedly collected or how it was disclosed, if it was disclosed at all. Absent these facts, the FAC does nothing more than create a "suspicion of a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).[4] The FAC should be dismissed.

## CONCLUSION

Because it is a substantive right, the NISNPIA class action bar prohibits Plaintiffs from bringing a class. Without a class, Plaintiffs cannot satisfy the requirements for diversity jurisdiction, and the FAC must be dismissed.

Alternatively, this Court should dismiss the FAC because Plaintiffs have failed to allege, beyond unsupported speculation, that their information was collected and sold.

Dated: September 20, 2024                         Respectfully submitted,

By: /s/ Elizabeth C. Rinehart
Jordan K. Cameron
**CAMERON RINGWOOD, LC**
6975 Union Park Ave, Suite 600
Cottonwood Heights, UT 84047

---

[4] Arguing otherwise, Plaintiffs cite a series of cases from the Eastern and Western Districts of Michigan in which Plaintiffs' counsel, Hedin LLP, defeated motions to dismiss similar claims under Michigan's Preservation of Personal Privacy Act ("MPPA"). Plaintiffs omit reference to adverse decisions in which their counsel appeared, both of which hold that Plaintiffs' pleading style is insufficient. *See Nashel v. N.Y. Times Co.*, No. 2:22-cv-10633, 2022 WL 6775657, at *4-6 (E.D. Mich. Oct. 11, 2022) (dismissing MPPA claims because Complaint failed to allege that data brokers obtained Plaintiff's information from Defendant); *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019) (same).

-11-

        Telephone: (385) 463-2425
        jordan@cameronringwood.com

        Elizabeth C. Rinehart (*pro hac vice*)
        **VENABLE LLP**
        750 E. Pratt Street, Suite 900
        Baltimore, MD 21202
        Telephone: (410) 528-4646
        lcrinehart@venable.com

        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of September 2024, a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** was served via this Court's CM/ECF system upon all counsel of record:

>Elliot Omega Preston Jackson (*pro hac vice*)
>**HEDIN LLP**
>1395 Brickell Ave., Suite 1140
>Miami, FL 33131
>Telephone: (305) 357-2107
>ejackson@hedinllp.com
>
>David W. Scofield (4140)
>**PETERS SCOFIELD**
>7430 Creek Road, Suite 303
>Salt Lake City, UT 84093-6160
>Telephone: (801) 322-2002
>dws@psplawyers.com
>
>*Attorneys for Plaintiffs*

/s/ Elizabeth C. Rinehart
Elizabeth C. Rinehart

*Attorney for Defendant*