IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHANNON ARNSTEIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUNDANCE HOLDINGS GROUP, LLC,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:24-cv-00344-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Defendant Sundance Holdings Group, LLC's (Sundance's) Motion to Dismiss.[1] Having reviewed the Motion and associated briefing, the court DENIES Sundance's Motion.

## BACKGROUND

The following factual summary is taken from Plaintiffs' First Amended Class Action Complaint (Complaint).[2] When considering a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the court accepts the well-pleaded allegations contained in the Complaint as true and construes them in the light most favorable to the Plaintiffs.[3]

Sundance is a specialty retailer that sells a variety of clothing and other household products to consumers.[4] Since January 1, 2004, Sundance has advertised its products via

---

[1] Dkt. 23, *Defendant's Motion to Dismiss First Amended Complaint [Doc 12] and Memorandum in Support* (*Motion*).

[2] Dkt. 12, *First Amended Class Action Complaint* (*Complaint*).

[3] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted); *Garling v. EPA*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017) ("[W]hen a defendant asserts that the . . . complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged.").

[4] *Complaint* ¶ 64.

1

physical catalogs and a website.[5] As part of its business operations, Sundance maintains a vast digital database comprised of its customers' names, home addresses, and purchase histories (collectively, Private Purchase Information).[6] To supplement its revenues, Sundance shares this Private Purchase Information with data aggregators who then supplement the information with additional private information about each Sundance customer, including the customer's gender, age, religion, and ethnicity.[7] This enhanced customer list adds value to Sundance's original list. Ultimately, Sundance rents, sells, and discloses both the Private Purchase Information and the enhanced list to third parties, including data aggregators, data cooperatives, list brokers, aggressive advertisers, direct-marketing companies, political organizations, non-profit companies, and others.[8]

Between 2004 and 2024, each named Plaintiff purchased products from Sundance by placing orders on Sundance's website.[9] Sundance completed the sales by shipping the products to each Plaintiff from a location within Utah.[10] Sundance failed to notify Plaintiffs that it would disclose Plaintiffs' Private Purchase Information, and Plaintiffs never authorized Sundance to do so.[11] At times, Sundance shared Plaintiffs' Private Purchase Information with various third parties for compensation.[12]

---

[5] *Id.* ¶ 101.

[6] *Id.* ¶¶ 5, 95.

[7] *Id.* ¶ 96.

[8] *Id.* ¶¶ 1, 98.

[9] *Id.* ¶¶ 9, 14, 19, 24, 29, 34, 39, 44, 49, 54, 59.

[10] *Id.* ¶¶ 11, 16, 21, 26, 31, 36, 41, 46, 51, 56, 61.

[11] *Id.* ¶¶ 10, 15, 20, 25, 30, 35, 40, 45, 50, 55, 60.

[12] *Id.* ¶ 116.

Plaintiffs initiated this proposed class action in May 2024, alleging Sundance violated Utah's Notice of Intent to Sell Nonpublic Personal Information Act (NISNPIA).[13] In July 2024, Sundance filed the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[14] The Motion is now ripe for review.[15]

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[16] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18] The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.[19]

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction take two forms: facial attacks and factual attacks.[20] A facial attack challenges the sufficiency of the complaint, while a factual attack presents additional evidence.[21] Here, Sundance makes a facial attack. In

---

[13] Dkt. 1, *Class Action Complaint*.

[14] *Motion* at 1.

[15] *See* Dkt. 29, *Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss the First Amended Class Action Complaint* (*Opposition*); Dkt. 31, *Defendant's Reply in Support of Its Motion to Dismiss First Amended Complaint [Doc 12]* (*Reply*).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[17] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[18] *Iqbal*, 556 U.S. at 678.

[19] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[20] *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022).

[21] *Muscogee (Creek) Nation v. Okla. Tax. Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

evaluating a facial attack, the court "must accept the factual allegations in the complaint as true,"[22] and "apply a standard patterned on Rule 12(b)(6)."[23]

## ANALYSIS

Plaintiffs allege Sundance violated NISNPIA by sharing their Private Purchase Information with third parties without providing Plaintiffs with notice.[24] Plaintiffs also insist this court has subject matter jurisdiction pursuant to the Class Action Fairness Act (CAFA) because there are more than 100 class members, the matter in controversy exceeds the sum or value of $5,000,000, and minimum diversity among the parties exists.[25] In the present Motion, Sundance argues the Complaint should be dismissed for two reasons. First, the class action bar found in NISNPIA deprives this court of subject matter jurisdiction over Plaintiffs' claims because, "[w]ithout a viable class action, Plaintiffs cannot meet the amount-in-controversy requirement to establish diversity jurisdiction under 28 U.S.C. § 1332(d)."[26] Second, Sundance argues Plaintiffs fail to state a claim under NISNPIA because Plaintiffs do not sufficiently allege, beyond conclusory assertions, that Sundance sold their personal data.[27] The court disagrees with Sundance. The court finds Rule 23 of the Federal Rules of Civil Procedure governs the issue of whether Plaintiffs may proceed as a class and ultimately establish diversity jurisdiction. The court also finds Plaintiffs adequately pleaded a claim for relief under NISNPIA pursuant to Rule 12(b)(6). Each of Sundance's arguments will be discussed in turn.

---

[22] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

[23] *Garling v. EPA*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017).

[24] *Complaint* ¶ 1.

[25] *Id.* ¶ 65; 28 U.S.C. §§ 1332(d)(2), (5).

[26] *Motion* at 5.

[27] *Id.*

4

I. **NISNPIA's Class Action Bar Does Not Deprive the Court of Subject Matter Jurisdiction.**

Plaintiffs seek to represent a class of persons who had their Private Purchase Information obtained and unlawfully disclosed by Sundance in violation of NISNPIA.[28] In its most basic sense, NISNPIA prohibits a commercial entity from disclosing nonpublic personal information obtained as a result of a consumer transaction without providing written or oral notice to the consumer.[29] NISNPIA provides consumers with a private cause of action and imposes liability of $500 "for each time the commercial entity fails to provide the [required] notice . . . ."[30] However, § 203(3) of NISNPIA prohibits class actions.[31] At issue here is whether Plaintiffs may avail themselves of the class action mechanism under Federal Rule 23 and establish diversity jurisdiction under CAFA when Utah Code § 13-37-203(3) precludes class actions altogether. The Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company* resolves the contest in favor of Rule 23's applicability to the present dispute.[32]

In *Shady Grove*, the Court addressed a conflict between Rule 23 and a New York statute that prohibited class action lawsuits seeking recovery for statutory penalties, including statutory interest.[33] Five justices held Rule 23, which allows class action recovery of statutory penalties, controlled.[34] The decision was fragmented: Justice Scalia wrote for the plurality, Justice Stevens joined in the holding but concurred separately, and four justices dissented.[35] In light of this split,

---

[28] Utah Code § 13-37 *et seq*.

[29] *See id.*

[30] *Id.* § 13-37-203(1)–(2).

[31] *Id.* § 13-37-203(3) ("A person may not bring a class action under this chapter.").

[32] 559 U.S. 393 (2010).

[33] *Id.* at 397 (plurality opinion).

[34] *See id.* at 436 (Stevens, J., concurring).

[35] *Id.* at 396 (plurality opinion).

5

the Tenth Circuit instructs that Justice Stevens's concurrence is controlling.[36] Because Justice Stevens joined in Sections I and II–A of the plurality opinion, those parts of the plurality opinion also control.[37]

As explained in *Shady Grove*, federal courts sitting in diversity generally apply state substantive law and federal procedural law.[38] But "[w]hen both a federal rule and a state law appear to govern a question before a federal court sitting in diversity," a familiar two-step framework applies for federal courts to "negotiate this thorny area" and determine which law controls.[39] The first step requires courts to determine whether the federal rule directly conflicts with the state law.[40] If there is no conflict, the court engages in the traditional Rules of Decision Act inquiry under *Erie Railroad Company v. Tompkins*[41] and its progeny.[42] If there is a conflict, the court proceeds to the second step and must apply the federal rule as long as it represents a valid exercise of Congress's rulemaking authority under the Rules Enabling Act by not abridging, enlarging, or modifying any substantive right.[43] These two steps will be referred to as

---

[36] *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) ("[T]he Tenth Circuit has understood [Justice Stevens's] concurrence to be the controlling opinion in Shady Grove."); *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) ("When faced with a choice between a state law and an allegedly conflicting federal rule, we follow the framework described by the Supreme Court in *Shady Grove*, as laid out by Justice Stevens in his concurring opinion.").

[37] *See Shady Grove*, 559 U.S. at 411 (plurality opinion) (explaining how the concurrence "departs from us only with respect to the second part of the test, *i.e.*, whether application of the Federal Rule violates [the Enabling Act]"); *Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1254 (D. Utah 2018) (citing *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015)); *Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-cv-00651-JNP-DBP, 2023 WL 6318108, at *3 (D. Utah Sept. 28, 2023); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 n.1 (D.C. Cir. 2015).

[38] 559 U.S. at 417 (Stevens, J., concurring) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

[39] *Id.* at 421.

[40] *See Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 943 (10th Cir. 2020) (citing *Shady Grove*, 559 U.S. at 399).

[41] 304 U.S. 64 (1938).

[42] *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring).

[43] *Id.* (citing 28 U.S.C. § 2072(b)).

6

Step One and Step Two respectively. An analysis of each step requires this court to apply Rule 23 to the present dispute.

### A. Rule 23 and § 203(3) Are in Direct Conflict under Step One.

Because Justice Stevens joined the plurality's analysis of Step One in *Shady Grove*, the plurality opinion and Justice Stevens's concurrence guide this part of the analysis.[44] A state law and federal rule are in conflict when the federal rule "answers the question in dispute,"[45] leaves "'no room for the operation' of seemingly conflicting state law," or is in "direct collision" with the state law.[46] The "question in dispute" in this case is identical to the question presented in *Shady Grove*: "whether [Plaintiffs'] suit may proceed as a class action."[47]

Critically, the plurality opinion in *Shady Grove* interpreted Rule 23 as creating "a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."[48] The Court also clarified how Rule 23's use of the word "may" in the phrase "[a] class action may be maintained" affords discretion to maintain a class action to the plaintiff, not the court.[49] Thus, a federal district court is *required* to entertain a class action once a plaintiff makes the required showings under 23(b),[50] and state statutes that impose heightened class action requirements or limit the claims eligible for class action adjudication necessarily

---

[44] *Id.* at 411 (plurality opinion) (explaining how the concurrence "departs from us only with respect to the second part of the test, *i.e.*, whether application of the Federal Rule violates [the Enabling Act]"); *see also Roberts*, 321 F. Supp. 3d at 1254 ("Because Justice Stevens joined in Sections I and II-A of the plurality opinion, those parts also control."); *Curry*, 2023 WL 6318108, at *3 (explaining how Justice Stevens joined the plurality's holding with respect to Step 1).

[45] *Id.* at 398 (citation omitted).

[46] *Id.* at 421–22 (Stevens, J., concurring) (citations omitted).

[47] *Id.* at 398 (plurality opinion).

[48] *Id.*

[49] *Id.* at 400 (citing Fed. R. Civ. P. 23(b) and explaining how "[c]ourts do not maintain actions; litigants do").

[50] *See id.* ("Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts.'") (citation omitted) (emphasis in original).

7

conflict with Rule 23.[51] Said differently, "Rule 23 provides a one-size-fits-all formula for deciding the class action question."[52] This binding interpretation requires this court to conclude Rule 23 answers the question in dispute in this case. Under Rule 23(b), a plaintiff can always maintain a class action once certain requirements are met, regardless of the claim. Under § 203(3), a plaintiff is never allowed to bring a class action under NISNPIA. The two rules "are in direct, unavoidable conflict,"[53] and there is no room for § 203(3) to operate.

Sundance contends recent decisions in this District should persuade this court to find Rule 23 and NISNPIA are reconcilable.[54] But this court is not persuaded by the reasoning in those cases. First, in *Callegari*, this court found no conflict between Rule 23 and the Utah Consumer Sales Practices Act's (UCSPA's) tolerance of class actions only when a plaintiff pleads damages "caused by an act or practice" as specified under the UCSPA.[55] The court concluded the two rules could operate "side by side" because "[t]he language of Rule 23 may be read to be permissive" and "Rule 23 does not explicitly set forth exclusive procedural requirements for maintaining a class action."[56] Similarly, in *Fullmer*, this court relied on the reasoning in *Callegari* to conclude there was no conflict between Sections 13-11-19(2) and (4)(a) of the UCSPA and Rule 23.[57] The court applied "[t]he same logic" as in *Callegari* and found "UCSPA subsections (2) and (4)(a) and Rule 23 . . . capable of coexisting," despite the

---

[51] *Id.* at 401 ("[A] State cannot limit [Rule 23's] permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements.").

[52] *Id.* at 399.

[53] *Curry*, 2023 WL 6318108, at *3.

[54] *Motion* at 9 (citing *Callegari v. Blendtec, Inc.*, No. 2:18-CV-308-DB, 2018 WL 5808805 (D. Utah Nov. 6, 2018) and *Fullmer v. A-1 Collection Agency, LLC*, No. 4:20-CV-00143-DN-PK, 2022 WL 1538675 (D. Utah May 16, 2022).

[55] *Callegari*, 2018 WL 5808805, at *2 (D. Utah Nov. 6, 2018).

[56] *Id.* at *4.

[57] *Fullmer*, 2022 WL 1538675, at *3.

8

UCSPA's class action limitation.[58] But this court respectfully disagrees with the reasoning in *Callegari* and *Fullmer*. As the Supreme Court instructed in *Shady Grove*, Rule 23 creates a categorical rule entitling a plaintiff to pursue his claim as a class action.[59] Once a plaintiff elects to bring a class action and satisfies Rule 23's requirements, courts must permit plaintiffs to proceed as a class.[60] As such, Rule 23 cannot be read to be permissive under Step One,[61] and any state statute—like NISNPIA or the UCSPA—restricting a party's ability to bring a class action more than what is already articulated in Rule 23 necessarily and directly conflicts with the Rule.

Thus, having determined Rule 23 and § 203(3) are in direct conflict, Rule 23 will govern unless it violates the Enabling Act.[62]

      B. <u>Rule 23's Operation Does Not Abridge, Enlarge, or Modify any Substantive Right or Remedy Created by NISNPIA.</u>

Justice Stevens departed from the majority's holding in *Shady Grove* with respect to Step Two. His concurrence therefore controls this part of the analysis in the Tenth Circuit.[63] Under this Step, a conflicting federal rule controls unless it violates the Enabling Act by abridging,

---

[58] *Id.*

[59] *Shady Grove*, 559 U.S. at 398 (plurality opinion).

[60] *See id.* at 400–01.

[61] *See id.*

[62] *See id.* at 421 (Stevens, J., concurring) (citing 28 U.S.C. § 2072(b)).

[63] *Id.* at 411 (plurality opinion) ("The concurrence . . . departs from us only with respect to the second part of the test, *i.e.*, whether application of the Federal Rule violates § 2072(b) . . . ."); *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotations omitted)); *Curry*, 2023 WL 6318108, at *3 ("The Stevens concurrence is controlling in the Tenth Circuit as to *Shady Grove* Step Two . . . ." (citations omitted)); *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) (relying on the Stevens concurrence to determine "whether the state law actually is part of a State's framework of substantive rights or remedies" (citation omitted)).

9

enlarging, or modifying a state's rights or remedies.[64] Instead of joining the plurality and finding an Enabling Act violation based on the form of the state law—*i.e.*, whether it is traditionally substantive or procedural—Justice Stevens directs federal courts to focus on whether the state rule "function[s] as a part of the [s]tate's definition of substantive rights and remedies."[65] Thus, states may use "a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies,"[66] and federal courts must respect that choice. This situation is rare, however. Justice Stevens cautions "the bar for finding an Enabling Act problem is a high one"[67] and there must be "little doubt" that application of a federal rule would alter a state-created right or remedy.[68] Indeed, "few seemingly [state] 'procedural' rules define the scope of a substantive right or remedy."[69] These state procedural rules "make it *significantly* more difficult to bring or to prove a claim, thus serving to limit the scope of that claim" or "define the amount of recovery."[70]

Here, Sundance insists NISNPIA's text and legislative history prove § 203(3) operates to define the scope of NISNPIA's substantive rights or remedies. To support these arguments, Sundance first relies on the plain language of NISNPIA and the placement of § 203(3) in the "Liability" section of the statute.[71] NISNPIA reads in relevant part:

---

[64] *Shady Grove*, 559 U.S. at 431 (Stevens, J., concurring).

[65] *Id.* at 416–17.

[66] *Id.* at 420.

[67] *Id.* at 432.

[68] *Id.* at 432.

[69] *Id.* at 428.

[70] *Id.* at 420 (emphasis added). Examples include requiring "plaintiffs to post bond before suing," "state statute[s] of limitations," "state-imposed burdens of proof," or "state procedure for examining jury verdicts as means of capping the available remedy." *Id.* at 420, 420 n.4 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555 (1949), *Guar. Tr. Co. v. York*, 326 U.S. 99 (1945), and *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996)).

[71] *See Motion* at 10.

> 13-37-203 Liability.
>
> (1) A person may bring an action against a commercial entity in a court of competent jurisdiction in this state if: (a) the commercial entity enters into a consumer transaction with that person; (b) as a result of the consumer transaction described in Subsection (1)(a), the commercial entity obtains nonpublic personal information concerning that person; and (c) the commercial entity violates this chapter.
>
> (2) In an action brought under Subsection (1), a commercial entity that violates this chapter is liable to the person who brings the action for: (a) $500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action; and (b) court costs.
>
> (3) A person may not bring a class action under this chapter.

Substantive rights are "the rules of decision by which [a] court will adjudicate [a party's] rights."[72] And a "rule of decision" is "[a] rule, statute, body of law, or prior decision that provides the basis for deciding or adjudicating a case."[73] Thus, in its most basic sense, the substantive right NISNPIA creates is the right for a "person" not to have their nonpublic personal information, which was obtained as a result of a consumer transaction, disclosed by a commercial entity without receiving proper notice.[74] This right is created in § 203(1) with implicit references to §§ 201 (discussing the notice requirements imposed on commercial entities), 202 (articulating the scope of the prohibited conduct), and 102 (defining various terms used throughout the statute). The right created in § 203(1) creates corresponding duties owed by commercial entities—duties to either provide the statutorily defined notice to consumers or to avoid disclosing nonpublic personal information altogether.[75]

---

[72] *Shady Grove*, 559 U.S. at 407 (plurality opinion) (citation omitted); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1337 (11th Cir. 2015) (citations omitted).

[73] *Rule of Decision*, Black's Law Dictionary (12th ed. 2024).

[74] *See* Utah Code § 13-37-203(1).

[75] *Id.* § 13-37-201(1)(a) ("In accordance with this section, a commercial entity shall provide the notice described in this section . . ."); *Id.* § 13-37-202(1) ("A commercial entity may not disclose nonpublic personal information that the commercial entity obtained on or after January 1, 2004, as a result of a consumer transaction if the commercial entity fails to comply with Section 13-37-201.").

A "remedy" consists of what "a court can do for a litigant who has been wronged or is about to be wronged."[76] Section 203(2) clearly provides a remedy of "$500" and "court costs" for "the person who brings the action." Section 203(2) references § 203(1) and, like § 203(1), implicitly references §§ 201, 202, and 102. But §§ 203(1) and 203(2)—the provisions creating the rights, duties, and remedies—never reference, acknowledge, or incorporate § 203(3)—the class action bar. In fact, besides being codified in the same "Liability" section, these subsections are entirely ignorant of § 203(3). Thus, the procedural device Utah elects to employ or avoid in order to aggregate or adjudicate NISNPIA claims does not appear to affect the rights or remedies created under the statute as § 203(3) stands alone from any statutory discussion of or internal references to NISNPIA's substantive components.

*Shady Grove* counsels that the ability to join together as a class is "a traditionally procedural question."[77] It would therefore be rare for a state's class action bar to define the scope of a state statute's substantive rights or remedies.[78] And § 203(3)'s class action bar does not implicate one of the rare situations indicating an Enabling Act violation; it does not "make it *significantly* more difficult to bring or to prove a claim, thus serving to limit the scope of that

---

[76] *Remedy*, Black's Law Dictionary (12th ed. 2024) (quoting Douglas Laycock, Modern American Remedies 1 (4th ed. 2010)).

[77] *Shady Grove*, 559 U.S. at 429 (Stevens, J., concurring) ("[W]hether to join plaintiffs together as a class" is "a traditionally procedural question."); *see also Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1254 (10th Cir. 2018) (Tymkovich, C.J., concurring) (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 511–13 (2018)); *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[78] *See Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring) (noting how an Enabling Act violation may be found when "seemingly procedural rules . . . make it significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that claim" or "define the amount of recovery" while explaining how "[t]he mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt."); *see also Curry*, 2023 WL 6318108, at *6 (explaining how because "Rule 23 is merely a 'species of joinder,' . . . [t]he traditionally procedural class action form in a particular statute must, then, be truly inseparable from the substantive rights and remedies before a Rule Enabling Act problem arises." (citing *Shady Grove*, 559 U.S. at 423)).

claim," nor does it "define the amount of recovery."[79] While an attempt to bring a class action under NISNPIA in Utah state court would undoubtedly be met with decertification, the corresponding rights, duties, and remedies imposed and available under NISNPIA would remain untouched. Plaintiffs would retain their right to sue and likely could pursue joint actions under Utah Rule of Civil Procedure 20[80] or proceed individually. Further, the path to proving a NISNPIA violation would be the same, and plaintiffs would be entitled to the same $500 remedy under § 203(2), regardless of whether a joinder device is employed. Certainly, § 203(3)'s class action bar makes it less likely that some plaintiffs will bring a NISNPIA claim in Utah state court, but it does not make it significantly more difficult. As Justice Scalia observed in *Shady Grove*, "[t]he likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of 'incidental effec[t]' we have long held does not violate [the Enabling Act]."[81]

The court is equally unpersuaded by Sundance's argument that the use of the word "person" in the singular in § 203(1) is significant, suggesting a limitation of class actions within the text of the subsection creating the right.[82] Sundance acknowledges the Utah Rules of Construction provide "[t]he singular includes the plural, and the plural includes the singular."[83] Still, Sundance argues such a construction is impermissible here as it would be "inconsistent with the manifest intent of the Legislature" and "repugnant to the context of the statute."[84] As

---

[79] *Shady Grove* at 420 (emphasis added).

[80] Utah Rule Civ. P. 20 ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.").

[81] *Shady Grove*, 559 U.S. at 408 (plurality opinion) (second alteration in original) (citation omitted).

[82] *Motion* at 17.

[83] *Id.* (citing Utah Code § 68-3-12(1)(b)).

[84] *Id.* (citing Utah Code § 68-3-12(1)(a)).

explained below, the court is unable to discern the manifest intent of the Utah Legislature with respect to § 203(3). And it is difficult to construe "person" as only permitting individual actions when all substantive portions of the statute ignore § 203(3), and when multiple plaintiffs can join together pursuant to Utah Rule of Civil Procedure 20 to pursue their claims under NISNPIA.

Moreover, the court is not convinced the placement of § 203(3) in the Liability section of NISNPIA suggests § 203(3) defines the scope of NISNPIA's rights and remedies. As the Eleventh Circuit explained, "the question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance—not on the placement of a statute within a state code."[85] The court acknowledges that a complete class action bar cabined to a single statutory section makes the determination of whether § 203(3) defines the scope of NISNPIA's substantive rights or remedies a closer call than the universally applicable New York statute at issue in *Shady Grove*.[86] The court also recognizes there are additional, practical consequences faced by some defendants when class action joinder is tolerated. Indeed, class actions often subject defendants to more costly and financially risky litigation. But what is missing here are arguments and evidence leaving the court with "little doubt" that the application of a traditionally procedural joinder device like Rule 23 would alter NISNPIA's substantive rights or remedies.[87] The practical consequences of class actions born by defendants have long been deemed by the

---

[85] *Lisk*, 792 F.3d at 1336 (11th Cir. 2015).

[86] *See Roberts*, 321 F. Supp. 3d at 1257–58 (recognizing how a complete bar to class action certification and the fact that the provision is found within the text of the state statute "touches more directly on a potential plaintiff's substantive rights").

[87] *Shady Grove*, at 432 (Stevens, J., concurring).

Supreme Court to be incidental, not substantive.[88]  And the fact that NISNPIA's substantive sections do not incorporate or reference § 203(3) undermines Sundance's attempt to demonstrate an Enabling Act violation.  In fact, all state statutes cited by Sundance in its briefs that were found to control over Rule 23 acknowledged or created the class action limitation within the very sentence or subsection that created the corresponding right or remedy.[89]  Such a statutory scheme is missing here, which would have provided much stronger evidence suggesting the class action bar is actually bound up with a state right or remedy.

Finally, nothing in the legislative history encourages a different result.  Sundance points to two statements made by NISNPIA's sponsor, Representative Aagard, indicating he purposefully and cautiously drafted NISNPIA to limit the "penalties" available under the Act.[90]

---

[88] *Id.* at 408 (plurality opinion) ("The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of 'incidental effect[t] we have long held does not violate [the Enabling Act].'" (first alteration in original) (citation omitted)); *id.* at 434 (Stevens, J., concurring) ("Any device that makes litigation easier makes it easier for plaintiffs to recover damages."); *see also Roper*, 445 U.S. at 332 ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

[89] *See* Colo. Rev. Stat. § 6-1-113(2) ("Except in a class action or a case brought for a violation of section 6-1-709, and notwithstanding any other law, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article 1 is liable in an amount equal to . . . [t]he greater of . . . [t]he amount of actual damages sustained . . . [f]ive hundred dollars; or . . . [t]here times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct . . . ."); Tenn. Code Ann. § 47-18-109(a)(1) ("Any person who suffers an ascertainable loss of money or property, . . . as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages."); S.C. Code Ann. § 39-5-140(a) ("Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages."); 740 Ill. Comp. Stat. § 10/7(2) ("Any person who has been injured in his business or property, or is threatened with such injury, by a violation of Section 3 of this Act may maintain an action in the Circuit Court for damages, or for an injunction, or both, against any person who has committed such violation. . . . Provided further that no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection.").

[90] Specifically, Representative Aagard, stated: "I purposely limited the penalties just to avoid, uh, to take care of any unintended consequences. So I think we're fine."  H.B. 40s1, 55 Leg., Gen. Sess., Day 12 (Utah, Jan. 29, 2003).  He later explained "[a]nd my course of action, what I've chosen to do is take one bite at a time on this and deal with things as they move along. I don't want to move too fast 'cause we need to be very careful for this type of issue just because of where it reaches. . . . So I'm just trying to take a cautious approach so that we don't have some problems." *Id.*

15

These statements, Sundance argues, suggest the class action bar in § 203(3) was intended to define the scope of the state-created rights and remedies.[91]  The court disagrees.

When evaluating legislative history under *Shady Grove*, Justice Stevens explained, "it is necessary to distinguish between procedural rules adopted for *some* policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy. Although almost every rule is adopted for some reason and has some effect on the outcome of litigation, not every state rule 'defines the dimensions of [a] claim itself.'"[92]  In fact, even statements indicating the legislature desired to avoid "annihilating punishment of the defendant"[93] in *Shady Grove* were not particularly strong evidence of an Enabling Act problem because "[a]ny device that makes litigation easier makes it easier for plaintiffs to recover damages."[94]

Here, Representative Aagard's statements are insufficient to demonstrate an Enabling Act violation.  His statements at best provide weak, speculative evidence of the Utah Legislature's intent as they are devoid of any reference to particular words in NISNPIA's statutory text.[95]  It is also unclear whether his references to limited "penalties" were directed at § 203(3).  It is just as likely "penalties" referred only to the modest $500 remedy available under § 202(2).  While §

---

[91] *Motion* at 3.

[92] *Shady Grove*, 559 U.S. at 433–34 (Stevens, J., concurring).

[93] *Id.* at 434.

[94] *Id.*

[95] It is well-established that "[t]he contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history." *Weinberger v. Rossi*, 456 U.S. 25, 35 n.15 (1982).  Although courts should be "extremely wary of testimony before committee hearings and debates on the floor of Congress," courts may make an exception for "precise analyses of statutory phrases by the sponsors of the proposed laws." *S & E Contractors, Inc. v. U.S.*, 406 U.S. 1, 13 n.9 (1972); *see also Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 398 (Fed. Cir. 1990) (acknowledging that a sponsor's remarks should be afforded some weight as to the meaning of a bill but that this weight is only justified when the remarks are directed to the intended meaning of particular words in a statute) (citing *Regan v. Wald*, 468 U.S. 222, 237 (1984)).

203(3) was undoubtedly adopted for some policy reason, the court cannot conclude it was adopted with the intent to define the scope of NISNPIA's rights or remedies. In Justice Stevens's words, the legislative history cited by Sundance fails to "clearly describe a judgment" that § 203(3) is "intimately bound up" in the substantive rights and remedies of NISNPIA.[96] It is therefore insufficient to satisfy Sundance's heavy burden to show an Enabling Act violation.

Ultimately, because there is a direct conflict between Rule 23 and § 203(3), Rule 23 governs unless it violates the Enabling Act. And in light of Sundance's heavy burden and the lack of any clear evidence suggesting § 203(3) defines the scope of NISNPIA's rights or remedies, the court determines Rule 23 does not violate the Enabling Act. Plaintiffs are therefore entitled to maintain their class action, provided Rule 23's other requirements are satisfied, and are capable of demonstrating the amount-in-controversy requirement necessary to establish diversity jurisdiction under CAFA.

## II. The Factual Allegations in the Complaint are Sufficient to State a Claim for Relief under NISNPIA.

Sundance alternatively argues Plaintiffs' claims fail because "they do not adequately allege, beyond mere conclusion, that Sundance disclosed their 'nonpublic personal information.'"[97] Sundance insists the Complaint omits any specific facts that tie Plaintiffs' information to the alleged practice of maintaining customer lists and selling the list to third parties.[98] According to Sundance, Plaintiffs only rely on an impermissible inference that

---

[96] *Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring).

[97] *Motion* at 20.

[98] *Id.* at 21.

because Sundance sold all its customers' Private Purchase Information, and because Plaintiffs were Sundance customers, Sundance must have sold Plaintiffs' information too.[99]

The court disagrees with Sundance. A review of the allegations in the First Amended Complaint reveals how between 2004 and 2024, each named Plaintiff purchased products from Sundance by placing orders on Sundance's website.[100] Sundance completed the sales by shipping the products to each Plaintiff from a location within Utah.[101] Sundance thereafter failed to notify Plaintiffs that it would disclose Plaintiffs' Private Purchase Information, and Plaintiffs never authorized Sundance to do so.[102] And at times, Sundance disclosed each Plaintiffs' Private Purchase Information to various third parties for compensation.[103] In addition to these Plaintiff-specific allegations, Plaintiffs also allege more broadly that Sundance disclosed "all of its customers' Private Purchase Information,"[104] which would necessarily encompass Plaintiffs' information.

Still, Sundance contends "[t]here are no allegations specific to any Plaintiff that states what information was gathered from that Plaintiff, what information was disclosed, and to whom."[105] This is incorrect. There are clearly allegations indicating as much. The information gathered consisted of each Plaintiff's name, home address, and purchase history.[106] This information was later "enhanced" to include each Plaintiff's gender, age, religion, and

---

[99] *Reply* at 10.

[100] *Complaint* ¶¶ 9, 14, 19, 24, 29, 34, 39, 44, 49, 54, 59.

[101] *Id.* ¶¶ 11, 16, 21, 26, 31, 36, 41, 46, 51, 56, 61.

[102] *Id.* ¶¶ 10, 15, 20, 25, 30, 35, 40, 45, 50, 55, 60.

[103] *Id.* ¶¶ 116–17 ("Sundance disclosed customer lists containing the Private Purchase Information of all of its customers, including that of each of the Plaintiffs and Class members . . . .").

[104] *Id.* ¶ 5.

[105] *Motion* at 21.

[106] *Complaint* ¶¶ 5, 95.

ethnicity.[107]  Sundance disclosed, without authorization or notice, each Plaintiff's Private Purchase Information to third parties, including data aggregators, data cooperatives, list brokers, aggressive advertisers, direct-marketing companies, political organizations, non-profit companies, and others.[108]  Ultimately, as written, the First Amended Complaint allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[109]  As such, Plaintiffs adequately state a claim for relief under NISNPIA.

## CONCLUSION

For the foregoing reasons, the Sundance's Motion to Dismiss is DENIED.[110]

SO ORDERED this 25th day of November 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[107] *Id.* ¶ 96.

[108] *Id.* ¶¶ 1, 12, 22, 27, 32, 37, 42, 47, 52, 57, 62, 98.

[109] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[110] Dkt. 23.