# Exhibit A

Motion Hearing Transcript (November 14, 2024)

1              IN THE UNITED STATES DISTRICT COURT

2                      DISTRICT OF UTAH

3                      CENTRAL DIVISION

4

5    SHANNON ARNSTEIN, et al.,        )

6              Plaintiffs,            )

7    vs.                              )   Case No. 2:24-CV-344RJS

8    SUNDANCE HOLDINGS GROUP,         )

9    L.L.C.,                          )

10             Defendant.             )

11   _____)

12

13

13           BEFORE THE HONORABLE ROBERT J. SHELBY

14         --------------------------------------

15                   November 14, 2024

16

17                     Motion Hearing

18

19

20

21

22

23

24

25

1

2                        A P P E A R A N C E S

3

4

   For Plaintiff:                 FRANK HEDIN
5                                 1395 Brickell Avenue
                                  Suite 610
6                                 Miami, Florida

7                                 DAVID W. SCOFIELD
                                  7430 Creek Road
8                                 Suite 303
                                  Salt Lake City, Utah
9

10

11

12

   For Defendants:               JORDAN K. CAMERON
13                                6975 Union Park Avenue
                                  Suite 600
14                                Cottonwood Heights, Utah

15                                ELIZABETH RINEHART
                                  750 East Pratt Street
16                                Suite 900
                                  Baltimore, Maryland
17

18

19

20

21

22  Court Reporter:               Ed Young
                                  351 South West Temple
23                                Room 3.302
                                  Salt Lake City, Utah 84101-2180
24                                801-328-3202
                                  ed_young@utd.uscourts.gov
25

```
 1   November 14, 2024                              1:30 p.m.

 2                     P R O C E E D I N G S

 3

 4        THE COURT:  Good afternoon, everyone, and welcome.

 5             We'll go on the record and call case number

 6   2:24-CV-344, Arnstein versus Sundance Holdings Group.  This

 7   is the time set for hearing on the defendant's motion to

 8   dismiss.

 9             Should we make our appearances starting with the

10   plaintiffs?

11        MR. SCOFIELD:  David Scofield, Your Honor,

12   appearing for the plaintiff.  My lead counsel, who is

13   admitted pro hac vice, is here and I will let him introduce

14   himself.

15        THE COURT:  Great.

16        MR. HEDIN:  Frank Hedin on behalf of the

17   plaintiffs.

18        THE COURT:  Thank you.

19        MR. CAMERON:  Good afternoon, Your Honor.  Jordan

20   Cameron for the defendants, local counsel, with Elizabeth

21   Rinehart.

22        THE COURT:  Welcome to all of you.  We appreciate

23   you making time for this hearing.

24             In advance of our hearing we have carefully

25   studied your papers, we have familiarized ourselves with
```

1   your arguments and we have reviewed a lot of cases and I

2   think we understand your arguments and positions.  As is

3   almost always the case in a civil hearing, at least, I like

4   to come to the bench and paint the targets for you and share

5   my initial views of life, with the caveat and understanding

6   that we're always here with an open heart and an open mind,

7   eager to hear what you think we have misunderstood or

8   misapplied.

9          So these are tentative views, but I ought to have

10  a good idea generally on a Rule 12 motion, at least, what I

11  think.  I'm going to overshare for a minute.  It was my

12  practice for many years coming to the bench that if a

13  litigant faced a risk of losing a claim or a case, we're

14  going to have a hearing.  They would have a chance to come

15  to court and make their arguments through their lawyer and

16  see a judge who is hopefully well prepared and impartial and

17  committed to applying the rule of law.

18         I started to make an exception for some Rule

19  12(b)(6) motions because we had some awkward hearings.  If I

20  have read the complaint and I am just asking do I think

21  there is a plausible claim, there is not a lot of room for

22  argument, and we have that issue in part here.

23         Here are my initial views.  Sundance may take

24  issue with whether some of the allegations in the complaint

25  have a reliably factual basis, but they are there.  I see

1  the guardrail for Rule 12(b)(6) as Rule 11.  I am required

2  to accept the allegations as true and there are sufficient

3  allegations in the complaint to form a plausible claim for

4  relief.  If some day we learn that there is no factual basis

5  for it, then we have a different remedy for that problem.  I

6  will hear any argument you want to make today, of course,

7  but that is my impression after reading the complaint.

8        Second, I think Judge Parrish's Curry decision is

9  highly persuasive to me and I think it is correct.  I will

10  be eager to visit with Sundance about a couple of things.

11        First, I will just say I don't share Sundance's

12  view that step one of the Shady Grove analysis is open.  I

13  think it is closed to me at least.  I think I'm bound by

14  both Justice Scalia's discussion in part, what is it, 2-A of

15  the Shady Grove decision, and I count five justices joining

16  in that part of the discussion.  He answers the question

17  about may and Rule 23 I think clearly, but even if he

18  didn't, when we get to Justice Stevens' concurring opinion

19  he performs a step one analysis and essentially says the

20  same thing in my view in the opening paragraph of that

21  analysis.

22        I think this case is a step two case and on

23  balance I share Judge Parrish's views of it, I think.  I

24  believe this is a closer case than the New York statute at

25  issue in Shady Grove, and in my view the strongest argument

1    for the defense of the statute is the fact that the

2    statutory language is in the liability section of the

3    statute which suggests something, but I think the outcome in

4    this case is largely a product of what Justice Stevens

5    describes as the standard that I'm required to apply.  He

6    says generally it is a high bar and it is clear from the

7    language that he means that, but beyond that what he says is

8    if we're considering whether there is a Rules Enabling Act

9    issue, I have to be left with no doubt what the legislature

10   intended.

11        I can see the arguments here and Sundance made the

12   arguments and I think made them as well as you could under

13   the circumstances.  I just think that I read the sponsor's

14   legislative history, and I don't think that it -- I'm not

15   even sure how suggestive it is that the sponsor is thinking

16   about the class action litigation bar when he was talking

17   about how conservative he intended the statute to be.  I

18   think it is more likely than not that he is talking about

19   penalties when he talks about penalties and that means the

20   $500 limitation on a remedy.

21        I think there are other things, and my law clerk

22   and I have spent a lot of time thinking about how state

23   legislatures might demonstrate that they intend a class

24   action bar to be part of the substantive description of the

25   rights or remedies and there are many ways this can be done.

1    I don't think it is a definitive bar just because of the

2    step one analysis by Justices Scalia and Stevens, but there

3    is just not much here for Sundance to work with.  I think

4    that gets us where Judge Parrish is.

5            Those are just my opening thoughts.  I'm eager to

6    hear what all of you have to say about it and why I am

7    wrong.

8            Ms. Rinehart, I see you following along carefully.

9    What do you think about all of that?  Come on up to the

10   podium if you would like.

11           MS. RINEHART:  Thank you, Your Honor.  I'm going

12   to bring my laptop as a security blanket, but I don't have

13   prepared remarks.  I can start off by saying that I fully

14   appreciate Your Honor's decision on step one.  We knew that

15   was an uphill --

16           THE COURT:  Not a decision yet.

17           MS. RINEHART:  Well, Your Honor's assessment,

18   tentative assessment of step one.  We knew that was an

19   uphill battle.  I think the reason we thought to still

20   present it is because when we read Shady Grove and we sort

21   of parsed what Justice Stevens was saying as well as what

22   Justice Scalia was saying in the majority opinion, we found

23   conflict between the concurrence and Justice Scalia's

24   opinion, even though Justice Stevens did sign onto it.  I'm

25   sure Your Honor is aware of many political reasons within

1    the Court why Justice Stevens would concur in the result and

2    have to sign on to that result, but maybe use his

3    concurrence to try to narrow the impact.

4            That all being said, as I think we mentioned in

5    our reply, ultimately we think what is the most persuasive

6    here is the substantive nature of the class action bar.  We

7    also agree that there is not a lot for this Court to go on

8    in terms of legislative history.  I think part of the reason

9    is that in 2003 when the statute was being debated Shady

10   Grove hadn't been decided.  There certainly wasn't a guide

11   rail for the legislature to follow in order to make its

12   intent known.

13           So with that we go back to the Justice Stevens

14   concurrence and think about Your Honor's opinion in Roberts

15   where you noted that it is really animated by concerns about

16   federalism and making sure that we respect what the Utah

17   legislature intended.  So, yes, there was no discussion of

18   the class action remedy, but there was a pretty heated

19   discussion in a respectful manner about making sure that

20   this law did not become overly burdensome on Utah

21   businesses.

22           As part of answering those questions, although the

23   representative did not directly speak to the class action

24   bar and the remedy, he emphasized that he wanted to keep the

25   remedies narrow and he wanted to keep all of these things in

1    check with what he thought was a good balance for the people

2    of Utah.  That is why it is included in that liability

3    section.  To me I think that is dispositive.  I understand

4    Judge Parrish's parsing of it, and I think if the

5    legislature wanted it to be a procedural rule it knows how

6    to do that.

7           THE COURT:  How then do you escape the language

8    that Justice Stevens included in his concurrence addressing

9    this issue in the New York statute and when he is evaluating

10   Justice Ginsburg's dissent?  It is essentially your argument

11   and I credit it.  I actually don't doubt that that is what

12   the legislature -- I don't mean I don't doubt.  I think it

13   is likely that this is part of what they saw as a way of

14   fencing in this claim.  But Justice Stevens talked about

15   that, and even if that is the intent of the legislature

16   under the circumstances, it sounds to him like a policy

17   issue, not something drawn to the elements of the cause of

18   action or the available remedies.

19          MS. RINEHART:  I think here is where the Court

20   probably never came to be of one mind and maybe still isn't

21   of one mind, which is when does a remedy become a

22   substantive part of the claim and when does a procedure

23   become part of the remedy?  With Justice Stevens, although

24   he did address that element of it, I think ultimately the

25   minute he decided that the New York statute was procedural

1    he was done with that analysis.  There I can see why it was

2    procedural.  As Your Honor mentioned, it was set aside in

3    the procedural section and it wasn't intimately tied in.

4         Where I go to is there would have been no reason

5    for Justice Stevens to continue his discussion and to talk

6    about these other scenarios where a class action bar or some

7    sort of procedural rule is intertwined if he didn't think

8    there was a way in which that could happen.  When I come to

9    a case like this, I am at a loss as to how to advise a

10   legislature how else to show that this is supposed to be

11   interwoven with the substantive right that they are

12   creating.

13        THE COURT:  I think the cases that you have found

14   and cited to me in your reply and in your opening motion,

15   too, give us a roadmap for a legislature.  Three other

16   states have done it after Shady Grove as you point out.

17        MS. RINEHART:  Correct.

18        They did have the benefit of Shady Grove, so it

19   was evident that the legislatures were trying to work within

20   that framework.  Here we don't have that, but simply as a

21   matter of federalism and in fairness to the Utah

22   legislature, I don't want to give up that argument just

23   because they didn't have the benefit of Shady Grove.

24        THE COURT:  I am not pushing you to give up your

25   arguments.

1          I will tell you in C.R. England, when I eventually

2    came to the conclusion that I came to in that case, it

3    seemed a strange result to me.  It raises genuine federalism

4    concerns in my mind.  Of course nobody cares what I think.

5    I'm a district court judge.  I'm hearing what you're saying

6    about -- let me get that language in front of me.

7          I'm sure that this is what you had in mind.  I

8    just want to cite Justice Stevens' actual language.  When he

9    is talking about the legislative history, he says in that

10   instance the New York legislative history does not clearly

11   describe a judgment that Section 901(b) would operate as a

12   limitation on New York's statutory damages.  In evaluating

13   that legislative history it is necessary to distinguish

14   between procedural rules adopted for some policy reason, and

15   seemingly procedural rules that are intimately bound up in

16   the scope of a substantive right or remedy.  Although almost

17   every rule is adopted for some reason and has some effect in

18   the outcome of litigation, not every state rule defines the

19   dimensions of a claim itself.

20         That is true here, too, isn't it, in part C?

21   There is nothing about that bar that describes the

22   dimensions of the right and the cause of action which is

23   described elsewhere at length in the statute.

24         How do we get around that?

25         MS. RINEHART:  So, Your Honor, I think if you will

1    indulge me and, again, citing to your Roberts opinion, I

2    think it is a great comparison example of the difference

3    between a procedural state rule that does effect the outcome

4    of the litigation, and whether you have to opt in or opt out

5    could dramatically effect the size of a class, as I think we

6    all know for practical purposes, but it really does not

7    having anything to do with the right that is being created

8    or the remedy that you can get.  It is just a procedural

9    vehicle.

10         On the other hand, here, although it is just a

11   procedural statement, I think it is an example of exactly

12   what Justice Stevens was suggesting could occur, where you

13   had something that appeared procedural but was going to

14   create such a difference in the type of remedy that is

15   available to a litigant that it has to be part of the

16   substantive nature of the claim.  I think as a practical

17   purpose -- I apologize --

18         THE COURT:  I want to hear what you have to say.

19         MS. RINEHART:  Those of us who work in the class

20   action world understand that intimately, that there is a big

21   difference between the type of remedy, and not just from a

22   defendant's standpoint, because a plaintiff who becomes a

23   representative plaintiff can recover other things, such as a

24   plaintiff's award or, you know, that type of -- again, not

25   mentioned in the statute because it simply wasn't something

1    that the legislature would have needed to consider.  They

2    thought they were prohibiting class actions.  But there is a

3    material difference when a case can be brought as a class

4    action, which is an order of magnitude higher than whether

5    it is an opt in or opt out.

6          THE COURT:  I really appreciate that argument, but

7    I am wondering what weight to give it in view of the fact

8    that -- I have tried to come at this from every angle

9    preparing for our hearing today.  A plaintiff could file

10   this claim in state court and other claimants could join

11   under Rule 20 of the Utah Rules of Civil Procedure.  The

12   state court would strike the class allegations of a

13   complaint like this one, and in every other respect all of

14   the issues relating to the causes of action, what the

15   elements are, what needs to be pled and what needs to be

16   proven would remain the same.  The remedies available to the

17   individual plaintiffs is identical, save for what you just

18   mentioned, the plaintiff's award, but that seems

19   compensation, I think, for the time and energy and

20   responding to the discovery and all of that.  That seems

21   pretty clear.

22          It seems like the other subsections -- I sense

23   from your papers that you take exception with Judge Parrish

24   describing it as surgically removing part of the statute,

25   but I think the thrust of it is the same.  It does not

1    effect the core elements of the claim or the remedies

2    available to the -- I am just thinking out loud for a minute

3    about what you said about the impact on defendants.  No

4    question there is hydraulic pressure to settle when it is a

5    class action.  The exposure for the defendants is surely

6    different, but even then is there any doubt that the

7    individual claimants would be limited to the statutory cap

8    on their recovery?

9              MS. RINEHART:  No.  I agree.

10             I think what we are struggling with together is

11   this notion that Justice Stevens created that you can have a

12   procedural rule, and to be clear I think this is a

13   procedural section, it is just that it is entwined with the

14   substantive nature of the claim.

15             For that to be true, for Justice Stevens'

16   framework to be true there has to be a scenario where

17   something that is procedural has such an effect on the

18   litigation and has such a substantive effect on when a claim

19   can be either brought or what kind of award the plaintiff

20   may end up with or what type of remedy or, on the opposite

21   side, the defendant, what type of liability they are facing,

22   that it becomes substantive.

23             We look to not just the legislative history, which

24   is what it is, but also the way that the statute is set up,

25   and that is where I do part ways with Judge Parrish because,

1    again, if the legislature wanted this to be a procedural

2    only rule or to somehow be excised from the nature of the

3    claims, they would know how to do that.

4         THE COURT:  I misstated something in my

5    preliminary comments now that I think I should clarify.  I

6    think the placement of the class action bar in the liability

7    section is a factor that supports your argument.  What I

8    really had in mind and what I think is the best argument for

9    this is the fact that it is limited only to this statute.

10        MS. RINEHART:  Correct.

11        THE COURT:  This bar only applies to this claim.

12        MS. RINEHART:  Correct.

13        THE COURT:  I think that is the strongest argument

14   for it.  Rather than just you and I circling around this

15   horse and keep kicking it, tell me what more, if anything,

16   you want to say about the bar.

17        MS. RINEHART:  I would say nothing more than, one,

18   I appreciate how thoughtful Your Honor has treated this

19   argument, and that I really do go back to the idea that this

20   is about federalism and what the legislature of Utah wanted

21   when it created this claim and I think that that should be

22   respected.

23        THE COURT:  Is that what we're really doing when

24   we are engaging in the analysis about whether we have a

25   Rules Enabling Act issue?  We're really trying to determine

1    what the legislature is attempting to do in enacting the

2    state rule?

3            MS. RINEHART:  I think so.  I think we are trying

4    to determine that and I think we are also trying to make

5    sure that we are not encouraging forum shopping, right, that

6    we are not discouraging people from bringing claims in state

7    court by offering them something in federal court that is

8    substantively different than what they would get in state

9    court.  It is two very important interests that we are

10   trying to protect.

11           THE COURT:  You agree with me that if the state

12   legislature takes exception with Judge Parrish's ruling that

13   they can amend the statute and they can try to more clearly

14   articulate the legislative intent?

15           MS. RINEHART:  I am going to claim a lot of

16   humility here.  I am not an expert on what the Utah

17   legislature can and cannot do, but, yes, I would think that

18   if they see this as a problem they could make an affirmative

19   change, although I am not sure how that would effect the

20   existing litigation.

21           THE COURT:  The state legislature thinks that I'm

22   no expert on what they can do and not do, too.

23           MS. RINEHART:  I am in good company then, Your

24   Honor.

25           THE COURT:  That is right.

1          Well, I'm going to guess that we may have a

2   further discussion about this.

3          I appreciate your argument, Ms. Rinehart.

4          MS. RINEHART:  Thank you so much.

5          THE COURT:  Mr. Hedin.

6          MR. HEDIN:  Thank you very much, Your Honor.

7          First of all, I would like to say thank you for

8   having me.  My clients and I do appreciate the opportunity

9   to be here and to argue this motion.

10          I think Your Honor's analysis is spot on and

11   absolutely correct with both step one and step two.  I will

12   start with step two and address the arguments that my

13   colleague made.

14          So the best way to determine what the legislature

15   meant here with the statute is to look at the plain language

16   of it along with the context of the --

17          THE COURT:  I am going to stop you right there.

18   You know, I am trying to remember now if anybody, either

19   Justice Scalia or Justice Stevens talked about legislative

20   intent.  The language is -- what is the specific language?

21   A specific -- no.  No, that is not it.

22          MR. HEDIN:  In the Utah statute?

23          THE COURT:  No.  I am thinking about the step two

24   question.

25          MR. HEDIN:  I believe it is whether or not

1    applying Rule 23 would modify --

2         THE COURT:  Would enlarge or modify a

3    substantive -- excuse me.  Abridge, enlarge, or modify a

4    substantive right.  That does not sound like -- I guess

5    legislative intent is just inherently baked into that when

6    we're trying to figure out what the legislature meant when

7    engaging in statutory construction.  I just want to make

8    sure I know what I'm supposed to be focused on.

9         MR. HEDIN:  That is correct.  I agree with that.

10        As Judge Parrish said the language and the context

11   of the statutory text alone can answer this question without

12   resorting to the legislative history.  That is particularly

13   true in this case given the structure of the liability

14   section of the statute with the three separate subsections

15   that track perfectly -- they basically perfectly track the

16   analysis that the Court has to perform under Shady Grove at

17   step two, which is looking at the rights and the remedies

18   and determining whether the class action bar and the

19   other -- whether applying Rule 23 instead of a state

20   procedural rule would abridge, modify or enlarge those

21   rights or remedies.

22        THE COURT:  Sundance points out that we can look

23   at the statute that way, but we can also look at it more

24   broadly as a statute divided into six parts, and the

25   legislature chose to put the class action bar in the

1    liability section which means something.

2         MR. HEDIN:  Well, I would point out that there is

3    no procedure section of the statute, and so the fact that it

4    is in a section of the statute that does have other sections

5    that define the substantive rights and remedies is fairly

6    unremarkable in that respect.  It is also last.  But most

7    important of all, I think, is the threshold idea that Rule

8    23 and the class action device generally -- it is a claims

9    processing device.  It is procedural in nature.  It is a

10   species of joinder.

11        In order for any state rule concerning class

12   actions or the device to define a substantive right or

13   remedy, it is going to be a very difficult thing to do

14   because of just the nature of the device itself as a claims

15   processing device which is procedural in nature.  So I agree

16   with the Court that the examples cited in the defendant's

17   motion to dismiss at pages 12 through 14 are good examples

18   of state class action bars that serve to define the

19   substantive rights and remedies afforded under the statute.

20        So, for example, if the Utah legislature here had

21   said that the statute provides for $500 in statutory damages

22   to any person aggrieved by a violation, but no such person

23   shall bring a class action absent a showing of actual

24   damages or something like that, that could be seen as a

25   state bar on class actions that effect the substantive

1   rights and remedies under the statute.

2          The legislature's determination not to do that

3   here controls and in our view really resolves the question.

4          THE COURT:  Pause.  Take a breath.

5          MR. HEDIN:  Sure.

6          THE COURT:  First, my court reporter is struggling

7   to keep up with you.  You are flying.  Second, you're not

8   giving me a chance to interfere with your argument.

9          MR. HEDIN:  Sorry, Your Honor.

10         THE COURT:  Ms. Rinehart's point is that the

11  statute is enacted by the Utah legislature without the

12  benefit of understanding how the Supreme Court is going to

13  treat what they say.

14         Do you have any serious doubt in your mind that

15  both in the U.C.S.P.A. and in this statute that the reason

16  the legislature included those bars was to provide some

17  level of protection for businesses in the state that were

18  going to be facing potential liability?  So, yes, there is a

19  cause of action, you shouldn't do this, and, yes, there is a

20  remedy, because consumers who have been injured by this

21  conduct should be able to get something back, and we mean to

22  limit what kind of serious economic liability you're going

23  to confront.

24         Do you doubt that that is what the legislature

25  really intended?  If you say yes, what did they intend by

1    including a class action bar?

2         MR. HEDIN:  I don't seriously dispute what Your

3    Honor just said.  I do believe, however, that the Utah

4    legislature intended for claims brought in Utah state

5    court -- for the claims processing device of a class action,

6    for claims to be calibrated with respect to claims brought

7    in Utah state court, but when it comes to the Federal Rules

8    of Civil Procedure and Rule 23, Rule 23, nonetheless,

9    applies to a proceeding in federal court even where

10   preventing annihilative punishment, and this is quoting

11   Justice Stevens, is the type of thing that the legislature

12   intended to avoid by enacting the class action bar.  It is

13   nonetheless procedural and it does not effect substantive

14   rights or remedies even if that was the legislative aim of

15   the provision.

16        THE COURT:  Where did he say that in his

17   concurrence?  I remember reading something like that.  I

18   want to make sure I have his actual language in mind.

19        MR. HEDIN:  Yes.  Just one minute.

20        I believe he said it --

21        THE COURT:  That is a really unfair question, to

22   ask you for a pinpoint citation in the middle of your

23   argument.

24        MR. HEDIN:  Just one second.

25        I have a pincite here of 1458.

1          Justice Stevens in his concurrence at 434 for the

2     U.S. citation says the decision reflects a policy judgment

3     about which laws should proceed in New York courts in a

4     class action forum and which should not.  As Justice

5     Ginsburg carefully outlines, Section 901(b) was apparently

6     adopted in response to fears that the class action procedure

7     applied to statutory penalties would lead to annihilative

8     punishment of the defendant.  But statements such as these

9     are not particularly strong evidence that Section 901(b)

10    serves to define who can obtain a statutory penality or that

11    certifying such a class would enlarge New York's remedy.

12    Any device that makes litigation easier makes it easier for

13    plaintiffs to recover damages.

14          I think that that excerpt right there basically

15    answers the question that Your Honor just asked me, which is

16    even if that is what the legislature was intending, that

17    still is not evidence that the inclusion of this provision

18    in the statutory scheme serves to define the right or the

19    remedy in the way that Shady Grove describes.

20          As the Court pointed out, the Utah legislature

21    could, and could at any point in the past 20 years since the

22    statute was enacted, could have amended the statute to

23    change it if they felt the need to do that.  In fact,

24    legislatures do do that.  That has happened to me twice

25    actually in the context of other state's privacy statutes

1   that originally had class action bars that were determined

2   not to be substantive in nature.  So the Utah legislature is

3   well equipped to do that if it feels the need.

4          THE COURT:  I still fall back to instinctively,

5   and I am going to think more about this, but the more we're

6   talking the more I am convinced that I don't know what this

7   opinion means.  If you're telling me that the state

8   legislature can have in mind that when they grant a right to

9   the citizenry, and they want to be precise and narrow about

10  the recovery, both in the amount and in the process that you

11  use, coupled together with an intent in mind thinking about

12  the potential impact on future defendants, that that is not

13  meant to be a substantive part of the remedy that is

14  afforded by the legislature.  I think there is language in

15  Justice Stevens' opinion that says that, but then I don't

16  know what is a substantive right.

17          What is a substantive right?

18          MR. HEDIN:  A substantive right is a right to a

19  cause of action and to a claim and what needs to be pleaded

20  or proven in order to establish an entitlement to relief.

21          THE COURT:  And a remedy?

22          MR. HEDIN:  And the remedies are the damages or

23  relief that are provided to people who are aggrieved or

24  suffered violations of that right.

25          Again, nothing in this provision, Section 203,

1   Subsection 3, modifies, enlarges or abridges that right,

2   because an individual is entitled to $500 if he establishes

3   a violation and that is uneffected by this provision.

4   10,000 individual claimants all bringing a case at the same

5   time is permissible.  It is permissible even in Utah state

6   court, and the liability is still annihilative in that

7   scenario, so it does not effect the actual underlying

8   substantive claim or remedy that an individual is entitled

9   to under the statute, and the claims processing device and

10  joinder function of Rule 23 in no way modifies that

11  analysis.  The placement of the provision in the liability

12  section of the statute or in the notice of intent to sell

13  nonpublic personal information statute generally does not

14  change the analysis, and Your Honor's opinion in Roberts

15  versus C.R. England is thorough, well reasoned, and is very

16  persuasive on this point.

17          THE COURT:  I don't believe anything I write.

18          MR. HEDIN:  The Court thoroughly analyzed the

19  issue there and found that the location of the law within

20  the state statutory code can be useful in discerning --

21          THE COURT:  You need to slow down when you are

22  quoting, please, so that our court reporter --

23          MR. HEDIN:  Sorry, Your Honor.

24          -- can be useful in discerning the legislature's

25  intent, but cannot itself prove the law is procedural or

1    substantive in nature.

2          I think that that makes a lot of sense.  It is

3    useful in some cases, because if the provision barring class

4    actions appears in the statute in which the substantive

5    right and remedy are conferred, then oftentimes it will be

6    intertwined, the class action bar will just be intertwined

7    more often than it otherwise would be in that situation.

8    That is true in each of the cases that the defendant cites

9    for that point, but it is not true in this statute.

10         The provision appears in this statute and it only

11   applies to claims under the statute, but it is cordoned off

12   in a separate subsection, separate and apart from the other

13   subsections that define the rights and remedies, and it can

14   be surgically removed without effecting the rights and

15   remedies provided in those subsections that appear above it.

16         I briefly would like to address the argument that

17   the potential of a service or an incentive award to a named

18   plaintiff in a class action somehow transforms this

19   procedural provision into one that effects rights and

20   remedies.

21         Service awards and incentive awards are a species

22   of common law and many circuits no longer even permit them.

23   Even where they are permissible there is no entitlement to a

24   service award or right.  An incentive award is purely a

25   discretionary award that the Court may authorize and may

1    not, and so we don't think that that adds really anything to

2    the analysis.  I do believe that my colleague acknowledged

3    that this is just a procedural statement.

4         That is really where I would like to end this

5    portion of my argument unless the Court has any questions.

6         This is a procedural statement.  Again, it only

7    pertains to the class action device which in and of itself

8    is a procedural device.  There is nothing of substance that

9    is implicated in the statutory provision and it does not

10   affect any of the rights or remedies that the previous two

11   sections do address.

12        Unless the Court has any other questions --

13        THE COURT:  I do have one and probably more.

14        Aren't remedies and liabilities two different

15   sides of the same coin?  So the language that we're to apply

16   at step two of Shady Grove focuses on, among other things,

17   remedies, but isn't that just the converse of liability?

18   Don't those two necessarily go hand in hand?

19        MR. HEDIN:  I believe that liability is the way

20   the defendant would approach the concept of relief being

21   provided to one party who prevails and being provided to one

22   from another, so I think that the liability is the flip side

23   of the coin in respect to, yes, a defendant will be liable

24   for what the plaintiff recovers and the plaintiff is

25   recovering relief under the statute and that is the remedy.

 1    But I don't think that the heading of the statute

 2    necessarily really modifies anything with respect to the

 3    procedural provision at the end of it.

 4           THE COURT:  I guess what I'm just wondering, and I

 5    am just thinking out loud, and I had not thought about this

 6    until the argument today, and that is one of the reasons I

 7    really appreciate the chance to come in and visit with the

 8    lawyers and have you coach me.  I guess that word remedy

 9    sometimes shows up in the phraseology that Justice Stevens

10    uses and sometimes I see that it doesn't when I'm looking,

11    for example, at the bottom of page 422 to 423 when Justice

12    Stevens is talking about the second step of the inquiry and

13    how it can bleed back into the first step.

14           He says when a federal rule appears to abridge,

15    enlarge or modify a substantive right -- I feel like I have

16    read remedies in there at times, too -- I guess where I am

17    going, and I am just thinking out loud in real time here, is

18    that if I am supposed to consider whether it effects --

19    whether the rule meaningfully effects remedies, isn't it

20    also fair to ask then in the same context whether it effects

21    the potential liabilities?  Or am I expanding the Supreme

22    Court's test if I do that?  Why would I focus on just one

23    side of that coin?

24           MR. HEDIN:  I do believe you are expanding it,

25    Your Honor.  The aggregation of many persons' claims for

1   relief could result in the imposition of more liability on

2   the defendant, but it does not affect the substantive nature

3   of the underlying claim for relief or the remedy that is

4   provided to an individual plaintiff who prevails on a claim

5   for relief.  The claims processing device does not impact

6   the entitlement to relief, the amount of relief or what

7   needs to be proven or pled in order to establish an

8   entitlement to relief for a claim.

9         THE COURT:  But in the real world it effects the

10   number of class members, the number of claimants, the

11   potential exposure, the likelihood of a settlement, the cost

12   of defending the suit, and all of that dramatically, which

13   is why you like it and why defendants don't, but those are

14   the realities of class litigation.

15         MR. HEDIN:  That is true.

16         Justice Stevens acknowledged that point in his

17   concurrence.  I believe he said that any rule that makes

18   litigation easier, makes it easier for plaintiffs.  He also

19   mentioned that although a procedural rule may have a

20   substantial outcome on the effect of a case, does not mean

21   that the rule that led to that outcome effected, abridged,

22   enlarged or modified any of the substantive rights or

23   remedies provided by the statute.

24         I think that is basically what we have here.  We

25   have a provision that practically speaking makes it easier

 1   for plaintiffs.  It seeks to calibrate the ease with which

 2   claims can be aggregated in Utah state courts, but it cannot

 3   do that in federal court, because the Rules Enabling Act

 4   authorizes the Supreme Court to promulgate rules, including

 5   Rule 23, and those rules are going to control unless they

 6   would abridge, modify or enlarge one of the substantive

 7   state rights at issue, and that is just not the case here

 8   for the reasons we have talked about today and that are set

 9   forth in our briefing.

10          THE COURT:  Should we be concerned about the

11   federalism implications of the application of this rule in

12   this case?

13          MR. HEDIN:  I am not particularly concerned with

14   it.  If people are concerned with it they should lobby

15   Congress and try to change things, but at this point the

16   decision in Shady Grove is controlling here and we think

17   that Judge Parrish's analysis was correct and that your

18   analysis in Roberts was correct and that the reasoning of

19   those opinions should be adopted by the Court here.

20          THE COURT:  Thank you, Mr. Hedin.

21          I don't know if we need to hear from you on the

22   12(b)(6) issue.  Is there something more that you wanted to

23   add?

24          MR. HEDIN:  The only thing I would point out is

25   that the Court should look at all of the factual allegations

1  and accept them as true and draw all reasonable inferences

2  in our favor and then decide whether or not we stated a

3  plausible claim for relief.  When you look at the

4  allegations alongside the data card, and in paragraph two

5  and our description of what that card shows and the type of

6  data that is available on it about each of the defendant's

7  customers, we think that the complaint plausibly suggests

8  that the defendant transmitted or rented all of its

9  customers' data to multiple third parties and that we have

10  stated a claim for relief.

11       I will note that my firm has a lot of experience

12  in litigating cases in the data brokerage context, and we

13  think that this case has a lot of merit.

14       THE COURT:  Thank you.

15       MR. HEDIN:  Thank you, Your Honor.

16       MS. RINEHART:  Your Honor, unless you have a

17  specific question, I just want to address a few points.

18       THE COURT:  I'm just eager to hear what you think

19  after that discussion.

20       MS. RINEHART:  So I think in starting with the

21  discussion of Justice Stevens' opinion, and I think we are

22  all struggling to try and reconcile the various parts of

23  Shady Grove, and clarity would be very appreciated I think

24  either from the Tenth Circuit or the Supreme Court as to how

25  it does apply to these class action waivers that are

1    embedded within the cause of action, and I think that is

2    where I go when we talk about the language that counsel read

3    into the record regarding the legislative history of the New

4    York statute.

5          I think here it is different as Your Honor has

6    pointed out, because it is only applying to one claim.  As I

7    go later on in Justice Stevens' opinion where he says, and I

8    am going to try and read slowly, the legislative history of

9    Section 901 thus reveals a classically procedural

10   calibration of making it easier to litigate claims in New

11   York courts, parens, under any source of law, close parens,

12   only when it is necessary to do so and not making the

13   emphasis too easy when the class toll is not required.

14         I tend to agree with Justice Stevens that the

15   point of the law at issue in Shady Grove was not to think

16   about a particular substantive right or remedy.  It was to

17   calibrate how claims are brought in New York state courts.

18   That is not the case here.  This is a case where the

19   legislature was concerned about creating a right that had a

20   remedy that went outside the actual issue that they were

21   trying to address, and in response they picked both a cap on

22   statutory damages or a specific level of statutory damages,

23   and then intertwined that with a procedural vehicle that

24   would ensure that that statutory cap wouldn't become

25   expedientially greater.  That is where I tend to see how it

```
 1   would accord with Justice Stevens' opinion.

 2        THE COURT:  Do I remember that I read in one of

 3   the controlling parts of the opinion, and now I don't

 4   remember if it was Justice Scalia and the part that Justice

 5   Stevens joins or whether it was Justice Stevens, but when

 6   thinking about the New York statute and describing the

 7   standard that we apply, didn't one of the other of them

 8   point out that under the circumstances -- of course there

 9   was less legislative -- you almost can't have less

10   legislative history than we have here before us, but they

11   had less --

12        MS. RINEHART:  Right.

13        THE COURT:  -- and they were left to speculate

14   about what the legislature intended and the same is true

15   here.  Are we not left to speculate about what function the

16   class bar is to have?

17        MS. RINEHART:  So I think there is some

18   interpretation that has to happen, correct, because the

19   legislature never thought to explicitly talk about it.  That

20   being said, and going back to kind of the first principle

21   discussion you were having with counsel earlier, if you're

22   creating a right there can be no right without a remedy,

23   right, otherwise you don't have much of a right at all.  And

24   there can be no remedy unless there is also a liability.

25   These are intertwined concepts, and I think the discussion
```

1    with the Utah legislature recognized that implicitly, and

2    that is what we get when we have these three pronged

3    liability sections, that they understood that these concepts

4    were all tied together, and that if they are creating a

5    right, they also have to create a remedy and a liability

6    framework.

7              THE COURT:  What else, Ms. Rinehart?  Anything

8    else?

9              MS. RINEHART:  Your Honor, you have been very

10   gracious.  I don't have anything else, but I am happy to

11   answer any of your questions.

12             THE COURT:  The wise thing for me to do is to

13   pause for a minute and confer with my law clerk, because

14   they are always smarter than I am and they are often

15   thinking of things I am not.

16             (Time lapse.)

17             THE COURT:  Well, Drake is going to manage to keep

18   his job for another day.  He thinks we have sufficiently

19   covered everything.  I appreciate your patience and your

20   argument today and appreciate how succinct and direct the

21   briefing was in this case from both sides.  Thank you.

22             We'll take the matter under advisement and we'll

23   get you a timely ruling.  Be safe.

24             We'll be in recess.

25             MS. RINEHART:  Thank you so much.

1          MR. SCOFIELD:   Thank you, Your Honor.

2          (Proceedings concluded.)