IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHANNON ARNSTEIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SUNDANCE HOLDINGS GROUP, LLC,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00344-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Defendant Sundance Holdings Group, LLC's (Sundance) Motion to Amend and Certify the Court's Order for Interlocutory Review.[1]  Having reviewed the Motion and associated briefing, the court DENIES Sundance's Motion.

## BACKGROUND

Sundance is a specialty retailer that sells a variety of clothing and other household products to consumers through physical catalogs and its website.[2]  As part of its business operations, Sundance allegedly maintains a vast digital database comprised of its customers' names, home addresses, purchase histories, and more (collectively, Private Purchase Information).[3]  Plaintiffs are prior customers of Sundance, and they allege Sundance unlawfully disclosed their Private Purchase Information to various third parties for compensation[4] in violation of Utah's Notice of Intent to Sell Nonpublic Personal Information Act (NISNPIA).[5]

---

[1] Dkt. 41, *Motion to Amend and Certify the Court's Order [Dkt. 37] for Interlocutory Review* (*Motion*).

[2] Dkt. 12, *First Amended Class Action Complaint* ¶¶ 64, 101.

[3] *Id.* ¶¶ 5, 95.

[4] *Id.* ¶ 116.

[5] Utah Code § 13-37.

Plaintiffs initiated this proposed class action in May 2024.[6]  Two months later, Sundance filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) claiming Plaintiffs could not establish subject matter jurisdiction under the Class Action Fairness Act (CAFA)[7] because NISNPIA prohibits "[a] person" from "bring[ing] a class action."[8] Specifically, Sundance argued NISNPIA's class action bar deprives this court of subject matter jurisdiction because, "[w]ithout a viable class action, Plaintiffs cannot meet the amount-in-controversy requirement to establish diversity jurisdiction under [CAFA]."[9]  The court disagreed.  In its Memorandum Decision and Order denying Sundance's Motion to Dismiss (the Order), the court analyzed the conflict between Federal Rule of Civil Procedure 23, which permits class action lawsuits in federal court, and NISNPIA's class action bar pursuant to the Supreme Court's framework articulated in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*.[10]  The court ultimately resolved the contest in favor of Rule 23's applicability to the present dispute.[11]  In so holding, the court arrived at the same conclusion as another judge in the District of Utah,[12] but it also "respectfully disagree[d]" with portions of two

---

[6] Dkt. 1, *Class Action Complaint*.

[7] 28 U.S.C. §§ 1332(d)(2), (5).

[8] Dkt. 23, *Defendant's Motion to Dismiss First Amended Complaint [Doc 12] and Memorandum in Support* (*Motion to Dismiss*); Utah Code § 13-37-203(3).

[9] *Motion to Dismiss* at 5.

[10] 559 U.S. 393 (2010) (hereafter, *Shady Grove*).

[11] *See Arnstein v. Sundance Holdings Grp., LLC*, No. 2:24-CV-00344-RJS-DAO, 2024 WL 4882857, at *2 (D. Utah Nov. 25, 2024).

[12] *See Curry v. Mrs. Fields Gifts, Inc.*, No. 2:22-cv-00651-JNP-DBP, 2023 WL 6318108 (D. Utah Sept. 28, 2023).

other District of Utah cases,[13] *Callegari v. Blendtec, Inc.*[14] and *Fullmer v. A-1 Collection Agency, LLC.*[15]  The court issued its Order on November 25, 2024.[16]

Sundance filed the present Motion on December 13, 2024, seeking to certify the court's Order for interlocutory review.[17]  The Motion is now ripe for review.[18]

## LEGAL STANDARD

Generally, only "final decisions" of district courts are appealable.[19]  An exception to this general rule is supplied by 28 U.S.C. § 1292(b), which enables a district court to certify an order for interlocutory appeal if the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[20]  However, interlocutory appeals are "rarely" certified.[21]  Indeed, they "are limited to 'extraordinary cases'" to ensure "the district court's certification role serves as a 'procedural screen to avoid a flood of fruitless petitions invoked contrary to the purpose of 1292(b).'"[22]  The decision whether to certify an order pursuant to § 1292(b) "lies wholly within the sound discretion of the court."[23]

---

[13] *See Arnstein*, 2024 WL 4882857, at *4.

[14] No. 2:18-CV-308-DB, 2018 WL 5808805 (D. Utah Nov. 6, 2018).

[15] No. 4:20-CV-00143-DN-PK, 2022 WL 1538675 (D. Utah May 16, 2022).

[16] *See Arnstein*, 2024 WL 4882857, at *10.

[17] *Motion* at 11.

[18] *See* Dkt. 43, *Plaintiffs' Response in Opposition to Defendant's Motion to Amend and Certify the Court's Order [Dkt. 37] for Interlocutory Review* (*Opposition*); Dkt. 44, *Defendant's Reply in Support of Its Motion to Amend and Certify the Court's Order for Interlocutory Review [Doc 41]* (*Reply*).

[19] 28 U.S.C. § 1291.

[20] *Id.* § 1292(b).

[21] *See Chamberlain v. Crown Asset Mgmt.*, 662 F. Supp. 3d 1068, 1071 (D. Utah 2022) (citing *Pack v. Investools, Inc.*, No. 2:09-CV-1042-TS, 2011 WL 2161098, at *1 (D. Utah June 1, 2011)).

[22] *Roberts v. C.R. England, Inc.*, No. 2:12-CV-00302-RJS-BCW, 2018 WL 2386056, at *2 (D. Utah Apr. 24, 2018) (citing *Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994)).

[23] *Id.* (citations omitted).

**ANALYSIS**

Sundance argues all of § 1292(b)'s requirements are satisfied,[24] and Plaintiffs challenge only Sundance's ability to demonstrate the second element of the framework: whether there is a substantial ground for difference of opinion.[25]  This element is satisfied when "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented."[26]

To attempt to satisfy this element, Sundance appears to make two arguments: (1) this court's Order creates an intra-district split of authority as it conflicts with *Fullmer* and *Callegari* by considering both Justice Scalia's plurality opinion and Justice Stevens' concurrence in *Shady Grove* to provide the analytical framework for assessing whether Rule 23 and state law conflict;[27] and (2) this court's Order presents a novel and difficult question concerning whether NISNPIA's class action bar applies in federal courts.[28]  Neither argument is persuasive.  A brief overview of the framework articulated in *Shady Grove* is helpful to understand why.

*Shady Grove* sets out the familiar, two-step framework enabling federal courts to determine which law controls "[w]hen both a federal rule and a state law appear to govern a question before a federal court sitting in diversity."[29]  The first step requires courts to determine

---

[24] *See Motion* at 5–10.

[25] *See Opposition* at 5 ("The Motion should be denied for failure to demonstrate a 'substantial ground for difference of opinion . . . . '").

[26] *Roberts*, 2018 WL 2386056, at *2 (citing *Kell v. Crowther*, No. 2:07-CV-00359-CW, 2018 WL 813449, at *2 (D. Utah Feb. 9, 2018)).

[27] *Motion* at 2.

[28] *Id.* at 3, 7.

[29] *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring).

whether the federal rule directly conflicts with the state law.[30]  If there is no conflict, the court "engage[s] in the traditional Rules of Decision Act inquiry under [*Erie Railroad Company v. Tompkins*[31]] and its progeny."[32]  If there is a conflict, the court proceeds to the second step and must apply the federal rule as long as it represents a valid exercise of Congress's rulemaking authority under the Rules Enabling Act by not abridging, enlarging, or modifying any substantive right.[33]  The court refers to the two components of the framework as Step One and Step Two respectively.

Sundance's first argument centers on which of the *Shady Grove* opinions guide Step One. The *Shady Grove* decision was fragmented, with Justice Scalia writing for the plurality, Justice Stevens joining parts of the plurality opinion and in the holding but concurring separately, and four justices dissenting.[34]  This split has created some confusion among federal courts regarding which parts of the *Shady Grove* opinion are controlling.[35]  Sundance insists that because this court relied on Justice Scalia's plurality opinion and Justice Stevens' concurrence in *Shady Grove* under Step One, the court created an intra-district split of authority for the Tenth Circuit to resolve.[36]  The court disagrees.  The fact that the court disagreed with portions of the *Fullmer*

---

[30] *See Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 943 (10th Cir. 2020) (citing *Shady Grove*, 559 U.S. at 399 (plurality opinion)).

[31] 304 U.S. 64 (1938).

[32] *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring).

[33] *Id.* at 422 (citing 28 U.S.C. § 2072(b)).

[34] *Id.* at 395–96 (majority opinion).

[35] *See, e.g.*, *Stender*, 958 F.3d at 943, 947 ("This court has held that Justice Stevens's concurrence states Supreme Court law under the rule stated in *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) . . . Others, including then-Judge Kavanaugh, think that the view of the plurality opinion governs on step two of the analysis because it merely restates law settled by *Sibbach* and no other Justice (including the dissenters) expressed agreement with the concurrence." (citing *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 n.3 (10th Cir. 2018); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217–18 (10th Cir. 2011); *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n.6 (10th Cir. 2010); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1336–37 (D.C. Cir. 2015))).

[36] *Motion* at 2.

and *Callegari* opinions that did not apply Justice Scalia's opinion under Step One does not create a live, intra-district conflict requiring interlocutory appellate review because the Supreme Court and the Tenth Circuit have already "spoken on th[is] point."[37]

It is well established that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"[38]  In *Shady Grove*, Justice Stevens joined Parts I and II-A of Justice Scalia's plurality opinion.[39]  Because Part II-A addresses Step One, Justice Scalia's opinion controls that part of the framework.  The controlling effect of this part of the opinion has been recognized by courts around the country[40] and by the Tenth Circuit.[41]  Justice Scalia's opinion is helpful here because it forecloses any argument that Rule 23 does not directly conflict with a state law that limits or imposes additional requirements beyond those articulated in Rule 23 in order to pursue a claim as a class.[42]  And ultimately, the fact that other district courts in this

---

[37] *Roberts*, 2018 WL 2386056, at *2 (citing *Kell*, 2018 WL 813449, at *2).

[38] *Marks v. U.S.*, 430 U.S. 188, 193 (1977) (citation omitted).

[39] *Shady Grove*, 559 U.S. at 395–96, 416.

[40] *See, e.g.*, *Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1254 (D. Utah 2018) (citation omitted); *Curry*, 2023 WL 6318108, at *3; *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015) ("But before turning to that question, it is important to note that Justice Stevens joined parts of Justice Scalia's opinion. Those parts, labeled sections I and II–A, thus were joined by five justices; those parts were the opinion of the Court. And those parts confirmed the analysis long followed in resolving conflicts between the Federal Rules of Civil Procedure and contrary provisions of state law."); *Abbas*, 783 F.3d at 471 n.1.

[41] *See Stender*, 958 F.3d at 943 ("There were three opinions. Four Justices dissented. Justice Scalia wrote an opinion joined in full by three Justices. Justice Stevens joined part of Justice Scalia's opinion (making that part a majority opinion) and wrote a separate concurring opinion.  The majority opinion set forth the framework for resolving the issue: a Federal Rule governs over state law (1) when it 'answer[s] the same question' as the state law, and (2) it is not 'ultra vires.'").

[42] Indeed, by acknowledging the binding effect of Justice Scalia's opinion, the court concluded that "[o]nce a plaintiff elects to bring a class action and satisfies Rule 23's requirements, courts must permit plaintiffs to proceed as a class[, provided there is no Enabling Act violation] . . . and any state statute—like NISNPIA or the UCSPA—restricting a party's ability to bring a class action more than what is already articulated in Rule 23 necessarily and directly conflicts with the Rule."  *Arnstein*, 2024 WL 4882857, at *4.

circuit may have failed to consider the binding effect of Justice Scalia's opinion does not create an unresolved, intra-district split of authority when binding authority on the issue exists.

Still, Sundance takes issue with this and other courts' reliance on both Justice Scalia and Justice Stevens' opinions with respect to Step One because, according to Sundance, the two opinions can be read as conflicting.[43]  Sundance argues this has "serious ramifications" because if Justice Scalia's opinion prevails, then any state law which imposes restrictions on the class action form beyond those articulated in Rule 23 must be read to conflict with Rule 23.[44]  But if Justice Stevens' concurrence receives greater weight, it provides a "saving construction," which enables courts to read Rule 23 as merely permitting class actions rather than requiring them and allows Rule 23 to coexist with such laws.[45]  This argument is unconvincing, and the court need not reconcile this purported conflict when Rule 23 and NISNPIA clearly conflict under either iteration of Step One.[46]

Indeed, even assuming Justice Stevens intended to limit the plurality's holding as to Step One, his limitation would not change the outcome with respect to Rule 23.  Justice Stevens readily acknowledged a conflict between Rule 23 and a state class action bar because Rule 23 "squarely govern[s] the determination [of] whether the court should" certify a class action as "[t]hat is the explicit function of Rule 23."[47]  In other words, because Rule 23 "squarely"

---

[43] *Reply* at 5; *see also Arnstein*, 2024 WL 4882857, at *3 ("Because Justice Stevens joined the plurality's analysis of Step One in Shady Grove, the plurality opinion and Justice Stevens's concurrence guide this part of the analysis."); *Curry*, 2023 WL 6318108, at *2 (relying on both the plurality opinion and the concurrence in *Shady Grove* for its Step-One analysis); *Roberts*, 321 F. Supp. 3d at 1254–55 (same).

[44] *Reply* at 5.

[45] *Id.*

[46] However, the court observes the Supreme Court did not see a conflict between the two opinions with respect to Step One.  As expressed by the plurality, Justice Stevens "departs from us only with respect to the second part of the test, *i.e.*, whether application of the Federal Rule violates § 2072(b) . . . ."  *Shady Grove*, 559 U.S. at 411 (plurality opinion).

[47] *Id.* at 429–30 (Stevens, J., concurring).

answers the question whether plaintiffs can maintain a class action in federal court, it is impossible for NISNPIA or any other state statute's prohibition of class actions to operate alongside the Rule under either Justice Scalia's or Justice Stevens' reasoning.

The alleged conflict between Justices Stevens and Scalia under Step One is actually between the dissenters and the majority[48] in *Shady Grove*.  Writing for the dissent, Justice Ginsberg agreed with the majority's articulation of the governing framework: when "a Federal Rule controls an issue and directly conflicts with state law, the Rule, so long as it is consonant with the Rules Enabling Act, applies in diversity suits."[49]  She also agreed that if "no Federal Rule or statute governs the issue, the Rules of Decision Act, as interpreted in *Erie*, controls."[50] However, Justice Ginsberg disagreed with the majority because, in her view, the majority found "conflict [between Rule 23 and the New York law at issue] where none [was] necessary."[51] Careful to consider the Court's precedential charge to "interpre[t] the Federal Rules . . . with sensitivity to important state interests" and "to avoid conflict with important state regulatory policies,"[52] Justice Ginsberg perceived "no unavoidable conflict between Rule 23 and [the New York law]" and "would [have] decide[d] th[e] case" pursuant to the Court's *Erie* jurisprudence.[53]

Justice Stevens disagreed with Justice Ginsberg and found there to be an unavoidable conflict under Step One.  Indeed, he lamented how "[t]he dissent would apply the Rules of Decision Act inquiry under *Erie* even to cases in which there is a governing federal rule, and thus

---

[48] Because five justices joined in Part II-A of the *Shady Grove* opinion, the court refers to that portion of the opinion as the majority opinion.

[49] *Id.* at 438 (Ginsberg, J., dissenting).

[50] *Id.* at 438–39.

[51] *Id.* at 446.

[52] *Id.* at 442 (citations omitted) (alteration in the original).

[53] *Id.* at 452.

the Act, by its own terms, does not apply."[54]  He continued, "[a]lthough it reflects a laudable concern to protect 'state regulatory policies,' . . . Justice Ginsburg's approach would, in my view, work an end run around Congress' system of uniform federal rules[.] . . . Federal courts can and should interpret federal rules with sensitivity to 'state prerogatives,' . . . but even when 'state interests . . . warrant our respectful consideration,' . . . federal courts cannot rewrite the rules."[55]  Thus, in Justice Stevens' view, Rule 23 so clearly "governed the determination whether the court should" allow a class action, that a conflict between Rule 23 and the New York law was certain, even despite his expressed consideration of state prerogatives.[56]  This appears to align with the plurality's view of Rule 23 under Step One.[57]  Accordingly, in cases involving Rule 23, and even applying Sundance's interpretation of Justice Stevens' "saving construction," there is no question Rule 23 would still be in direct conflict with state laws that prohibit class actions.  This court's reliance on both Justice Scalia and Justice Stevens' opinions creates no unresolved, intra-district split of authority on this issue.  Interlocutory review is unwarranted.

Second, Sundance argues the applicability of NISNPIA's class action bar in federal court presents a novel and difficult question that the Tenth Circuit has never addressed.[58]  But while resolving the contest between Rule 23 and NISNPIA is not easy, it is not so complicated and novel that it warrants interlocutory review.  Indeed, the resolution of the issue is governed by a "familiar" framework,[59] and courts must be left with "little doubt" before resolving any contest

---

[54] *Id.* at 431 (Stevens, J., concurring).

[55] *Id.*

[56] *Id.* at 429–30.

[57] *Id.* at 398–99 (majority opinion) ("Rule 23 provides a one-size-fits-all formula for deciding the class-action question.").

[58] *Motion* at 7.

[59] *Shady Grove*, 559 U.S. at 398 (majority opinion).

between a federal rule and state law in favor of the state law.[60]  The familiarity and binding nature of the framework combined with the heavy burden to demonstrate an Enabling Act violation provides the court with clear guardrails to guide its analysis.  Moreover, while the Tenth Circuit has not yet applied *Shady Grove* to the precise question at issue, another court in this district has.[61]  And tellingly, that court and this court reached the same conclusion: that NISNPIA's class action bar must yield to Rule 23 pursuant to the framework described in *Shady Grove*.[62]

At bottom, there is no unresolved, intra-district split of authority with respect to Step One warranting immediate interlocutory review; there are no questions arising under foreign law in this case; and there are no sufficiently novel or difficult questions of first impression in this court's Order.  Instead, there is "'sufficient guidance and authority to decide this question under controlling federal authority.'"[63]  As such, Sundance cannot demonstrate a required element to justify interlocutory review.

## CONCLUSION

For the foregoing reasons, Sundance's Motion DENIED.[64]

SO ORDERED this 19th day of February 2025.

---

[60] *Id.* at 432 (Stevens, J., concurring).

[61] *See Arnstein*, 2024 WL 4882857; *Curry*, 2023 WL 6318108.

[62] *See Arnstein*, 2024 WL 4882857, at *9; *Curry*, 2023 WL 6318108, at *7.

[63] *Roberts*, 2018 WL 2386056, at *2.

[64] Dkt. 41.  Sundance's requests that the court amend its Order and stay these proceedings are also denied.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge