FRANK S. HEDIN (*pro hac vice*)
ELLIOT O. JACKSON (*pro hac vice*)
**HEDIN LLP**
1395 Brickell Avenue, Suite 610
Miami, Florida 33131-3302
Telephone:    (305) 357-2107
Facsimile:    (305) 200-8801
E-Mail:        fhedin@hedinllp.com
                ejackson@hedinllp.com

DAVID W. SCOFIELD – 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone:    (801) 322-2002
Facsimile:    (801) 912-0320
E-Mail:        dws@psplawyers.com

*Counsel for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| SHANNON ARNSTEIN; DANA BASSETT; MARTIKA GARTMAN; SUELLEN HENDRIX; DEBRA MACKLIN; JEANINE MARK; MICHELLE MEINHOLD; MARIE MICHELS; JILLI OYENQUE; BARBARA PORTER; and ELIZABETH WUEBKER, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>    v.<br><br>SUNDANCE HOLDINGS GROUP, LLC,<br><br>          Defendant. | Case No. 2:24-cv-00344-RJS<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg<br><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS** |

Plaintiffs submit this response in opposition to Defendant Sundance Holdings Group, LLC's Second Motion to Dismiss Stay Discovery (ECF No. 54) (the "Motion").

## INTRODUCTION

Defendant moves to dismiss this action for lack of subject-matter jurisdiction on the ground that a recent amendment to Utah's Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code § 13-37-101, *et. seq*. ("NISNPIA"), leaves Plaintiffs unable to satisfy the jurisdictional requirements of the Class Action Fairness Act ("CAFA"). ECF No. 54. Defendant is mistaken. The amendment, even as misinterpreted by Defendant in the Motion, is incapable of ending this litigation. There are at least three reasons for this. First, the Court's subject-matter jurisdiction is assessed at the time the complaint was filed, and cannot be divested based on subsequent events. Second, the Amendment to NISNPIA does not apply retroactively and therefore has no relevance to Plaintiffs' claims, all of which accrued prior to the effective date of the Amendment. Third, even if any portion of the Amendment applies retroactively in this case, the class-action bar found in the original version of the statute would nonetheless remain intact, and this Court has already found that provision inapplicable in federal court. And finally, applying the statutory amendment retroactively in a manner that divests Plaintiffs of vested rights under the statute would violate the Utah Constitution.

The statutory amendment to NISNPIA has no impact on this Court's subject-matter jurisdiction, and the Motion should be denied.

## BACKGROUND

On March 15, 2003, NISNPIA was signed into law by the Utah Governor. NISNPIA originally took effect on January 1, 2004. *See* Utah Code § 13-37-101. Pursuant to the NISNPIA, "[a] commercial entity may not disclose nonpublic personal information that the commercial entity obtained on or after January 1, 2004, as a result of a consumer transaction if the commercial entity fails to comply with Section 13-37-201." Utah Code Ann. § 13-37-202. Section 13-37-201, in turn, requires a commercial entity to provide the consumer with notice if "the commercial entity enters into a consumer transaction with that person[,]" "as a result of the

consumer transaction . . . the commercial entity obtains nonpublic personal information concerning that person[,] and "the commercial entity intends to or wants the ability to disclose the nonpublic personal information . . . to a third party . . . for compensation," where such compensation "is the primary consideration for the commercial entity disclosing the nonpublic personal information," is "directly related to the commercial entity disclosing the nonpublic personal information," and "is not compensation received by the commercial entity in consideration of a transaction [wherein a third party provides the commercial entity with: "(i) services, including business outsource services; (ii) personal or real property; or (iii) other thing of value"]." *Id.* § 13-37-201(1)(a); § 13-37-201(5). The notice "shall be given before the earlier of . . . the point at which the person is requested to provide the nonpublic personal information[,] or . . . the commercial entity otherwise obtains the nonpublic personal information as a result of the consumer transaction[.]" *Id.* § 13-37-201(2).[1]

On May 14, 2024, Plaintiffs commenced this putative class action against Defendant for violating NISNPIA by selling Plaintiffs' nonpublic personal information to third parties. On July 19, 2024, Defendant moved to dismiss this case on, *inter alia*, the ground that NISNPIA expressly prohibits class actions, *see* Utah Code Ann. § 13-37-203(3), and that Plaintiffs were thus unable to invoke CAFA jurisdiction. ECF No. 23. On November 25, 2024, following Plaintiffs' filing of a response in opposition to the motion and oral argument, the Court denied the motion in its entirety, holding, *inter alia*, that Federal Rule of Procedure 23, not NISNPIA's provision barring class actions, applies in this federal proceeding. ECF No. 36. As the Court explained, "Rule 23 of the Federal Rules of Civil Procedure governs the issue of whether Plaintiffs may proceed as a class and ultimately establish diversity jurisdiction." *Id.* at 4.

---

[1] The notice required by section 13-37-201 "shall read substantially as follows: 'We may choose to disclose nonpublic personal information about you, the consumer, to a third party for compensation." *Id.* § 13-37-201(3)(a). The notice may be provided either "orally, if the consumer transaction itself is entirely conducted orally[,] or . . . in writing, if the notice is written in dark bold." *Id.* § 13-37-201(3)(b). In either case, the notice "shall be <u>sufficiently conspicuous</u> so that a reasonable person would perceive the notice before providing the nonpublic personal information." *Id.* § 13-37-201(3)(c) (emphasis added).

Applying Justice Stevens's concurring opinion in *Shady Grove*, the Court found a "lack of any clear evidence suggesting § 203(3) defines the scope of NISNPIA's rights or remedies" and held that NISNPIA's class action bar operated procedurally and therefore gave way to Rule 23 in federal court. *See id*. at 16-17.

On January 22, 2025, Senator Kirk Cullimore of the Utah Senate introduced S.B. 150. On January 24, 2025, the Utah Legislature's Office of the Legislative Fiscal Analyst issued Fiscal Note on S.B. 150, finding that the bill, if enacted and signed into law, would have no fiscal impact on Utah governments, residents, or businesses. The bill was subsequently referred to the Senate Judiciary, Law Enforcement, and Criminal Justice Committee. On January 31, 2025, Senator Cullimore spoke about the bill at a hearing before the Senate Judiciary, Law Enforcement, and Criminal Justice Committee, stating in pertinent part, that "because the [NISNPIA] has the bar to class actions as a separate sub-section it was deemed to be a severable procedural right for federal court purposes and not a substantive right as found in the remedies." Statement of Sen. Kirk A. Cullimore, *Tr. of Utah Leg. Procs.*, 3:25-4:04 (attached hereto as **Exhibit A**). Without any discussion or questions concerning the bill, the Senate Judiciary, Law Enforcement, and Criminal Justice Committee gave the bill a favorable recommendation and sent it to the full Utah Senate for a vote. Before senators voted on the bill, Senator and Chairman of the Senate Judiciary, Law Enforcement, and Criminal Justice Committee Todd D. Weiler spoke in favor of the bill, stating, in pertinent part, that "I'm a lawyer and a partner at a law firm here in Utah. If this bill passes, it could arguably benefit my law firm and I think that's a good thing." Ex. A, Statement of Sen. Weiler, *Tr. of Utah Leg. Procs.*, 4:15-4:18. S.B. 150 passed the Utah Senate by unanimous vote.

Meanwhile, on February 13, 2025, Representative Anthony Loubet introduced S.B. 150 in the Utah House of Representatives. The bill was subsequently referred to the House Judiciary Committee. On March 10, 2025, Representative Loubet spoke about the bill at a hearing before the House Judiciary Committee, stating in pertinent part, that "this bill is clarifying that [NISNPIA's class action bar] is a substantive right and not a procedure and it's not procedural in

nature." Ex. A, Statement of Rep. Loubet, *Tr. of Utah Leg. Procs.*, 15:6-15:8.  Without any discussion or questions concerning the bill, the House Judiciary Committee gave the bill a favorable recommendation and sent it back to the Utah House of Representatives for a vote. Additionally, a single industry advocate, Dave Davis of the Utah Retail Merchants Association, gave a brief endorsement of S.B. 150 before the House Judiciary Committee.  S.B. 150 passed the Utah House of Representatives by unanimous vote.

On March 13, 2025, S.B. 150 was sent to the Governor of Utah for signature.

On March 26, 2025, the parties conducted a mediation of this case before the Hon. Wayne Andersen of JAMS.  Given Defendant's likely involvement in the enactment of S.B. 150, its knowledge that S.B. 150 was on the Governor's desk for signature, and its (mistaken) belief that the Amendment, once signed into law, would divest the Court of subject-matter jurisdiction upon its May 7, 2025 effective date, the mediation went nowhere and was a complete waste of time and money.

On March 27, 2025, the Governor of Utah signed into law S.B. 150, which by its own terms "takes effect on May 7, 2025." *See* Nonpublic Personal Information Amendments, S.B. 150, 2025 Gen. Sess. (Utah 2025) ("S.B. 150"), available at https://le.utah.gov/~2025/bills/static/SB0150.html (hereinafter, the "Amendment") (a copy of which is attached hereto as **Exhibit B**) (setting May 7, 2025 as the forward-looking "Effective Date" for the Amendment).  The Amendment modifies the original statute in the following ways:

**(1)**   The Amendment changes the definition of "commercial entity" found in section 102(2)(a) of the statute, in the manner reflected below:

> (2) (a) Subject to Subsection (2)(b), "commercial entity" means a person that:
>  (i) has an office or other place of business located in the state; and
>  (ii) in the ordinary course of business transacts a consumer transaction in this state.
>  (i) maintains a physical office in the state; and
>  (ii) in the ordinary course transacts business at the physical office with consumers located in the state.

The Amendment contains nothing to indicate that this change is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(2)**    The Amendment adds the following definition for the term "physical office," which appears as follows in section 102(6) of the amended statute:

> (6) (a) "Physical office" means a location:
>          (i) accessible to the public during normal business hours;
>          (ii) staffed by one or more individuals who conduct business on behalf of the commercial entity; and
>          (iii) used for the primary purpose of transacting business with consumers in the state.
>      (b) "Physical office" does not include a post office box, mailing address, registered agent, or virtual office that a person solely relies on for business correspondence.

The Amendment contains nothing to indicate that this addition is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(3)**    The Amendment adds the following provision containing a limitation period for bringing claims:

> (3) An action for a violation of this chapter may only be brought in accordance with Section 78B-2-302 within one year from the day of the consumer transaction at issue.

The Amendment contains nothing to indicate that this addition is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(4)**    The Amendment deletes the following provision barring class actions found in section 203(3) of the original statute:

> (3) A person may not bring a class action under this chapter.

The Amendment contains nothing to indicate that this deletion is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

**(5)**    The Amendment adds new class-action barring language throughout sections 203(1) and 203(2) of the statute, in the manner reflected below:

> (1) A As a person's only remedy under this chapter, a person may bring an individual action, not a class action or act in a representative capacity, against a commercial entity in a court of competent jurisdiction in this state federal or state court with jurisdiction if:
>      (a) the commercial entity enters into a consumer transaction with that person;
>      (b) as a result of the consumer transaction described in Subsection (1)(a), the commercial entity obtains nonpublic personal information concerning that person; and
>      (c) the commercial entity violates this chapter.
> (2) In an action brought under Subsection (1), a commercial entity that violates this chapter is liable to the person individually, but not to a class or to a person in a representative capacity, who brings the action for:
>      (a) $500 for each time the commercial entity fails to provide the notice required by this section in relation to the nonpublic personal information of the person who brings the action; and
>      (b) court costs.

The Amendment contains nothing to indicate that these additions are intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

(6)    The Amendment adds the following statement concerning "the prohibition on bringing a class action" in section 203(4) of the amended statute:

> (4) The Legislature finds that since January 1, 2004, the prohibition on bringing a class action is a remedy provision and not merely procedural.

The Amendment contains nothing to indicate that this addition is intended to retroactively apply to conduct that occurred prior to the Amendment's Effective Date.

On March 28, 2025, the day after the Amendment was signed into law, Defendant filed a second motion to dismiss, arguing that the Amendment applies retroactively and prohibits Plaintiffs from pursuing this case as a class action, thus depriving the Court of subject-matter jurisdiction pursuant to CAFA.  ECF No. 54.

## ARGUMENT

The Amendment is incapable of retroactively divesting the Court of subject-matter jurisdiction under CAFA.  Accordingly, the Motion should be denied without prejudice, with leave for Defendant to reassert the arguments raised in the Motion at the class certification stage of the proceedings.  Even if the Court reached the Motion on the merits, the Motion still fails because the Amendment does not affect the Court's subject matter jurisdiction over this action.

**I.    The Motion Should be Denied as Premature With Leave for Defendant to Reassert the Arguments Raised in it at Class Certification**

As a threshold matter, the Motion should be denied as premature because, regardless how Court ultimately answers the questions presented in the Motion – i.e., whether (and to what extent) the Amendment applies retroactively, and the impact of any retroactively applicable portion of the Amendment on Plaintiffs' ability to certify a class – the Court will still have subject-matter jurisdiction pursuant to CAFA and the case will go on, either with Plaintiffs proceeding individually or proceeding both individually and on behalf of a class pursuant to Rule 23.

It is a "well-established rule that diversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc.*, 498 U.S. at 428.   As the Supreme Court has "consistently held . . . if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Id*.   And in *Pontrelli v. MonaVie, Inc.*, this Court noted that "the appropriate inquiry is whether jurisdiction existed at the time the case was *filed* as a class action."   No. 2:17-CV-01215-DN-DBP, 2019 WL 2436437, at *2 (D. Utah June 11, 2019) (emphasis in original).

The Class Action Fairness Action ("CAFA") indisputably provided the Court with subject-matter jurisdiction over this action at the time the Complaint was filed.  *See Arnstein v. Sundance Holdings Grp., LLC*, No. 2:24-CV-00344-RJS-DAO, 2024 WL 4882857, at *2 (D. Utah Nov. 25, 2024) (answering affirmatively the question of "whether Plaintiffs may avail themselves of the class action mechanism under Federal Rule 23 and establish diversity jurisdiction under CAFA . . . .") (ECF No. 36).  Thus, because subject-matter jurisdiction existed at the outset, no "subsequent event" may destroy it.  *See Freeport-McMoRan, Inc.*, 498 U.S. at 428.   This remains true regardless whether the Amendment operates retroactively or prospectively, which is a question better suited for the class certification stage.  *Gallivan v. Walker*, 54 P.3d 1069, 1100 (2002) ("[C]ourts should generally resolve cases on the narrowest applicable grounds unless specific reasons exist for offering broader guidance.").

Courts are unified in their understanding that subject matter jurisdiction vests when a complaint is filed.  In *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, the Fifth Circuit wrote: "[e]very circuit that has addressed the question has held that post-removal events do not oust CAFA jurisdiction."  746 F.3d 633, 639 (5th Cir. 2014) (collecting cases from the Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits).  The Second Circuit has held that "jurisdiction under CAFA is secure even though, after removal, the plaintiffs amended their complaint to eliminate the class allegations."  *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015). And in *Wright Transportation, Inc. v. Pilot Corp.*, the Eleventh Circuit assessed whether a case originally filed in federal court under CAFA, as opposed to a removed case, compelled a

different result—and concluded that it did not.  841 F.3d 1266, 1271 (11th Cir. 2016).  While the Tenth Circuit has not directly addressed this issue, this Court concluded in *Pontrelli* that the Tenth Circuit would likely join the unanimous position of the circuit courts which have addressed the issue by finding that subject matter jurisdiction under CAFA is determined based upon the time the complaint is filed.

Because the arguments raised in the Motion call into question Plaintiffs' ability to certify a class rather than the Court's ability to continue exercising subject-matter jurisdiction, these arguments are better addressed at class-certification stage of the proceedings. Accordingly, the Court should deny the Motion without prejudice, with leave for Defendant to reassert its arguments concerning the Amendment's impact on the certifiability of a class under Rule 23 at the class certification stage of the proceedings.

## II.    The Amendment is Not the Get-out-of-Jail Free Card Defendant Portrays

To the extent the Court reaches the merits of the Motion now, all of the arguments raised in it – for both retroactively applying the Amendment in this case and for construing its class-action bar as defining substantive rights or remedies under the statute – are completely without merit. As explained below, there is plainly basis for the Court to retroactively apply the Amendment in this case, much less to conclude that any retroactively applicable portion of the Amendment contains a class-action prohibition capable of overriding Rule 23.

### A.  No Portion of the Amendment has any Bearing on Plaintiffs' Claims, all of Which Accrued Prior to the Amendment's Effective Date.

First, the Amendment applies purely prospectively to conduct occurring on and after its May 7, 2025 effective date, and has no applicability to claims arising from conduct that occurred prior to May 7, 2025, like all of the Plaintiffs' claims in this case.

Prospective application of the law is foundational to the American legal system.  As stated by the United States Supreme Court, the "presumption against retroactive legislation . . . . embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). "The principle that the legal effect of conduct should ordinarily be

assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.*[2]

Consistent with most jurisdictions in the United States, "retroactive application of a [Utah] law is highly disfavored." *Evans v. Utah*, 21 F. Supp. 3d 1192, 1204 (D. Utah 2014). It is so disfavored, in fact, that the Utah Code expressly prohibits "the retroactive application of newly codified laws." *See State v. Clark*, 251 P.3d 829, 833 (Utah 2013). Specifically, section 68-3-3 of the Utah Code states: "A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." Utah Code Ann. § 68-3-3 (2010). This provision creates a default rule that Utah laws do not apply retroactively. *See id.*; *see also Clark*, 251 P.3d at 833. Against this backdrop, courts construing Utah's statutes "will and ought to struggle hard against a construction which will, by retrospective operation, affect the rights of parties." *Thomas v. Color Country Mgmt.*, 84 P.3d 1201, 1210 (Utah 2004) (Durham, C.J., concurring).

There are two exceptions to Utah's rule against retroactivity. First, the section of the Utah Code governing retroactivity itself provides that a statute may operate retroactively where it is "expressly declared to be retroactive" by the legislature. *See* Utah Code Ann. § 68-3-3 (2010). Such an express declaration may only be established through "explicit statements that the statute should be applied retroactively, or by clear and unavoidable implication that the statute operates on events already past." *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437 (Utah 1997). Ambiguous or unclear language which merely suggests retroactivity does not meet this standard. *See Harvey v. Cedar Hills City*, 227 P.3d 256, 259 (Utah 2010) ("We have previously observed that exceptions to this general rule are rare."); *see also, e.g.*, *Campbell v. Stagg*, 596 P.2d 1037, 1042 (Utah 1979).

---

[2] Thomas Jefferson once wrote: "The sentiment that *ex post facto* laws are against natural right, is so strong in the United States, that few, if any, of the State constitutions have failed to proscribe them. The federal constitution indeed interdicts them in criminal cases only; but they are equally unjust in civil as in criminal cases, and the omission of a caution which would have been right, does not justify the doing what is wrong." Thomas Jefferson, "Letter to Isaac McPherson" (1813), *The Writings of Thomas Jefferson*, Volumes 13-14, p. 327.

Second, there is a judicially created exception to the rule against retroactivity for purely procedural statutes. *See Clark*, 251 P.3d at 829 ("With respect to procedural statutes enacted subsequent to the initiation of a suit, on the other hand, we have held that the new law applies not only to future actions, but also to accrued and pending actions, and that further proceedings in a pending case are governed by the new [procedural] law.") (internal citations and quotation marks omitted); *see also Pilcher v. State*, 663 P.2d 450, 455 (Utah 1983). This exception is "narrowly construed" to permit retroactivity "where a statute changes only procedural law by providing a different mode or form of procedure for enforcing substantive rights[.]" *Roark v. Crabtree*, 893 P.2d 1058, 1062 (Utah 1995) (internal quotation marks omitted). It is well established, however, that this exception does not apply if the retroactive application of a statute would "enlarge[], eliminate[], or destroy[] vested or contractual rights." *Id*. Thus, a substantive statutory provision cannot operate retroactively "unless the provision is expressly declared to be retroactive," Utah Code Ann. § 68-3-3 (2010), and thus falls into the first exception discussed above. *See Waddoups v. Noorda*, 321 P.3d 1108, 1112 (2013).

In sum, there is a "strong presumption" against retroactive application of Utah's statutes. *See Evans*, 21 F. Supp. 3d at 1204. To overcome the presumption, the party advocating for a statute's retroactive application must show either (1) that there is an express declaration from the legislature that the statute operates retroactively; or (2) that the statute in question is purely procedural in nature. *Id*. Neither exception applies in this case.

For one thing, the portions of the Amendment that Defendant asks the Court to apply retroactively – namely, the language added to section 203(1)-(2)– are clearly outside the scope of the exception to the rule against retroactivity for purely procedural statutes, as Defendant's own arguments in this litigation demonstrate. The crux of the Motion is Defendant's argument that NISNPIA's amended class-action bar is substantive rather than procedural and should therefore apply in this case instead of Federal Rule of Civil Procedure 23. Indeed, if the provisions Defendant asks the Court to apply retroactively are found to be procedural rather than substantive in nature, then Rule 23, not NISNPIA's class-action bar, will apply in this case – as

this Court has already held.  Defendant cannot have this both ways by arguing that the language found in section 203(1)-(2) of the Amendment is procedural and thus applies retroactively, while simultaneously arguing out of the other side of its mouth that the very same language is substantive and thus trumps Rule 23 under *Shady Grove. See* Mot. at 12 (arguing that the Amendment "does not alter substantive rights" and thus should apply retroactively).  Simply put: because Defendant's bid for dismissal depends on section 203(1)-(2) of the Amendment being found to affect substantive rights and remedies, Defendant cannot avail itself to exception to the rule against retroactivity for purely procedural statutes.

Moreover, the Legislature's purpose in passing the Amendment was to transform NISNPIA's procedural class-action bar into a class-action bar that affects substantive rights and remedies.  *See Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 261 (Utah 1998) (courts may presume that "when the [Utah] legislature amends a statute, it intended the amendment to change existing legal rights"); *see also* Ex. A, Statement of Sen. Kirk A. Cullimore, *Tr. of Utah Leg. Procs.*, 4:9-4:12 ("all this bill does, SB150, is it simply puts the bar to class actions as a substantive right in the law . . . .").  To accomplish this, the Amendment deletes the class action bar previously found in its own standalone sub-section and sprinkles various class-action barring language throughout sections 203(1) and 203(2) of the statute, which provide for substantive rights and remedies.  *See* S.B. 150 (Ex. B); *see* Statement of Sen. Cullimore, *Tr. of Utah Leg. Procs.*, 10:19-10:2 (Ex. A) ("But because the bar to class action in this [*sic*] was a different subsection, the federal courts in Utah have determined that this is a procedural bar to class actions and not a substantive right. And so what the attorneys have asked for is to move this bar to class action . . . so that it is recognized [] as a substantive right . . . .").  The Amendment was thus clearly aimed at transforming the class action bar from a provision that sets forth procedure to one that "creates, defines and regulates the rights and duties of the parties," *Stephens v.*

*Henderson*, 741 P.2d 952, 953–54 (Utah 1987), further confirming that the "purely procedural" exception to the general rule against retroactivity cannot apply in this case.[3]

Nor does the Amendment "expressly declare" that any of its substantive changes to the statute apply retroactively. *See* Utah Code Ann. § 68-3-3 (2010). In fact, nowhere in the Amendment does the word "retroactive" appear. When the Utah legislature intends for a statute to have retroactive application, it says so expressly and unambiguously, as section 68-3-3 of the Utah Code mandates. For example, the Hazardous Substances Mitigation Act includes a section entitled "Retroactive effect." Utah Code Ann. § 19-6-3-302.5 (attached hereto as **Exhibit C**). This section provides, *inter alia*: "It is the intent of the Legislature that liability as determined under this act applies retroactively." Utah Code Ann. § 19-6-3-302.5(3)(a). Many other laws contain similar sections which clearly, expressly, and separately address retroactivity. *See, e.g.*, Underground Storage Tank Act, Utah Code Ann. § 19-6-4-402.5 (section entitled "Retroactive effect") (attached hereto as **Exhibit D**); Postconviction Remedies Act, Utah Code Ann. § 78B-9-1-104 (section entitled "Grounds for relief – Retroactivity of rule") (attached hereto as **Exhibit E**); Utah Code Ann. § 75-7-416 (provision of the Probate Code permitting courts to modify the terms of a trust to achieve the settlor's tax objectives, provides that "[t]he court may provide that the modification has *retroactive effect*") (attached hereto as **Exhibit F**) (emphasis added).

Similarly, the Utah Supreme Court found that the following statutory language "expressly declared" retroactive effect: "The provisions of this section apply to any claim under this section for which a court of competent jurisdiction has not issued a final unappealable judgment or order." *Wasatch Cnty. v. Okelberry*, 357 P.3d 586, 590–91 (Utah 2015). In a case cited by Defendant, the Utah Supreme Court found that a statutory amendment expressly applying to "all trusts created before, on, or after July 1, 2004" and "all judicial proceedings concerning trusts

---

[3] Additional characteristics of the Amendment indicate that it is substantive. For example, they change the definition of "commercial entity" and add a definition of "physical office." *See* S.B. 150. This affects who may be liable under the NISNPIA and, since these changes are restrictive, presents a new defense for future defendants. *See Washington Nat. Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 669–70 (Utah Ct. App. 1990) ("A change in a statutory remedy or defense is a substantive change if it affects the rights and duties of the parties.").

commenced on or after July 1, 2004" applied retroactively. *Warne v. Warne*, 275 P.3d 238, 245–46 (Utah 2012); *see* Mot. at 11. These are the types of unambiguous statements that fall within the "express declaration" exception to the rule against retroactivity.

And where, as here, a statute's language is ambiguous on retroactivity, courts do not hesitate in refusing to give it retroactive effect. *See Thomas v. Color Country Mgmt.*, 84 P.3d 1201, 1211 (Utah 2004) (C.J. Durham, concurring) ("We should fall back on our general rule against retroactive application when the presumption of substantiveness is not clearly rebutted. In other words, when in doubt, we should find that the statute is substantive."); *see also, e.g., Evans*, 21 F. Supp. 3d at 1205. The Amendment here lacks any declaration of retroactive effect, much less a declaration stated "expressly," and the Court should decline Defendant's invitation to read such intent into the statute.

The Amendment's forward-looking effective date further undermines any claim that it applies retroactivity. *See* S.B. 150, Section 3 ("Section entitled "Effective Date," providing that "[t]his bill takes effect on May 7, 2025"). The Utah Supreme Court has held that a forward effective date indicates that the Legislature does not intend for a statute to operate retroactively. For example, in *Stephens v. Henderson*, 741 P.2d 952, 955 (Utah 1987) the Court held that the Liability Reform Act, eliminating joint and several liability, could not be applied retroactively given its forward effective date. The Court wrote that a "statute eliminating joint and several liability may not be applied to injuries occurring prior to its effective date." *Id*. The Court specifically considered and rejected an argument that the law should apply retroactively. *Id*. at 954-55. It progressed through the retroactivity analysis step-by-step, beginning with the statutory bar, moving through considerations of whether the law is substantive or procedural, and finally turning away a novel argument that there is no retroactive effect if a new statute takes effect before judgment is entered in a case. *Id*.; *see also Brunyer v. Salt Lake County*, 551 P.2d 521, 522 (Utah 1976) (Comparative Negligence Act could not apply to claims arising before its effective date); *Payne By & Through Payne v. Myers*, 743 P.2d 186, 190 (Utah 1987) (a forward effective date indicated that the law applied only to action commenced after that date). Courts

from other jurisdictions agree.  *See, e.g.*, *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017).  Simply put: the legislature could not possibly have intended for the Amendment to have both retroactive applicability and forward-looking effectiveness.

Moreover, the Amendment's use of the present tense also undermines any claim of retroactivity.  *See* Mot. at 10.  In *Waddoups*—a case repeatedly cited by Defendant—the Utah Supreme Court stated: "It simply cannot be said that the use of the present tense communicates a clear and unavoidable implication that the statute operates on events already past.  If anything, use of the present tense implies an intent that the statute apply to the present, as of its effective date, and continuing forward."  321 P.3d at 1112 (emphasis added).  Here, as in *Whaddoups*, essentially all the new statutory language added by way of the Amendment speaks in the present tense.  This includes the phrases:

- "*maintains* physical office in the state";

- "in the ordinary course *transacts* business at the physical office with consumers located in the state";

- "An action for a violation of this statute *may only be brought* in accordance with Section 78B-2-302 within one year from the day of the consumer transaction at issue";

- "The Legislature *finds* that since January 1, 2004, the prohibition on bringing a class action *is* a remedy provision and not merely procedural."

S.B. 150 (emphasis added).  None of the language in the Amendment speaks in the past tense, as would evidence an intent for the statute to operate on events already past.[4]

Defendant argues that the Amendment, even without any express declaration of retroactivity, still applies retroactively because it "clarify[ies] the intention of the law as originally enacted."  Mot. at 11. *See, e.g.*, Mot. at 4 ("S.B. 150 **clarifies** that NISNPIA's class

---

[4] This Court has previously found that a statute's use of the present tense precludes retroactive effect.  In *Evans*, this Court wrote that "The use of the present tense in these same-sex marriage bans indicates that the bans do not apply retroactively."  21 F. Supp. 3d at 1205; *see also Strauss v. Horton*, 46 Cal. 4th 364 (2009) (holding that a California statute written in the present tense does not apply retroactively).  In *Evans*, this Court continued: "the use of present and future tenses in Utah's marriage bans does not provide a 'clear and unavoidable' implication that they 'operate on events already past.'" 21 F. Supp. 3d at 1205 (quoting *Waddoups*, 321 P.3d at 1112).  The same result should hold here.

action bar defines the scope of NISNPIA's remedies"); *id.* at 5 (referring to the Amendment's changes as "legislative **clarifications**" and that they "**clarify** that the legislature . . . considered NISNPIA's class action ban as integral to the remedies afforded under NISNPIA"); *id.* at 10 ("NISNPIA's legislative history and plain text now include legislative remarks **clarifying** the intent of NISNPIA's class action bar.") (emphasis added); *see also id.* at 11 n. 1, 12, 9.  This argument fails for several reasons.

For one thing, there is no 'clarifying amendment' exception to the rule against retroactivity under Utah law.  *See Waddoups*, 321 P.3d at 1112. Any vestige of a 'clarifying' exception to the rule against retroactivity was expressly abrogated by the Utah Supreme Court over a decade ago.  *Gressman v. State*, 323 P.3d 998, 1003 (Utah 2013).  And in a later decision, the Utah Supreme Court expressly characterized *Gressman* as having "repudiated" the existence of any "clarifying amendment" exception.  *See Waddoups*, 321 P.3d at 1112; *see also Rodriguez v. Crosby*, 543 P.3d 206, 209 n.2 (Utah App., 2024) (same). Thus, the clarifying intent of the Amendment has absolutely no bearing on the question of whether the Amendment applies retroactively.  *See* 323 P.3d at 1003; *see also Waddoups*, 321 P.3d at 1112.

Even if amendments that clarify an existing law were somehow exempt from the rule against retroactivity (and that is not so), the class-action barring language found in section 203(1)-(2) of the amended version of the statute does not clarify section 203(3) of the original version of the statute because the language barring class actions in section 203(1)-(2) was added to the statute by the Amendment, did not appear in the original version of the statute at all, and is completely different (in substance, form, and structure) from the class-action barring language found in section 203(3) of the original statute.  *See Diversified Striping Systems Inc. v. Kraus*, 516 P.3d 306, 326 (Utah App., 2022) ("To decide whether an amendment is a mere clarification, we ask whether it alters or explains language already present in the original statute or whether the amendment added new language or subsections that did not exist in any form before the amendments were made. An amendment that does the former is more likely clarifying in nature; one that does the latter is not.") (citations omitted). Indeed, whereas the class-action bar found in

16

section 203(3) of the original statute was a separate, purely procedural provision, cordoned off from other provisions providing for rights and remedies, the class-action barring language sprinkled throughout section 203(1)-(2) of the amended version of the statute is inexorably intertwined with the statute's substantive rights and remedies. This was not merely a "clarification" of some ancillary procedural provision of the statute – it was a full-blown reconfiguration of the way in which the substantive rights and remedies provided by the statute are defined.

The only language in the Amendment that Defendant contends is a declaration of retroactive application is the phrase "since January 1, 2004" that appears in section 203(4) of the Amendment. But Defendant fails to explain how a legislative finding concerning the new class action-barring language that the Amendment added to sections 203(1)-(2) of the statute can be retroactively applied to altogether different class-action barring language previously found in section 203(3) of the original statute, which continues to apply in this case.

Because the Amendment applies only prospectively to future conduct, the original version of NISNPIA in effect at the time this action was commenced will continue to apply in this case, even after the Amendment becomes effective on May 7, 2025.

### B. Even if Section 203(4) of the Amendment Applies Retroactively, its Application in this Case Adds Nothing to the *Shady Grove* Analysis

Even if the phrase "since January 1, 2004" constitutes an express declaration of retroactivity, such that section 203(4) applies in this case, the class-action bar found in section 203(3) of the statute is still a purely procedural provision and, as such, still does not apply in this case.

Section 203(4) of the amended statute provides: "The legislature finds that . . . the prohibition on bringing a class action is a remedy provision and not merely procedural." Notably, and as previously explained, there is no language in the Amendment declaring, expressly or otherwise, that the changes the Amendment made to section 203(1)-(2) of the statute (to add new class-action barring language) or to section 203(3) of the statute (to remove the

original class-action bar) are intended to apply retroactively.[5]  Thus, the class-action bar found in section 203(3) of the original statute – in effect when all of the conduct underlying Plaintiffs' claims occurred – must be applied in this case even after the Amendment becomes effective on May 7, 2025. And because the class-action bar found in section 203(3) of the original statute continues to apply in this case, "the prohibition on bringing a class action" referenced in section 203(4) of the amended statute must be interpreted to mean the class-action bar found in section 203(3) of the original statute.  Accordingly, even if section 203(4) of the amended statute is found to have retroactive application, the only thing capable of being applied retroactively in this case (and being considered in connection with the *Shady Grove* inquiry) is the legislature's finding that the original statute's "prohibition on bringing a class action," i.e., section 203(3), "is a remedy provision and not merely procedural."

Moreover, the legislative "find[ing]" that appears in that section in no way transforms section 203(3)'s purely procedural class-action bar into one that affects substantive rights or remedies. Indeed, based on the plain language and structure of the original version of the statute – which continues to apply with full force in this case – this Court had little trouble rejecting Defendant's argument that section 203(3) of the original version of the statute served to define the contours of any substantive rights or remedies created by the statute.  It should now reach that same conclusion again, notwithstanding any retroactively applicable "finding" made by the legislature in section 203(4) of the amended statute.

Helpful on this point are the decisions in *Phillips* v. *v. Hobby Lobby Stores, Inc.*, *Jones v. Coty Inc.,* and *Carter v. L'Oreal USA, Inc.*, where three federal district courts considered the effect of a statutory amendment that, similar to the Amendment here, merely characterizes an existing statutory class-action bar as substantive rather than procedural in nature.  *Phillips v. Hobby Lobby Stores, Inc.*, No. 2:16-CV-00837-JEO, 2019 WL 8229168, at *5 (N.D. Ala. Sept.

---

[5] Although not directly relevant to the Motion, the Amendment contains no declaration, express or otherwise, that any of the other changes it makes to the statute – including those concerning the terms "commercial entity" and "physical office" and the applicable limitation period – are to apply retroactively either.

30, 2019); *Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1199 (S.D. Ala. 2018); *Carter v. L'Oreal USA, Inc.*, No. CV 16-00508-CG-B, 2017 WL 4479368, at *3 (S.D. Ala. Sept. 21, 2017), *report and recommendation adopted,* No. CV 16-0508-CG-B, 2017 WL 4478008 (S.D. Ala. Oct. 6, 2017).  Like the class-action bar found in the original version of NISNPIA, the Alabama statute's class-action bar had been found procedural in nature and thus inapplicable in a federal proceeding. In response, the Alabama legislature, like the Utah legislature here, then amended the statute in an attempt to transform the statute's procedural class-action bar into one that affects substantive rights and remedies. The language added to the Alabama statute by way of the amendment states, in pertinent part:

> (f) A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter.

Ala. Code § 8-19-10(f).  Thus, similar to the new language added in section 203(4) of NISNPIA by way of the Amendment, "[t]he only change to the [Alabama] statute was the addition of the language that '[t]he limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter[.]'" *Phillips*, 2019 WL 8229168, at *5 (quoting Ala. Code § 8-19-10(f)).  But as the court in *Phillips* explained, merely adding this sort of interpretive gloss to a statute is plainly incapable of transforming an otherwise procedural provision into one that affects substantive rights or remedies. *Jones*, 362 F. Supp. 3d at 1199 ("Whether the Alabama legislature chooses to label something a 'substantive right' is certainly not dispositive of, and perhaps not even relevant to, to the matter of whether a substantive right actually is at stake for Rules Enabling Act purposes.") (citing *Carter*, 2017 WL 4479368, at *3 ("Clearly, the fact that Alabama has deemed ADTPA's limitation on class actions a 'substantive limitation' does not mean that permitting Rule 23 class actions under ADTPA has affected a substantive right provided by the state.")).

Instead, "[t]he only salient question is whether Rule 23 would abridge, enlarge, or modify a substantive right if it were applied in these federal proceedings in lieu of the [state statutory] prohibition on class actions brought by individual consumers." *Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1199 (S.D. Ala. 2018).

This Court should likewise reject the ill-conceived idea that the Utah legislature's decision to slap a "substantive" label on the class-action bar found in section 203(3) of the statute is somehow controlling on the question of Rule 23's applicability pursuant to the *Shady Grove* framework. Like the amendatory changes made to the Alabama statute at issue in *Phillips*, *Carter*, and *Jones*, "nothing in the substance of the statute was changed" by section 203(4) of the Amendment. Section 203(4) simply "finds" that "the prohibition on bringing a class action is a remedy provision and not merely procedural." Absent any substantive change to the structure or language of the class-action barring provisions, section 203(4) plainly does not "give rise to a substantive right to which Rule 23 must yield simply because the [Utah] legislature characterized it as such." *Phillips v. Hobby Lobby Stores, Inc.*, No. 2:16-CV-00837-JEO, 2019 WL 8229168, at *5 (N.D. Ala. Sept. 30, 2019). *Phillips v. Hobby Lobby Stores, Inc.*, No. 2:16-CV-00837-JEO, 2019 WL 8229168, at *5 (N.D. Ala. Sept. 30, 2019).

To be sure, the "prohibition on bringing a class action" found in section 203(3) of the original version of the statute (effective between January 1, 2004 and May 6, 2025) is altogether different, in its language, structure, and effect, from the "prohibition on bringing a class action" found in section 203(1)-(2) of the Amendment. Plaintiffs acknowledge that the new "prohibition on bringing a class action" established by sections 203(1)-(2) of the amended version of the statute appears to be sufficiently intertwined with the rights and remedies created by the statute to override Rule 23 – at least in cases arising from conduct that postdates the Amendment's effective date. *See, e.g., Murtagh v. Bed Bath & Beyond Inc.*, No. 19-cv-03487-CMA-NYW, 2020 WL 4195126, at *7 (D. Colo. July 3, 2020) (state class action bar found sufficiently bound up in substantive rights and remedies); *In re Effexor Antitrust Litigation*, 357 F. Supp. 3d 363, 389-90 (D.N.J. 2018) (same); *Fezjulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 728-29 (D.S.C.

2016) (same); *In re Nexium (Esomeprazole) Antitrust Litigation*, 968 F. Supp. 2d 367, 409 (D. Mass. 2013) (same). But because the Amendment does not expressly declare that sections 203(1)-(2) apply retroactively, and because all of the conduct underlying Plaintiffs' claims in this case predates the Amendment's effective date, as previously discussed, the "prohibition on bringing a class action" established in sections 203(1)-(2) of the Amendment cannot possibly apply in this case. Instead, even if section 203(4) of the Amendment is found to apply retroactively, the class-action bar found in section 203(3) of the original version of the statute – which this Court has already held is procedural rather than substantive in nature – continues to apply.

Section 203(3)'s class-action bar is a procedural provision notwithstanding any retroactive application of section 203(4) of the amended statute in this case. There is thus no reason for the Court to depart from its prior decision on the same question. The Motion should be denied.

### C. Applying the Amendment Retroactively Would Divest Plaintiffs and the Putative Class Members of "Vested Rights" in Violation of the Utah Constitution

Additionally, even if the Amendment applies reotractively and would otherwise bar this action from proceeding on behalf of a class pursuant to Rule 23—and that is not the case—the Amendment still cannot be applied retroactively to this action because doing so would divest Plaintiffs and the putative class members of "vested rights" in violation of the Utah Constitution.

The "vested rights" limitation on the legislative power is "firmly rooted" in Utah's constitutional jurisprudence. *Mitchell v. Roberts*, 469 P.3d 901, 909 (Utah 2020). The Utah Supreme Court has held that "a vested right of action is a property right protected by the due process clause." *Payne By & Through Payne*, 743 P.2d at 190. It has explained:

> once a cause of action under a particular rule of law accrues to a person by virtue of an injury to his rights, that person's interest in the cause of action and the law which is the basis for a legal action becomes vested, and a legislative repeal of the law cannot constitutionally divest the injured person of the right to litigate the cause of action to a judgment.

*Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 676 (Utah 1985); *see also Spanish Fork Westfield Irrigation Co. v. District Court of Salt Lake County*, 104 P.2d 353, 360 (Utah 1940). The Legislature may not, consistent with the Utah Constitution, retroactively divest individuals of such "vested rights," including causes of action which have accrued. *See Evans*, 21 F. Supp. 3d at 1206.

Such unconstitutional divesture would precisely be the case here if the Amendment applied retroactively. As shown above, the Amendment is substantive in nature. It limits the definition of a "commercial entity" who may be sued. SB 150. It imposes a new, limiting definition of "physical office." *Id*. It creates a new, one-year statute of limitations. *Id*. And it changes the class action bar from a procedural to substantive provision. *Id*. Each of these changes has the potential to "enlarge[], eliminate[] or destroy[] vested or contractual rights" enjoyed by Plaintiffs and the putative class members when their causes of action accrued. *See Roark*, 893 P.2d at 1062-63 (Utah 1995) (holding that changes to a statute of limited affected vested substantive rights and therefore could not be applied retroactively).

All of Plaintiffs' (and putative class members') claims accrued before the Amendment's forward-looking effective date. As alleged in the Complaint, filed approximately one year ago, Plaintiffs' claims accrued when Defendant allegedly sold or otherwise disclosed for compensation their nonpublic personal information to third parties without first providing the notice required by section 202 of the statute. *See* ECF No. 1. Discovery to date has already revealed numerous instances of Plaintiffs' nonpublic personal information being disclosed by Defendant in the months and years preceding the filing of the Complaint. All of these disclosures and thus statutory violations occurred prior to the effective date of the Amendment. *See id*. Each of the Plaintiffs therefore possesses a "vested right" in the cause of action they assert in this proceeding—and that right is constitutionally protected from retroactive abrogation by the Legislature. *See Payne By & Through Payne*, 743 P.2d at 190; *Berry*, 717 P.2d at 676; *see also Stephens v. Henderson*, 741 P.2d 952, 953–54 (Utah 1987) (". . . cases which hold that a statutorily created right can be destroyed at any time until final judgment because the right has

not yet vested, are in error.  To allow the substantive law in a case to be changed at any time up until entry of final judgment would allow a plaintiff to be effectively deprived of a cause of action.").

Plaintiffs and the putative class members have vested property rights in their causes of action, all of which accrued before the effective date of the Amendment.  Applying the Amendment retroactively in these circumstances would divest Plaintiffs and the putative class members of these vested rights in violation of the Utah Constitution.  Thus, the Court should also decline to apply the Amendment retroactively to avoid any such constitutional collision.

## III.    An Immediate Appeal of an Order Denying the Motion is Unwarranted

Finally, Defendant's request to certify an order denying its Motion for interlocutory appeal should be denied.  It is permissible for a court to certify an order for interlocutory appeal if such order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Interlocutory appeals should rarely be certified.  *See Pack v. Investools, Inc.*, 2011 WL 2161098, at *1 (D. Utah June 1, 2011) (unpublished); *Cricut, Inc. v. Enough for Everyone, Inc.*, No. 2:21-CV-00601-TS-DAO, 2025 WL 590021, at *2 (D. Utah Feb. 24, 2025) (unpublished) (calling interlocutory appeal a "rare and extreme" measure).  Even when the § 1292(b) statutory requirements are met, district courts retain discretion to decline to certify an order for interlocutory appeal.  *Id*.

First, whether the Amendment applies retroactively, in whole or any part, is not a controlling question of law.  Under § 1292(b), a "controlling issue of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources."  *Pack v. Investools, Inc.*, No. 2:09-CV-1042-TS, 2011 WL 2161098, at *2 (D. Utah June 1, 2011).  However, "[t]he term 'question of law' does not mean the application of settled law to fact."  *Id*. (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)).

As explained above, the Court need not address the retroactivity question at this juncture. But even if the Court reaches the retroactivity question and finds that the Amendment has retroactive application, that still would not defeat the Court's subject-matter jurisdiction under CAFA because that jurisdiction vested when the Complaint was filed. *See Freeport-McMoRan, Inc.*, 498 U.S. at 428 ("if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). Resolution of the retroactivity question is therefore not case-determinative, because the case will proceed on behalf of Plaintiffs individually even in the unlikely event they are not permitted to proceed on behalf of others similarly situated as well. This categorically precludes certification of an interlocutory appeal under 28 U.S.C. § 1292(b). *See Kennecott Corp.*, 14 F.3d at 1495 ("enlargement of the right to appeal should be limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action"); *see also In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. CV H-14-3428, 2016 WL 949065, at *4 (S.D. Tex. Mar. 14, 2016) ("The issues that the Cobalt Defendants ask this Court to certify for interlocutory appeal are not controlling questions of law. Instead, they are issues regarding the Court's application of established legal principles to the factual allegations in this lawsuit.").

Second, there is no substantial ground for difference of opinion with respect whether the Amendment applies retroactively. A substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Roberts v. C.R. England, Inc.*, 2018 WL 2386056, at *2 (D. Utah Apr. 24, 2018) (unpublished). The circuits are not in dispute regarding the potential retroactive application of the Amendment. Nor does the issue present a complicated question arising under foreign law. Nor does it involve a "novel" or "difficult" question of first impression. *See id.* Rather, it simply involves the application of existing legal standards governing the retroactive effect of statutory language. That is not so original as to merit

interlocutory review. *See, e.g.*, *Roberts v. C.R. England, Inc.*, No. 2:12-cv-00302, 2018 WL 2386056, at *3 (D. Utah Apr. 24, 2018) (unpublished)).

Lastly, interlocutory review would not materially advance the ultimate resolution of this litigation. *See* 28 U.S.C. § 1292(b). Instead, the certifying this question for interlocutory appeal would delay trial of Plaintiffs' claims. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 4948270, at *6 (D. Kan. Oct. 25, 2021) (unpublished). As this Court has noted, "many district court decisions involve legal standards and dispositive issues. Nonetheless, interlocutory appeals remain the rare exception, not the rule." *Mod. Font Applications LLC v. PetSmart, Inc.*, No. 2:19-CV-00613-BSJ, 2020 WL 9255402, at *2 (D. Utah June 25, 2020) (unpublished). Defendant's Motion should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, Defendant's Second Motion to Dismiss (ECF No. 54) should be denied in its entirety.

Dated: April 26, 2025                    Respectfully submitted,

                                         /s/ Frank S. Hedin
                                         FRANK S. HEDIN

                                         **HEDIN LLP**
                                         FRANK S. HEDIN (*pro hac vice*)
                                         ELLIOT O. JACKSON (*pro hac vice*)

                                         -AND-

                                         **PETERS | SCOFIELD**
                                         *A Professional Corporation*
                                         DAVID W. SCOFIELD

                                         *Counsel for Plaintiffs and Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2025, I caused a true and correct copy of the forgoing

to be filed in this Court's CM/ECF system, which sent notification of such filing to all counsel

of record.

*/s/ Frank S. Hedin*
Frank S. Hedin